**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAURA POITRAS<br>Praxis Films<br>205 Hudson Street<br>New York, NY 10013,<br><br>                Plaintiff,<br><br>     v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY<br>Washington, D.C. 20528,<br><br>        and<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530,<br><br>        and<br><br>OFFICE OF THE DIRECTOR OF<br>NATIONAL INTELLIGENCE<br>Washington, D.C. 20511,<br><br>                Defendants. | Civil Case No. |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief and seeking the disclosure and release of agency records improperly withheld from Plaintiff Laura Poitras by Defendant Department of Homeland Security ("DHS"), and its components U.S. Customs and Border Protection ("CBP"), U.S. Citizenship and Immigration Services ("CIS"), U.S. Immigration and Customs Enforcement ("ICE"), and Transportation Security Administration ("TSA"); Defendant Department of Justice

("DOJ"), and its component Federal Bureau of Investigation ("FBI"); and Defendant Office of the Director of National Intelligence ("ODNI").  The requested records concern, name, or relate to Plaintiff and, specifically, her routine subjection to secondary security screening and/or detention and questioning during both international and domestic travel to or within the United States between 2006 and 2012.

## PARTIES

2. Plaintiff Laura Poitras ("Plaintiff") is a United States citizen and resident of New York.  Plaintiff is a professional journalist and award-winning documentary filmmaker.  For the past decade, Plaintiff has been documenting post-September 11 America.  Her work has received many awards, including an Oscar, a Pulitzer Prize, and a MacArther "genius" grant.  Most recently, Plaintiff received the 2015 Academy Award for Documentary Feature for her film *CITIZENFOUR*, a documentary about whistleblower and former NSA contractor Edward Snowden.  Her other works include *The Art of Dissent* (2015), a *New York Times* op-doc (a short "opinioned documentary" film) about dissidents Ai Weiwei and Jacob Appelbaum; *The Program* (2012), a *New York Times* op-doc about NSA whistleblower William Binney; *The Oath* (2010), a two-time Emmy-nominated documentary film about Guantanamo Bay Prison military commissions: and *My Country, My Country* (2006), an Oscar-nominated documentary film about the U.S. military occupation of Iraq.

3. Between July 2006 and April 2012, Plaintiff traveled frequently for work on her documentary films and was subjected to "Secondary Security Screening Selection," detained, and questioned at the U.S. Border on every international flight she took to the United States.  She was also occasionally subjected to secondary security screening while leaving the United States, while outside of the United States during the course of international travel, and while inside the United States during purely domestic travel.  Between July 2006 and April 2012, Plaintiff was subject to secondary security screening on more than fifty (50) occasions.

4. Defendant Department of Homeland Security ("DHS") is a Department of the Executive Branch of the United States Government.  DHS is an "agency" within the meaning of

5 U.S.C. § 552(f). U.S. Customs and Border Protection ("CBP"), U.S. Citizenship and Immigration Services ("CIS"), U.S. Immigration and Customs Enforcement ("ICE"), and the Transportation Security Administration ("TSA") are components of Defendant DHS.

5. Defendant Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f). The Federal Bureau of Investigation ("FBI") is a component of Defendant DOJ.

6. Defendant Office of the Director of National Intelligence ("ODNI") is a Department of the Executive Branch of the United States Government. ODNI is an "agency" within the meaning of 5 U.S.C. § 552(f).

## JURISDICTION AND VENUE

7. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

### Plaintiff's Experiences Being Detained During International and Domestic Travel Between 2006 and 2012

9. In 2006, after releasing her documentary about the occupation of Iraq, *My Country, My Country*, Plaintiff began being detained and questioned at the U.S border every time she returned to the United States from international travel. She was also occasionally subjected to Secondary Security Screening Selection ("SSSS")—*i.e.*, increased security inspection—while leaving the United States, while outside of the United States during the course of international travel, and while inside the United States during purely domestic travel.

10. Plaintiff was first detained in July 2006, while she was traveling to the Jerusalem Film Festival to screen *My Country, My Country*. For the next six (6) years, Plaintiff was detained at the U.S. border every time she entered the United States, and occasionally while

outside the United States in the course of international travel. The detentions ended in April of 2012, following the publication of an article by journalist Glenn Greenwald on *Salon.com* about Plaintiff's experiences being detained while traveling[1] and the submission of a petition by documentary filmmakers to DHS protesting the routine detention of Plaintiff.

11. Between July 2006 and April 2012, Plaintiff was detained roughly 40 times while returning to the United States from international travel and multiple times in transit overseas.

12. In addition, between July 2006 and April 2012, Plaintiff was subject to Secondary Security Screening Selection during the course of purely domestic travel within the United States and while leaving the United States for international travel. Beginning in June or July 2006, in order for Plaintiff to receive a boarding pass, airline agents were required to call DHS. Plaintiff's boarding passes were thereafter marked "SSSS," and she was subjected to increased security screening at security checkpoints. In the case of domestic travel, this initially lasted only for a few months, until October 2006. But her subjection to secondary security screening during the course of domestic travel resumed again, however, several years later and did not fully cease until in or around April 2012.

13. Between July 2006 and April 2012, Plaintiff was subject to secondary security screening on more than 50 occasions.

14. Plaintiff often took notes during her detentions, recording the names of agents, time detained, and questions asked. The following non-inclusive list provides a few examples of Plaintiff's experience being detained and questioned between 2006 and 2012:

15. On her first detention—on or around July 12, 2006, while traveling from Jerusalem to Newark International Airport ("Newark") in New Jersey after attending the Jerusalem Film Festival—Plaintiff was met by CBP agents at the gate (also known as the "Hard Stand") upon arrival at Newark. Plaintiff was thereafter escorted to a holding room, where she

---

[1] *See* Glenn Greenwald, *U.S. filmmaker repeatedly detained at border*, Salon.com (Apr. 8, 2012) (available at http://www.salon.com/2012/04/08/u_s_filmmaker_repeatedly_detained_at _border/).

was detained and questioned for roughly two hours at Newark before being allowed to enter the United States.

16. On or around August 22, 2006, while traveling from Sarajevo, the capital of Bosnia and Herzegovina, to John F. Kennedy International Airport ("JFK") in New York City after attending the Sarajevo Film Festival, Plaintiff was paged to security while transiting through the Vienna International Airport in Vienna, Austria. Plaintiff was thereafter taken into a van and driven to a security inspection area. All of Plaintiff's bags were searched and x-rayed. The head of airport security at the Vienna International Airport told Plaintiff that her "Threat Score" was 400 out of 400 points. Plaintiff was eventually allowed to board a plane to the United States. Upon her arrival at JFK, CBP agents again met her at the gate. Plaintiff was thereafter escorted to a holding room, where she was detained and questioned for roughly two (2) hours, and where her bags were searched for a second time, before being allowed to enter the United States.

17. On or around November 26, 2006, while traveling from Paris, France to Newark on her way home from a vacation, Plaintiff was met by boarder agents upon her arrival at Newark. She was detained and questioned for 30 minutes.

18. On or around December 17, 2006, while traveling from Dubai, United Arab Emirates to JFK after attending the Dubai Film Festival, Plaintiff was met by border agents upon her arrival at JFK. She was again detained and questioned before being allowed entry into the United States. The CBP agents asked Plaintiff when she had last been to Atlanta, Georgia and told her that she had a criminal record, despite that she had never been arrested.

19. On or around March 19, 2007, while traveling from London, England to Washington Dulles International Airport in Washington, D.C. after attending a conference on Guantanamo Bay Prison, Plaintiff was detained and questioned upon her arrival in D.C.

20. On or around March 31, 2007, while traveling from Canada to LaGuardia Airport in New York City after conducting a documentary workshop, Plaintiff was detained and questioned before being allowed to board the plane in Canada.

21. On or around May 26, 2007, while traveling from Yemen to JFK after filming families of Guantanamo prisoners, CBP agents met Plaintiff at the gate upon her arrival at JFK. Plaintiff was thereafter detained and questioned. The CBP agents photocopied all of Plaintiff's reporters' notebooks, receipts, and business cards.

22. On or around February 10, 2010, while traveling from JFK to Berlin, Germany to attend the Berlin Film Festival, Plaintiff was told by airport security agents at JFK that she was on the No Fly List, a list maintained by FBI's Terrorist Screening Center. Plaintiff was eventually permitted to board her flight. While departing Berlin several days later, on or around February 16, 2010, Plaintiff was again told by airline representatives that she was on the No Fly List, though she was eventually again allowed to board her flight.

23. On or around August 1, 2010, while traveling from Yemen to New York, Plaintiff was detained and questioned upon her arrival at JFK. During the course of her detention, her laptop, video camera, footage, and cellphone were taken by border agents and held for 41 days.

24. Beginning in mid-2011, when Plaintiff began work on a documentary about Julian Assange and WikiLeaks, on her trips from Europe to the United States, Plaintiff started being questioned by U.S. authorities in Europe before being issued a boarding pass to return to the United States, in addition to being detained and searched in the Unites States upon her arrival. Prior to this time, she had never been stopped in Europe while traveling (other than the single time she had been told by airline officials in Berlin in February 2010 that she was on the No Fly List). For example, on or around April 5, 2012, while traveling from London to Newark after filming with Julian Assange, Plaintiff was questioned in London before being issued a boarding pass. Upon her arrival in Newark, Plaintiff was met by border agents, detained, and questioned. During the course of her detention, several security officers repeatedly threatened to handcuff Plaintiff for attempting to take notes, claiming her pen could be used as a weapon.

25. Plaintiff was also detained and questioned at the U.S. border on or around June 12, 2007 after a flight from Ireland; on or around September 22, 2007 after a flight from Dubai; on or around November 20, 2007 after a flight from Dubai; on or around February 12, 2008 after

a flight from Jordan; on or around March 1, 2008 after a flight from Sweden; on or around June 14, 2008 after a flight from Dubai; on or around August 24, 2008 after a flight from Dubai; on or around December 10, 2008 *before* a flight to Yemen; on or around January 11, 2009 after a flight from Dubai; on or around February 10, 2009 after a flight from Dubai; on or around July 19, 2009 after a flight from Dubai; on or around August 22, 2009 after a flight from London; and on numerous other occasions.

26.     These are only a few of the various instances in which Plaintiff was subjected to secondary security screening and/or detained and questioned during the course of international and domestic travel between July 2006 and April 2012.  As indicated above, Plaintiff was detained and questioned at the U.S. Border during every international flight she took to the United States during this six-year time period.

**Plaintiff's FOIA Requests**

27.     By separate letters to DHS, CBP, CIS, ICE, and TSA, each dated January 24, 2014 and sent via certified mail by attorney David Sobel on Plaintiff's behalf, Plaintiff submitted FOIA requests pursuant to 5 U.S.C. § 552 for "all agency records concerning, naming, or relating to Ms. Poitras."

28.     By a letter to FBI dated January 24, 2014, sent via certified mail by Mr. Sobel on Plaintiff's behalf, Plaintiff submitted a FOIA request pursuant to 5 U.S.C. § 552 for "all agency records concerning, naming, or relating to Ms. Poitras" and specifically requesting as follows: "that the FBI perform a complete and thorough search of all filing systems and locations for all records maintained by the Bureau pertaining to Ms. Poitras.  Such a search should include, but not be limited to, files and documents captioned in (or whose captions include) her name in the title.  The FBI should search the Central Records System, Electronic Surveillance Records (ELSUR), and Electronic Case File (ECF).  Further, I [s]pecifically request that the Bureau conduct a text search of the ECF to identify all potentially responsive main and cross-reference files.  The FBI's search should include 'main' files and 'see references.'"

29. By a letter to ODNI dated January 24, 2014, sent via certified mail by Mr. Sobel on Plaintiff's behalf, Plaintiff submitted a FOIA request pursuant to 5 U.S.C. § 552 for "all agency records concerning, naming, or relating to Ms. Poitras" and indicating that the "request includes, but is not limited to, records maintained by the National Counterterrorism Center ("NCTC")."

### Defendant DHS's Improper Withholding of Documents Responsive to Plaintiff's Request

30. By form letter dated February 3, 2014, DHS acknowledged receipt of Plaintiff's FOIA request and requested additional information to assist the agency in its search for responsive records. In its letter, DHS assigned Plaintiff's request reference number 2014-HQFO-00300.

31. By letter dated March 5, 2014, sent by Mr. Sobel on Plaintiff's behalf, Plaintiff provided information concerning the specific difficulties she encountered while traveling on international flights between July 2006 and May 2007, as well her difficulties while traveling on domestic flights between June or July 2006 and October 2006.[2]

32. By letter dated March 26, 2014, DHS advised that it had referred Plaintiff's request to the FOIA offices of its components CBP and TSA.

33. To date, DHS has not provided the records requested by Plaintiff in her FOIA request.

34. Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA request to DHS.

35. DHS has wrongfully withheld the requested records from Plaintiff.

---

[2] Although the letter was dated March 5, 2014, it was sent via fax on March 19, 2014 to DHS's Chief FOIA Officer after an unsuccessful attempt by Mr. Sobel to email the letter to foia@hq.dhs.gov on March 5, 2014.

### CBP's Failure to Timely Comply with, and Improper Withholding of Documents Responsive to, Plaintiff's Request

36. The United States Postal Service ("USPS") website's tracking feature indicates that Plaintiff's request to CBP was delivered on January 28, 2014.[3]

37. To date, CBP has neither responded to Plaintiff's FOIA request, nor provided the requested records, notwithstanding FOIA's requirement that an agency respond to a record request within twenty (20) working days of receipt of the request.

38. Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA request to CBP.

39. CBP has wrongfully withheld the requested records from Plaintiff.

### CIS's Improper Withholding of Documents Responsive to Plaintiff's Request

40. By form letter dated January 30, 2014, CIS acknowledged receipt of Plaintiff's FOIA request and indicated that, after a search of two information management systems, it had not located any records responsive to Plaintiff's request. CIS invited Plaintiff to provide additional information to assist the agency in a further search for responsive records. In its letter, CIS assigned Plaintiff's request reference number NRC2014009650.

41. By letter dated March 19, 2014, sent by Mr. Sobel on Plaintiff's behalf, Plaintiff provided information concerning her specific experiences being selected for secondary security screening while traveling on international flights between July 2006 and May 2007, as well her difficulties while traveling on domestic flights between June or July 2006 and October 2006.

42. CIS did not acknowledge receipt of this additional information. Rather, by a subsequent form letter dated April 2, 2014, almost identical to the form letter referenced in paragraph 40 above, CIS again acknowledged Plaintiff's FOIA request, again indicated that it had not located records responsive to Plaintiff's request, and again invited Plaintiff to provide

---

[3] *See* USPS Tracking Results for Certified Mail Tracking Number 70131710000104259922, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70131710000104259922 (last visited July 10, 2015).

9

additional information to assist the agency in a further search for responsive records. CIS further directed Plaintiff to contact CBP regarding records concerning "entry and exit" information. In its letter, CIS assigned Plaintiff's request a second reference number, NRC2014035155.

43. By letter dated May 6, 2014, sent by Mr. Sobel on Plaintiff's behalf, Plaintiff appealed CIS's determination that it had no records responsive to her request.

44. By form letter dated July 7, 2014, CIS denied Plaintiff's administrative appeal. In its letter, CIS assigned Plaintiff's appeal reference number APP2014000698. The July 7, 2014 letter advised Plaintiff that she could seek judicial review of its denial of her appeal pursuant to 5 U.S.C. § 522(a)(4)(B).

45. To date, CIS has not provided the records requested by Plaintiff in her FOIA request.

46. Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA request to CIS.

47. CIS has wrongfully withheld the requested records from Plaintiff.

### ICE's Failure to Timely Comply with, and Improper Withholding of Documents Responsive to, Plaintiff's Request

48. The USPS website's tracking feature indicates that Plaintiff's request to ICE was delivered on January 25, 2014.[4]

49. To date, ICE has neither responded to Plaintiff's FOIA request, nor provided the requested records, notwithstanding FOIA's requirement that an agency respond to a record request within twenty (20) working days of receipt of the request.

50. Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA request to ICE.

51. ICE has wrongfully withheld the requested records from Plaintiff.

---

[4] *See* USPS Tracking Results for Certified Mail Tracking Number 70131710000104259908, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70131710000104259908 (last visited July 10, 2015).

### TSA's Improper Withholding of Documents Responsive to Plaintiff's Request

52.     By form letter dated February 6, 2014, TSA acknowledged receipt of Plaintiff's FOIA request and requested additional information on the ground that the request was "too broad in scope or does not specifically identify the records you seek." In its letter, TSA assigned Plaintiff's request reference number 2014-TSFO-00168.

53.     By letter dated March 19, 2014, sent by Mr. Sobel on Plaintiff's behalf, Plaintiff provided information concerning the specific difficulties she encountered while traveling on international flights between July 2006 and May 2007, as well her difficulties while traveling on domestic flights between June or July 2006 and October 2006.

54.     TSA did not acknowledge receipt of this additional information. Rather, by a subsequent form letter dated March 26, 2014, almost identical to the form letter referenced in paragraph 52 above, TSA again acknowledged receipt of Plaintiff's FOIA request and again requested additional information on the same grounds as indicated in paragraph 52. In its letter, TSA assigned Plaintiff's request a second reference number, 2014-TSFO-00269.

55.     To date, TSA has not provided the records requested by Plaintiff in her FOIA request.

56.     Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA request to TSA.

57.     TSA has wrongfully withheld the requested records from Plaintiff.

### FBI's and Defendant DOJ's Improper Withholding of Documents Responsive to Plaintiff's Request

58.     By form letter to plaintiff dated February 19, 2014, FBI acknowledged receipt of Plaintiff's FOIA request. In its letter, FBI assigned Plaintiff's request reference number 1250943-000.

59.     After over a year of no further response from FBI, by letter dated May 21, 2015, Susan B. Gerson, Assistant Director of the DOJ's Executive Office for U.S. Attorneys, denied

Plaintiff's request—which had been referred by FBI to the Executive Office for U.S. Attorneys and which had been relabeled, according to Ms. Gerson's letter, as request number REFF-2015-01391.  Ms. Gerson's letter indicated that her agency had located six (6) pages relevant to Plaintiff's request but that the agency was withholding in full ("WIF") these documents.  Ms. Gerson cited Federal Rule of Criminal Procedure 6(e) as the basis for her refusal to disclose the documents.

60. By letter dated May 29, 2015, sent by Mr. Sobel on Plaintiff's behalf to DOJ's Office of Information Policy (as per the instructions in Ms. Gerson's letter), Plaintiff appealed the denial of her FOIA request.

61. The USPS website's tracking feature indicates that Plaintiff's appeal letter to DOJ's Office of Information of Policy was delivered on June 3, 2015.[5]

62. On July 6, 2015, Plaintiff received a form letter, dated July 1, 2015 and sent via email to Mr. Sobel from DOJ's Office of Information Policy, responding to her May 29, 2015 appeal.  The letter gave notice that the Office of Information Policy had received Plaintiff's appeal letter on June 3, 2015 and indicated that the appeal had been assigned reference number AP-2015-04128.  The letter provided no indication of when Plaintiff's appeal would be decided, stating only that the Office of Information Policy would notify her of the decision on her appeal "as soon as we can."

63. On July 7, 2015, Plaintiff received a second form letter, dated July 7, 2015 and again sent via email to Mr. Sobel from DOJ's Office of Information Policy, responding to Plaintiff's May 29, 2015 appeal.  The letter again gave notice that the Office of Information Policy had received Plaintiff's appeal on June 3, 3015.  The July 7, 2015 letter assigned Plaintiff's appeal a second reference number, AP-2015-04130.  Other than the date and reference number, the July 7, 2015 letter was identical to the July 1, 2015 letter referenced in paragraph 62

---

[5] *See* USPS Tracking Results for Certified Mail Tracking Number 70131710000096540398, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70131710000096540398 (last visited July 10, 2015).

above.  Just as the July 1, 2015 letter, the July 7, 2015 letter provided no indication of when Plaintiff's appeal would be decided, stating only that the Office of Information Policy would notify her of the decision on her appeal "as soon as we can."

64. To date, neither FBI nor DOJ have provided the records requested by Plaintiff in her FOIA request.

65. Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA request initially sent to FBI.

66. FBI and DOJ have wrongfully withheld the requested records from Plaintiff.

**Defendant ODNI's Improper Withholding of Documents
Responsive to Plaintiff's Request**

67. By form letter dated January 31, 2014, ODNI acknowledged receipt of Plaintiff's FOIA request.  In its letter, ODNI assigned Plaintiff's request reference number DF-2014-00111.

68. By letter dated February 25, 2014, ODNI denied Plaintiff's FOIA request.  In its letter, ODNI indicated that it could "neither confirm nor deny the existence or nonexistence in its files of any information responsive to [Plaintiff's] request" on the ground that the fact of the existence or nonexistence of the requested records was classified and constituted "intelligence sources and methods information."

69. By letter dated March 21, 2014, sent by Mr. Sobel on Plaintiff's behalf, Plaintiff appealed the denial of her FOIA request.

70. The USPS website's tracking feature indicates that Plaintiff's appeal letter to ODNI was delivered on March 25, 2014.[6]

71. To date, Plaintiff has not received a response to her March 21, 2014 appeal.

72. To date, ODNI has not provided the records requested by Plaintiff in her FOIA request.

---

[6] *See* USPS Tracking Results for Certified Mail Tracking Number 70123050000135142392, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70123050000135142392 (last visited July 10, 2015).

73. Plaintiff has exhausted the applicable administrative remedies with respect to her FOIA request to ODNI.

74. ODNI has wrongfully withheld the requested records from Plaintiff.

## CAUSES OF ACTION

### Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

75. Plaintiff repeats and realleges paragraphs 1 through 74.

76. Defendants have wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for the processing of her FOIA requests, and/or by rendering final decisions to withhold the records Plaintiff requested.

77. Plaintiff has exhausted the applicable administrative remedies with respect to Defendants' wrongful withholding of the requested records.

78. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

A. order Defendants and their components to disclose the requested records in their entireties and make copies available to Plaintiff;

B. provide for expeditious proceedings in this action;

C. award Plaintiff her costs and reasonable attorneys' fees incurred in this action; and

D. grant such other relief as the Court may deem just and proper.

DATED: July 13, 2015	Respectfully submitted,

By: _____
DAVID L. SOBEL
D.C. Bar. No. 360418

Electronic Frontier Foundation
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, D.C. 20015
(202) 246-6180

NATHAN D. CARDOZO
D.C. Bar No. 1018696
JENNIFER LYNCH
(*Admitted in California*)
JAMIE WILLIAMS
(*Admitted in California*)
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333

Attorneys for Plaintiff
LAURA POITRAS