### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **LAURA POITRAS,** | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-1091 (KBJ) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.,** | |
| Defendants. | |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants – the

Department of Justice, the Department of Homeland Security, and the Office of the

Director of National Intelligence – by and through undersigned counsel, hereby move the

Court for summary judgment on Plaintiff's claims under the Freedom of Information Act.

Summary judgment is appropriate for the reasons set forth at length in the accompanying

memorandum of law.

June 6, 2016                                        Respectfully submitted,


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

MARCIA BERMAN
Assistant Branch Director,
Federal Programs Branch

*/s/ Samuel M. Singer*

SAMUEL M. SINGER
D.C. Bar. No. 1014022
Trial Attorney, Federal Programs Branch
Civil Division
United States Department of Justice
20 Massachusetts Ave., NW, Room 6138
Washington, DC 20001
Tel: (202) 616-8014 | Fax: (202) 616-8470
samuel.m.singer@usdoj.gov

*Counsel for Defendant*

**Certificate of Service**

I hereby certify that on June 6, 2016, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will send notice of this filing to all parties.

/s/ Samuel M. Singer
SAMUEL M. SINGER

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS,<br><br>       Plaintiff,<br><br> v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.,<br><br>       Defendants. | Case No. 1:15-cv-1091 (KBJ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 1

STANDARD OF REVIEW ............................................................................................. 3

ARGUMENT .................................................................................................................. 4

    I.   DEFENDANTS CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE
         RECORDS ........................................................................................................... 4

         A.  The FBI's Search ......................................................................................... 5

         B.  ODNI's Search ........................................................................................... 5

         C.  CBP's Search ............................................................................................. 6

         D.  TSA's Search .............................................................................................. 7

         E.  USCIS's Search .......................................................................................... 8

         F.  ICE's Search ............................................................................................... 8

    II.  DEFENDANTS PROPERLY WITHHELD RESPONSIVE DOCUMENTS ................... 9

         A.  Exemption 1 (FBI, ODNI) ....................................................................... 10

             1. The FBI Has Properly Withheld Information Under Exemption 1 ........................ 11

             2. ODNI'S Glomar Response Is Proper Under Exemption 1 ................................... 12

    III. Exemption 3 (FBI, ODNI, TSA) ........................................................................... 14

         A.  FBI Properly Withheld Information Under Exemption 3 ........................... 15

         B.  ODNI'S Glomar Response Was Proper Under Exemption 3 ..................... 17

         C.  TSA Properly Withheld Information Under Exemption 3 .......................... 18

    IV. Exemption 4 (CBP) .............................................................................................. 20

    V.  Exemption 5 (FBI, CBP) ...................................................................................... 21

         A.  CBP Properly Withheld Information Under Exemption 5 .......................... 21

         B.  FBI Properly Withheld Information Under Exemption 5 ........................... 23

    VI. Exemption 7 (FBI, CBP) ...................................................................................... 23

         A.  The Records Were "Compiled for Law Enforcement Purposes" ................ 24

         B.  Exemption 7(A) (FBI) ............................................................................. 25

         C.  Exemption 7(D) (FBI) ............................................................................. 26

D.  Exemption 7(E) (FBI and CBP)..................................................................................29

CONCLUSION.........................................................................................................................34

## TABLE OF AUTHORITIES

### Cases

*Abdelfattah v. DHS*,
  488 F.3d 178 (3d Cir. 2007) ................................................................ 24

*ACLU v. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011) .................................................... 10, 16

*Arieff v. Dep't of Navy*,
  712 F.2d 1462 (D.C. Cir. 1983) ............................................................ 2

*Assassination Archives & Research Ctr. v. CIA*,
  334 F.3d 55 (D.C. Cir. 2003) ............................................................ 17

*Baez v. FBI*,
  443 F. Supp. 2d 717 (E.D. Pa. 2006) ................................................ 24

*Baldrige v. Shapiro*,
  455 U.S. 345 (1982) .............................................................................. 3

*Barnard v. DHS*,
  598 F. Supp. 2d 1 (D.D.C. 2009) ..................................................... 7, 9

*Beard v. DOJ*,
  917 F. Supp. 61 (D.D.C. 1996) .......................................................... 28

*Bevis v. Dep't of State*,
  801 F.2d 1386 (D.C. Cir. 1986) ........................................................ 26

*Billington v. DOJ*,
  233 F.3d 581 (D.C. Cir. 2000) ..................................................... 27, 28

*Billington v. DOJ*,
  301 F. Supp. 2d 15 (D.D.C. 2004) ..................................................... 27

*Blackwell v. FBI*,
  680 F. Supp. 2d 79 (D.D.C. 2010) ..................................................... 15

*Bloomer v. DHS*,
  870 F. Supp. 2d 358 (D. Vt. 2012) ..................................................... 32

*Brunetti v. FBI*,
  357 F. Supp. 2d 97 (D.D.C. 2004) ..................................................... 32

*Bullock v. FBI*,
  577 F. Supp. 2d 75 (D.D.C. 2008) ..................................................... 29

*Carter v. NSA*,
  962 F. Supp. 2d 130 (D.D.C. 2013) ................................................ 6, 13

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
  600 F. Supp. 114 (D.D.C. 1984) ........................................................ 22

*CIA v. Sims*,
  471 U.S. 159 (1985) ............................................................................ 16

*City of Rochest v. Bond*,
    603 F.2d 927 (D.C. Cir. 1979) .............................................................. 20

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,
    975 F.2d 871 (D.C. Cir. 1992) .............................................................. 20

*Ctr. for Nat'l Sec. Studies v. DOJ*,
    331 F.3d 918 (D.C. Cir. 2003) ...................................................... 3, 10, 26

*Dillon v. DOJ*,
    102 F. Supp. 3d 272 (D.D.C. 2015) ..................................................... 5, 11

*DOJ v. Landano*,
    508 U.S. 165 (1993) ........................................................................ 27, 28

*DOJ v. Reporters Comm. For Freedom of Press*,
    489 U.S. 749 (1989) ................................................................................ 3

*Dow Jones & Co. v. DOJ*,
    917 F.2d 571 (D.C. Cir. 1990) .............................................................. 27

*Elec. Privacy Info. Ctr. v. DHS*,
    928 F. Supp. 2d 139 (D.D.C. 2013) ................................................. 18, 20

*Elec. Privacy Info. Ctr. v. NSA*,
    678 F.3d 926 (D.C. Cir. 2012) .............................................................. 12

*Fisher v. DOJ*,
    772 F. Supp. 7 (D.D.C. 1991) .............................................................. 29

*Frugone v. CIA*,
    169 F.3d 772 (D.C. Cir. 1999) .............................................................. 12

*Gardels v. CIA*,
    689 F.2d 1100 (D.C. Cir. 1982) ....................................................... 12, 17

*Goland v. CIA*,
    607 F.2d 339 (D.C. Cir. 1978) .............................................................. 14

*Hale v. DOJ*,
    973 F.2d 894 (10th Cir. 1992) ................................................................ 3

*Hammouda v. U.S. Dep't of Justice Office of Info. Policy*,
    920 F. Supp. 2d 16 (D.D.C. 2013) ....................................................... 26

*Hickman v. Taylor*,
    329 U.S. 495 (1947) ............................................................................. 22

*In re Pet. of Craig*,
    131 F.3d 99 (2d Cir. 1997) ................................................................... 15

*Iturralde v. Comptroller of Currency*,
    315 F.3d 311 (D.C. Cir. 2003) ................................................................ 4

*Jefferson v. DOJ*,
    284 F.3d 172 (D.C. Cir. 2002) .............................................................. 24

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ............................................................................ 25

*Kidd v. DOJ*,
    362 F. Supp. 2d 291 (D.D.C. 2005) .................................................... 9

*Koutny v. Martin*,
    530 F. Supp. 2d 84 (D.D.C. 2007) ...................................................... 20

*Labow v. DOJ*,
    66 F. Supp. 3d 104 (D.D.C. 2014) ................................................ 30, 31

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ...................................................... 12, 17

*Light v. DOJ*,
    968 F. Supp. 2d 11 (D.D.C. 2013) ...................................................... 31

*Lopez v. DOJ*,
    393 F.3d 1345 (D.C. Cir. 2005) .......................................................... 15

*Manna v. DOJ*,
    51 F.3d 1158 (3d Cir. 1995) ........................................................ 25, 26

*Marshall v. FBI*,
    802 F. Supp. 2d 125 (D.D.C. 2011) ...................................................... 5

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) .......................................................... 29

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ............................................................ 3

*McGehee v. DOJ*,
    800 F. Supp. 2d 220 (D.D.C. 2011) ...................................................... 5

*Miller v. DOJ*,
    872 F. Supp. 2d 12 (D.D.C. 2012) ...................................................... 31

*Nat'l Parks & Conservation Ass'n v. Morton*,
    498 F.2d 765 (D.C. Cir. 1974) ...................................................... 20, 21

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) .................................................... 33

*NLRB v. Robbins Tire & Rubber Corp.*, 437 U.S. 214 (1978) ........................................................................ 25

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ...................................................................... 21, 22

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ............................................................ 3, 4

*Rockwell Int'l Corp. v. DOJ*,
    235 F.3d 598 (D.C. Cir. 2001) ............................................................ 21

*Roth v. DOJ,*
    642 F.3d 1161 (D.C. Cir. 2011) ........................................................................................... 12

*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991) ........................................................................................... 22

*Schrecker v. DOJ,*
    349 F.3d 657 (D.C. Cir. 2003) ............................................................................................... 4

*Shaw v. FBI,*
    749 F.2d 58 (D.C. Cir. 1984) ............................................................................................... 28

*Skurow v. DHS,*
    892 F. Supp. 2d 319 (D.D.C. 2012) ..................................................................................... 18

*Smith v. ATF,*
    977 F. Supp. 496 (D.D.C. 1997) .......................................................................................... 29

*Steinberg v. DOJ,*
    23 F.3d 548 (D.C. Cir. 1994) ................................................................................................. 4

*Stillman v. CIA,*
    319 F.3d 546 (D.C. Cir. 2003) ............................................................................................. 11

*Strunk v. U.S. Dep't of State,*
    845 F. Supp. 2d 38 (D.D.C. 2012) .......................................................................... 7, 25, 31

*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) ....................................................................................... 21, 22

*Tooley v. Bush,*
    No. 06-306, 2006 WL 3783142 (D.D.C. Dec. 21, 2006) .................................................... 18

*United States v. John Doe, Inc. I,*
    481 U.S. 102 (1987) ............................................................................................................. 15

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ............................................................................................................. 22

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) ............................................................................................... 3

*W. Ctr. for Journalism v. IRS,*
    116 F. Supp. 2d 1 (D.D.C. 2000) ........................................................................................... 4

*Wheeler v. DOJ,*
    403 F. Supp. 2d 1 (D.D.C. 2005) ......................................................................................... 11

*Whitaker v. CIA,*
    31 F. Supp. 3d 23 (D.D.C. 2014) ......................................................................................... 21

**Statutes**

5 U.S.C. § 552 ............................................................................................................................. 3

5 U.S.C. § 552(a)(3) .................................................................................................................... 3

5 U.S.C. § 552(a)(4)(B) .............................................................................................................. 2

5 U.S.C. § 552(b) ................................................................................................. 33, 34

5 U.S.C. § 552(b)(1) .................................................................................................. 10

5 U.S.C. § 552(b)(3) .................................................................................................. 14

5 U.S.C. § 552(b)(4) .................................................................................................. 20

5 U.S.C. § 552(b)(5) .................................................................................................. 21

5 U.S.C. § 552(b)(7) ............................................................................................. 23, 24

5 U.S.C. § 552(b)(7)(A) ............................................................................................ 25

5 U.S.C. § 552(b)(7)(D) ............................................................................................ 26

5 U.S.C. § 552(b)(7)(E) ............................................................................................ 29

49 U.S.C. § 114(r) ................................................................................................ 18, 19

49 U.S.C. § 44909(c)(3) ............................................................................................ 20

49 U.S.C. § 46110(a) ................................................................................................. 19

50 U.S.C. § 3024(i)(1) .......................................................................................... 16, 17

## Rules

Fed. R. Crim. P. 6(e)(2)(B)(vi) ................................................................................. 15

## Regulations

28 C.F.R. § 16.4(d) ..................................................................................................... 5

49 C.F.R. Part 1520 ................................................................................................... 18

## Other Authorities

69 Fed. Reg. 28,066 (May 8, 2004) ......................................................................... 19

Executive Order 13,526 (Dec. 29, 2009) ........................................................... *passim*

**INTRODUCTION**

This case arises out of a series of nearly identical Freedom of Information Act ("FOIA") requests for records concerning Plaintiff Laura Poitras.  Plaintiff submitted the requests to the Federal Bureau of Investigation ("FBI"), the Office of the Director of National Intelligence ("ODNI"), the Department of Homeland Security ("DHS"), and four DHS components: U.S. Customs and Border Protection ("CBP"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and Transportation Security Administration ("TSA").  Defendants conducted searches for responsive documents.  Several Defendants found none; several others located responsive records, determined that certain information is protected from disclosure under FOIA's statutory exemptions, and released the non-exempt, segregable portions of responsive records subject to FOIA.  Because each of the Defendants' searches was adequate and all of their withholdings proper, Defendants are entitled to summary judgment.

**STATEMENT OF FACTS**[1]

In January 2014, Plaintiff submitted nearly identical FOIA requests to FBI, ODNI, DHS, CBP, TSA, USCIS, and ICE.  The requests sought "all agency records concerning, naming, or relating to Ms. Poitras."  As set forth in the attached declarations, with the exception of DHS (which transferred its FOIA request to CBP and TSA), each Defendant conducted its own search for documents, with varying results.  USCIS and ICE found no responsive records.  The FBI, CBP, and TSA located responsive records, released all non-exempt, segregable information, and determined that the rest is protected from disclosure under FOIA's statutory exemptions. Specifically, the FBI has withheld information under Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and

---

[1] For a more complete statement, the Court is respectfully referred to Defendants' Statement of Material Facts Not in Dispute.

1

7(E); CBP under Exemptions 4, 5, 6, 7(C), and 7(E); and TSA under Exemption 3.  Finally, while ODNI searched and found no responsive records in pertinent non-intelligence files, the agency can neither confirm nor deny the existence or nonexistence of responsive records in its classified holdings.

In support of this motion, Defendants are providing this Court with a series of declarations and exhibits.  Certain information is being provided *ex parte* and *in camera*, including classified and sensitive national security and law enforcement information.  While the use of public declarations is preferred, the FOIA statute recognizes the propriety of *in camera* review, *see* 5 U.S.C. § 552(a)(4)(B), and courts recognize the need for *ex parte* filings in FOIA cases when "(1) the validity of the government's assertion of exemptions cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted," *Arieff v. Dep't of Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983).  While Defendants have made every effort to detail the grounds for their withholdings on the public record, certain information can be provided only *ex parte* and *in camera*.  To require otherwise would force the Government to divulge the very information it is trying to protect.  Accordingly, Defendants are providing the Court with both public and *ex parte* declarations, as follows:

| Exhibit | Defendant | Declarant |
|---------|-----------|-----------|
| 1 | FBI | *Ex Parte* and *In Camera* Declaration of David M. Hardy |
| 2 | FBI | Public Declaration of David M. Hardy |
| 3 | ODNI | Declaration of Jennifer L. Hudson |
| 4 | CBP | Declaration of Sabrina Burroughs |
| 5 | TSA | Declaration of Regina Ann McCoy |
| 6 | TSA | Declaration of Douglas E. Blair |
| 7 | USCIS | Declaration of Jill A. Eggleston |
| 8 | ICE | Declaration of Fernando Pineiro |
| 9 | DHS | Declaration of Kevin L. Tyrrell |

## STANDARD OF REVIEW

The Freedom of Information Act, 5 U.S.C. § 552, "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003). FOIA requires agencies to release documents responsive to a properly submitted request, except for those documents or portions of documents subject to any of nine statutory exemptions to the general disclosure obligation. 5 U.S.C. §§ 552(a)(3), (b)(1)–(b)(9).

"In order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the request records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To meet this burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983), *on reh'g*, 711 F.2d 1076 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

While FOIA requires agency disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest." *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982). FOIA provides nine exemptions that "reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential." *Hale v. DOJ*, 973 F.2d 894, 898 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993), and *overruled on other grounds in later appeal*, 2 F.3d 1055 (10th Cir. 1993). To sustain its burden of justifying nondisclosure of information, an agency may submit a declaration or index describing the withheld material with reasonable specificity, indicating the reasons for non-disclosure, and explaining that reasonably segregable material has been released. *See DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 753 (1989).

3

## ARGUMENT

## I.   DEFENDANTS CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE RECORDS

To demonstrate an adequate records search, an agency must show that "[re]viewing the facts in the light most favorable to the requester, . . . it has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (internal citation omitted).   An agency's search need not be exhaustive, but merely reasonable. *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 8 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001). The question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Steinberg*, 23 F.3d at 551.

Conducting a "reasonable" search requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and "is hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003).   In the absence of "countervailing evidence" or "substantial doubt," agency affidavits or declarations describing such a reasonable and adequate search are sufficient to demonstrate an agency's compliance with FOIA. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (citations omitted).

The declarations submitted by Defendants demonstrate through detailed, non-conclusory averments that each agency or agency component engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.[2]

---

[2] As noted, based on the subject matter of the FOIA request, DHS transferred the request to the FOIA offices at CBP and TSA. Declaration of Kevin L. Tyrrell, Associate Director of FOIA Appeals and Litigation for the DHS Privacy

### A.    The FBI's Search

The FBI's declaration explains the scope of the search conducted, the search terms and tools used to carry it out, and the basis for the FBI's belief that the search would reasonably be expected to locate any documents responsive to Plaintiff's request.   Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, FBI ("Hardy Decl.") (Ex. 2) ¶ 28.   Specifically, the FBI conducted a search of its Central Records System ("CRS") using variations of Plaintiff's name, together with other identifying information from her request letter to help locate responsive records.   *Id.*   The FBI determined that certain responsive records subject to FOIA are protected from disclosure by Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E).[3]

Courts have routinely found that FBI searches of the CRS fully satisfy the FOIA standards of adequacy and reasonableness.   *See, e.g.*, *Dillon v. DOJ*, 102 F. Supp. 3d 272, 284 (D.D.C. 2015); *Marshall v. FBI*, 802 F. Supp. 2d 125, 132–33 (D.D.C. 2011); *McGehee v. DOJ*, 800 F. Supp. 2d 220, 229–30 (D.D.C. 2011).   Here, the FBI's search was both comprehensive and sufficient.

### B.    ODNI's Search

ODNI conducted a search of its pertinent non-intelligence holdings and located no responsive records.   Declaration of Jennifer L. Hudson, Director ODNI's Information Management Division ("Hudson Decl.") (Ex. 3) ¶ 20.   Specifically, ODNI tasked the DNI's

---

Office ("Tyrrell Decl.") (Ex. 9) ¶ 10.  Plaintiff did not appeal DHS's decision to transfer the request, *id.* ¶ 11, and DHS therefore had no reason to conduct an independent search of its records.

[3] In processing Plaintiff's FOIA request, the FBI identified a number of pages containing information or equities originating with other government agencies ("OGAs").  Pursuant to 28 C.F.R. § 16.4(d), in some cases the FBI referred documents to other agencies for direct response to Plaintiff, while in other cases the FBI coordinated with the OGAs to determine how the particular agency wanted the FBI to treat the information at issue.  *See* Hardy Decl. ¶¶ 93, 96. The FBI has identified various OGAs and the grounds for their respective withholdings in the Hardy declaration and the accompanying exhibits. *Id.* ¶¶ 93–105.

Executive Secretariat, Personnel Security, and Human Resource directorates with searching personnel, security, and human resource files for records relating to Plaintiff. *Id.* ¶¶ 20, 23.

Based on the parameters of the FOIA request, in which Plaintiff sought ODNI records relating to herself, ODNI determined that the classified system most likely to hold responsive records is the Terrorist Identities Datamart Environment ("TIDE"), which is a consolidated repository of information on international terrorist identities controlled by the National Counterterrorism Center ("NCTC"), a component of ODNI. *Id.* ¶¶ 14, 20; *accord Carter v. NSA*, 962 F. Supp. 2d 130, 136 (D.D.C. 2013) (intelligence agency could reasonably interpret a FOIA request about a particular person "as one for information about him which the Agency obtained in the course of its communications surveillance activities"), *aff'd*, No. 1:12-CV-00968-CKK, 2014 WL 2178708 (D.C. Cir. Apr. 23, 2014). Consistent with standard practice, ODNI did not task NCTC with conducting a search of TIDE because ODNI could not disclose the results of the search without revealing classified information. Hudson Decl. ¶ 32.[4]

### C.     CBP's Search

After receiving the request, CBP FOIA personnel determined that any responsive records within CBP's control would most likely be located within two CBP computer systems—TECS (and its subsystems) and the Automated Targeting System (ATS). Declaration of Sabrina Burroughs, Director of the FOIA Division, CBP ("Burroughs Decl.") (Ex. 4) ¶ 5. TECS is a law enforcement database that contains enforcement, inspection, and intelligence records relevant to the mission of CBP and other federal agencies. *Id.* ¶ 15. ATS is a decision-support tool used by

---

[4] After Plaintiff clarified that her request for unclassified information includes public-source materials, ODNI conducted a supplemental search. ODNI is working diligently to process the records generated by that search, which are voluminous and include a substantial amount of copyright-protected material. Hudson Decl. ¶ 25, n. 8. The parties have continued to confer about ODNI's supplemental search and, in the interest of expediting the agency's processing, are presently exploring options to limit the scope of the request. Because this process is ongoing, the adequacy of the supplemental search and the propriety of any withholdings are not addressed in this submission.

CBP which contains the official records for Passenger Name Records (PNR) collected by CBP. *Id.* ¶ 25.  Both systems can be searched for records pertaining to particular individuals.  *Id.* ¶¶ 5, 26.

CBP searched TECS and ATS using search terms encompassing Plaintiff's name and date of birth.  *Id.*  Given the nature of the FOIA request, which sought CBP records relating to a particular individual, CBP's search was appropriately targeted at uncovering responsive records. *See, e.g.*, *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 44 (D.D.C. 2012) (finding that CBP's search of TECS for individual arrival and departure records was reasonably calculated to locate responsive records); *Barnard v. DHS*, 598 F. Supp. 2d 1, 3 (D.D.C. 2009) (finding that CBP search of TECS and ATS in response to a request for "all records about me" was reasonable).

In processing the results of CBP's initial searches, the FOIA staff determined that additional responsive records relating to an August 2010 encounter between Plaintiff and CBP at JFK International Airport were likely to be found in CBP's New York field office.  Burroughs Decl. ¶ 30.  These records would not have been captured by the TECS or ATS searches, and were likely to include (in addition to other documents) paper and electronic correspondence between CBP and Plaintiff, as well as correspondence internal to CBP.  *Id.*  Accordingly, personnel in CBP's New York field office conducted both paper and electronic searches using criteria reasonably tailored to identify all responsive records.  *Id.* ¶ 31.

### D.    TSA's Search

After receiving the request, and based on subsequent information provided in correspondence from Plaintiff's counsel as well as in Plaintiff's complaint, TSA FOIA personnel determined that six offices within TSA were reasonably likely to have responsive documents: The Department of Homeland Security's Traveler Inquiry Redress Program ("DHS TRIP"),

TSA's Office of Intelligence Analysis ("OIA"), and TSA offices at John F. Kennedy International Airport ("JFK"), La Guardia Airport ("LGA"), Newark Liberty International Airport ("EWR"), and Washington Dulles International Airport ("IAD").   Declaration of Regina Ann McCoy, TSA FOIA Officer ("McCoy Decl.") (Ex. 5) ¶¶ 14–15.   Using the language from Plaintiff's FOIA request, each of those offices conducted searches for records "concerning, naming, or relating to" Plaintiff.  *Id.* ¶¶ 17–20.

### E.      USCIS's Search

After receiving the request, USCIS personnel determined that any records maintained by USCIS that were responsive to the request and subject to FOIA would be in the records system known as the "Alien File/Central Index System."   Declaration of Jill A. Eggleston, Associate Center Director, FOIA and Privacy Act Unit, USCIS ("Eggleston Decl.") (Ex. 7) ¶ 10.   USCIS conducted a search of the "Alien File/Central Index System" based upon Plaintiff's name and date of birth, as well as a description of the records she sought.  *Id.*   No responsive records were located.  *Id.*

### F.      ICE's Search

The Court should grant summary judgment in favor of ICE on the independent ground that Plaintiff failed to exhaust administrative remedies.   ICE has no record of receiving Plaintiff's FOIA request (which was incorrectly addressed) until it was forwarded to the agency by DOJ counsel after this litigation commenced.  Declaration of Fernando Pineiro, Deputy FOIA Officer, ICE ("Pineiro Decl.") (Ex. 8) ¶¶ 7, 10.  Plaintiff's own records suggest the request was sent to the wrong address.  *Id*. ¶¶ 10,11.  Because Plaintiff brought suit against ICE without first serving it with a FOIA request, ICE is entitled to summary judgment on exhaustion grounds.  *See*

*Willis v. DOJ*, 581 F. Supp. 2d 57, 68 (D.D.C. 2008) ("It is axiomatic that an agency has no obligation to respond to a request that it did not receive.").

Nevertheless, ICE's declaration explains that, after receiving the request, ICE personnel determined that any responsive records would most likely be found in ICE's Office of Homeland Security Investigations (HSI). "Pineiro Decl." ¶ 29. A FOIA analyst conducted a search of the TECS system, which, as noted, is an overarching law enforcement database principally owned and managed by CBP. *Id.* ¶¶ 34–35. As relevant here, TECS contains HSI's case management database, which is used for "storage, tracking, and retrieval of law enforcement and investigative information." *Id.* ¶ 35. The analyst searched TECS using Plaintiff's name and date of birth. *Id.* ¶ 36. This narrow search of TECS located no responsive records, though the analyst did observe from the search results that it appeared that CBP had responsive records. *Id.*

The foregoing discussion and the additional details set forth in the attached declarations demonstrate that each Defendant searched those locations that it determined were reasonably likely to contain responsive documents. The Defendants each "made a good faith effort to search for the records requested," and their "methods were reasonably expected to produce the information requested." *Kidd v. DOJ*, 362 F. Supp. 2d 291, 294 (D.D.C. 2005). The Court should therefore enter summary judgment in favor of Defendants on the adequacy of their searches.

## II.    DEFENDANTS PROPERLY WITHHELD RESPONSIVE DOCUMENTS

After reviewing the documents responsive to Plaintiff's requests, FBI, CBP, and TSA determined that certain documents contained information subject to one or more of FOIA's nine statutory exemptions to disclosure. For its part, ODNI invoked Exemptions 1 and 3 as grounds for declining to authorize a search of its classified holdings. Through discussions between the

parties, the dispute before the Court has been narrowed to certain withholdings pursuant to FOIA

Exemptions 1, 3, 4, 5, 7(A), 7(D), and 7(E).[5]   Because the attached declarations demonstrate that

the withholdings are proper, the Court should enter summary judgment for the Defendants.

### A.      Exemption 1 (FBI, ODNI)

The FBI and ODNI have determined that certain information implicated by Plaintiff's

FOIA request is protected under Exemption 1.   Exemption 1 protects from disclosure records

that are "(A) specifically authorized under criteria established by an Executive order to be kept

secret in the interest of national defense or foreign policy and (B) are in fact properly classified

pursuant to such Executive order."  5 U.S.C. § 552(b)(1).

Exemption 1 allows agencies to withhold classified information that is protected in the

interest of national security and foreign policy.   An agency establishes that it has properly

withheld information under Exemption 1 by showing that it has met the four requirements set

forth in E.O. 13,526: (1) an original classification authority classifies the information; (2) the

U.S. Government owns, produces, or controls the information; (3) the information is within one

of eight protected categories listed in section 1.4 of the E.O.; and (4) the original classification

authority determines that the unauthorized disclosure of the information reasonably could be

expected to result in a specified level of damage to the national security, and the original

classification authority is able to identify and describe the damages.  E.O. 13,526 § 1.1(a) (Dec.

29, 2009).  The Court must afford "substantial weight" to agency affidavits concerning classified

information.  *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927; *ACLU v. Dep't of Def.,* 628 F.3d 612,

619 (D.C. Cir. 2011).

---

[5] Plaintiff has advised Defendants that she does not contest withholdings pursuant to Exemptions 6 and 7(C).
Accordingly, although withholdings pursuant to those exemptions are detailed and supported in the FBI and CBP
declarations, they are not discussed in this memorandum.

### 1.    The FBI Has Properly Withheld Information Under Exemption 1

The FBI has determined that information responsive to Plaintiff's FOIA request is protected from disclosure under Exemption 1.  The FBI has provided a declaration from an individual who is authorized to classify national security information.  Hardy Decl. ¶ 41.  The declarant has personally reviewed the documents at issue and determined that the information withheld is properly classified consistent with the requirements of Executive Order 13,526.  *Id.* ¶ 43.  Further, the declaration confirms that the withheld information is owned and under the control of the United States.  *Id.*

The FBI has also determined, and articulated with reasonable specificity, that the information protected from disclosure falls squarely within the category of information set forth in section 1.4(c) of Executive Order 13,526.  Hardy Decl. ¶¶ 45–50.  The information at issue "contains detailed intelligence activity information gathered or compiled by the FBI on a specific individual or organization of national security interest," which is classified at the "Secret" level because its release reasonably could be expected to cause serious damage to national security.  *Id.* ¶ 49.  In particular, disclosure would "reveal the actual intelligence activity or method utilized by the FBI against a specific target," "disclose the intelligence-gathering capabilities of the method," and "provide an assessment of the intelligence source penetration of a specific target during a specific period of time."  *Id.*  "With the aid of this detailed information, hostile entities could develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-gathering activities," with potentially grave consequences for "the FBI's efforts to detect and apprehend violators of national security and criminal laws of the United States."  *Id.* ¶ 48.  The FBI has provided additional detail—information that is itself classified—concerning these withholdings in its *ex parte* declaration.  *See* Hardy *Ex Parte* Decl. (Ex. 1).

As this and other courts have recognized, FBI intelligence information may properly be protected as classified information when it concerns specific intelligence activities or intelligence sources and methods. *See, e.g.*, *Dillon*, 102 F. Supp. 3d at 284; *Wheeler v. DOJ*, 403 F. Supp. 2d 1, 12 (D.D.C. 2005). Based on the FBI's declarations, the sensitive information contained in the responsive documents, and the deference owed to the determinations of national security officials in this context, *see Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003), the Court should uphold the Exemption 1 withholdings by the FBI.

### 2.   ODNI'S Glomar Response Is Proper Under Exemption 1

As discussed, ODNI conducted a search of its pertinent, non-intelligence files for records relating to Plaintiff and located no responsive records. Hudson Decl. ¶ 21. As for any potentially responsive records in ODNI's classified holdings, ODNI responded that it could neither confirm nor deny the existence or nonexistence of such records. *Id.* This *Glomar* response, which is expressly provided for by section 3.6(a) of Executive Order 13,526, *see* 75 Fed. Reg. at 719, was proper under Exemption 1.

Exemption 1 covers "not only the content of protected government records but also the fact of their existence or nonexistence, if that fact itself properly falls within the exemption." *Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009) (internal citation omitted). The doctrine is an "exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information." *Roth v. DOJ*, 642 F.3d 1161, 1178 (D.C. Cir. 2011). The response is appropriate when "to confirm or deny the existence of records . . . would cause harm cognizable under a[] FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982). Courts in this circuit have consistently upheld *Glomar* responses where confirming or denying

the existence of records would reveal classified information protected by Exemption 1. *See, e.g.*,
*Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926 (D.C. Cir. 2012); *Larson*, 565 F.3d at 861–62;
*Frugone v. CIA*, 169 F.3d 772, 774–75 (D.C. Cir. 1999).

Here, ODNI has provided a declaration from an individual who is authorized to classify
national security information.  Hudson Decl. ¶ 3.  The declarant has personally reviewed ODNI's
*Glomar* response and determined that the existence or nonexistence of records relating to Ms.
Poitras in the agency's classified holdings is currently and properly classified consistent with the
requirements of E.O. 13,526.  *Id.* ¶ 34.  Moreover, the declaration confirms that the information
at issue is owned by and under the control of the United States.  *Id.* ¶ 14.

Further, with respect to section 1.4's eight categories of classification, the declaration
demonstrates that the information protected from disclosure falls squarely within the category of
information set forth in section 1.4(c) of E.O. 13,526, which provides that information may be
classified if it concerns "intelligence activities (including covert action), intelligence sources or
methods, or cryptology."  *Id.* ¶ 14.  In particular, Plaintiff's FOIA request for records about
herself implicates TIDE, "the system most likely to house responsive records" about particular
individuals, *id.* ¶ 18, and TIDE records, in turn, implicate "a great deal of intelligence
information obtained through the collection, operations, and reporting of the [Intelligence
Community], implicating the most sensitive sources and methods of intelligence gathering," *id.* ¶
14; *accord Carter*, 962 F. Supp. 2d at 136 (intelligence agency could reasonably interpret a
FOIA request about a particular person "as one for information about him which the Agency
obtained in the course of its communications surveillance activities").  Given that the "existence
or nonexistence of a particular TIDE record is a classified fact," ODNI can neither confirm nor
deny whether there are responsive records in TIDE, because "[e]ither confirmation would reveal

sensitive information about intelligence activities and intelligence sources and methods that are protected from disclosure by statute and Executive Order 13526." Hudson Decl. ¶¶ 18, 34.

Finally, the declaration explains the harms to national security that could ensue if this information were disclosed. Confirming or denying whether ODNI does or does not possess TIDE records reflecting an intelligence interest in a particular individual would cause harm to the national security by providing information that adversaries could use to evade detection or monitoring by the U.S. intelligence community. Hudson Decl. ¶ 28. "If the United States confirms that it is conducting a particular intelligence activity, or that it has gathered information on a particular person, such activities would be compromised, and foreign adversaries and terrorist organizations could use that information to avoid detection." *Id.* Conversely, "confirming that a certain intelligence activity or relationship does not exist, either in general or with respect to specific targets or channels, would harm national security because alerting our adversaries to channels or individuals that are not under surveillance could likewise help them avoid detection." *Id.* In sum, "a Glomar response to Plaintiff's request is appropriate because the existence or nonexistence of ODNI records responsive to Plaintiff's request is a classified fact, the disclosure of which could be expected to cause damage to the national security." *Id.* ¶ 34.

## III.   Exemption 3 (FBI, ODNI, TSA)

In support of their handling of Plaintiff's FOIA requests, FBI, ODNI, and TSA have invoked Exemption 3, which protects information that is "specifically exempted from disclosure by statute" under certain conditions. 5 U.S.C. § 552(b)(3). To qualify as a statute that permits the withholding of information pursuant to Exemption 3, a statute must "(i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

(ii) establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." *Id.* "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978).

### A.   FBI Properly Withheld Information Under Exemption 3

The FBI has asserted Exemption 3 to protect information pertaining to grand jury proceedings. The tradition of secrecy in grand jury proceedings is "older than our Nation itself," *In re Pet. of Craig*, 131 F.3d 99, 101 (2d Cir. 1997), and the federal rules prohibit government attorneys from disclosing any information about them, Fed. R. Crim. P. 6(e)(2)(B)(vi); *cf. United States v. John Doe, Inc. I*, 481 U.S. 102, 111–12 (1987) (confirming that DOJ was unable to disclose grand jury information even internally between its own components without a court order). It is well settled that Rule 6(e) qualifies as a withholding statute for the purposes of Exemption 3, and that information associated with grand jury proceedings is therefore protected under Exemption 3. *See, e.g.*, *Lopez v. DOJ*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (applying Exemption 3 to grand jury information).

The grand jury information withheld in this case consists of

> the names and/or identifying information of third parties who were either subpoenaed to provide testimony or actually provided testimony to the Federal Grand Jury; the company names and/or employees served with Federal Grand Jury subpoenas; information identifying specific records subpoenaed by the Federal Grand Jury; and other information on the internal workings of the Federal Grand Jury.

Hardy Decl. ¶ 52. The FBI declaration makes clear that, with respect to the investigative records at issue, "only that information which explicitly discloses matters occurring before a Federal Grand Jury has been withheld." *Id.* Because disclosure of this information would reveal

protected aspects of the grand jury proceedings, including "the identity of witnesses, and the scope, length, direction, and strategy of the investigation," *Blackwell v. FBI*, 680 F. Supp. 2d 79, 93 (D.D.C. 2010), *aff'd*, 646 F.3d 37 (D.C. Cir. 2011), the information was properly withheld under Exemption 3.

The FBI has also invoked Exemption 3 to protect information covered by section 102A(i)(1) of the National Security Act of 1947, as amended.  Section 102A(i)(1) states that the DNI "shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  The provision qualifies as a withholding statute under Exemption 3.  *See, e.g.*, *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).  The FBI is one of seventeen member agencies comprising the intelligence community ("IC"), and as such must protect intelligence sources and methods.  Hardy Decl. ¶ 49.

The Supreme Court has recognized the "wide-ranging authority" provided by the National Security Act, entrusting the agency to "weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process."  *CIA v. Sims*, 471 U.S. 159, 180 (1985).  Rather than placing limits on the scope of the National Security Act, "Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence."  *Id.* at 169–70.  For the same reason, the FBI must invoke the National Security Act to protect its intelligence sources and methods and those of the broader intelligence community.  *See* Hardy Decl. ¶ 55.

### B.      ODNI'S Glomar Response Was Proper Under Exemption 3

ODNI has asserted Exemption 3 in support of its *Glomar* response relating to records in its classified holdings, the existence or nonexistence of which would reveal whether or not Plaintiff is of intelligence interest to ODNI or the broader intelligence community.  That *Glomar* response is separately and independently justified under this exemption.  *See Larson*, 565 F.3d at 862–63 (recognizing that "agencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other.").

Specifically, ODNI invokes section 102A(i)(1) of the National Security Act of 1947, as amended.  Hudson Decl. ¶ 10.  As discussed, section 102A(i)(1) states that the DNI "shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  And as explained in ODNI's explanation of its *Glomar* response under Exemption 1, ODNI has determined that confirming the existence or nonexistence of records responsive to Plaintiff's request in the TIDE database would reveal whether or not ODNI has or once had intelligence interest in Plaintiff or her activities, a properly classified fact.   Hudson Decl. ¶ 30.   That information falls squarely within the scope of the National Security Act, whose mandate to withhold information is actually *broader* than the authority to withhold information pursuant to Exemption 1 and Executive Order 13,526.   *Cf. Gardels*, 689 F.2d at 1107 (noting that the executive order governing classification of documents was "not designed to incorporate into its coverage the CIA's full statutory power to protect all of its 'intelligence sources and methods'"). This is because, unlike section 1.1(a)(4) of Executive Order 13,526, the National Security Act does not require ODNI to determine that the disclosure of the information would be expected to result in damage to national security.  *See Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 58 n.3 (D.C. Cir. 2003) ("Because we conclude that the Agency easily establishes that

the records . . . are exempt from disclosure under Exemption 3, we do not consider the applicability of Exemption 1."). Congress made that determination when it enacted the National Security Act.

### C.   TSA Properly Withheld Information Under Exemption 3

For TSA, the relevant Exemption 3 statute is 49 U.S.C. § 114(r). That statute prohibits the disclosure of information that "would be detrimental to the security of transportation" if released and explicitly commands that disclosure be prohibited "[n]otwithstanding section 552 of title 5." The statute has been implemented through regulations found at 49 C.F.R. Part 1520, which provide that Sensitive Security Information ("SSI") protected from disclosure shall include security screening procedures, including "information and sources of information used by a passenger . . . screening program." *See* 49 C.F.R. § 1520.5(b)(9)(ii). As numerous courts have recognized, SSI satisfies the criteria for the withholding of information pursuant to Exemption 3. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DHS*, 928 F. Supp. 2d 139, 146 (D.D.C. 2013); *Skurow v. DHS*, 892 F. Supp. 2d 319 (D.D.C. 2012); *Tooley v. Bush*, No. 06-306, 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006), *rev'd & remanded in part  on other grounds sub nom.*, *Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009).

TSA, as the entity vested with authority to determine what information constitutes SSI and to prohibit its disclosure, has provided a declaration explaining that certain information contained in TSA's documents constitutes SSI. Declaration of Douglas E. Blair, Chief of the Sensitive Security Information Program Section, Office of Law Enforcement & Federal Air Marshal Service, TSA ("Blair Decl.") (Ex. 6). This information falls into two categories.

First, information redacted from the twenty-one pages of DHS TRIP records produced to Plaintiff is protected under 49 C.F.R. § 1520.5(b)(9)(ii), which prohibits the disclosure of

"[i]nformation and sources of information used by a passenger or property screening program or system."  The records at issue include information that would tend to confirm or deny whether Plaintiff was or was not on a federal watchlist.  Blair Decl. ¶ 12.  Because TSA uses federal watchlists in vetting passengers attempting to board aircrafts, the information at issue is "used by a passenger screening program or system, which means that it is SSI under 49 C.F.R. § 1520.5(b)(9)(ii)."  *Id.* ¶ 10 (citing Protection of Sensitive Security Information, 69 Fed. Reg. 28,066, 28,071 (May 8, 2004) (interim final rule adding 49 C.F.R. § 1520.5(b)(9)(ii)) ("This is intended to cover . . . lists of individuals identified as threats to transportation or national security.")).

Second, the SSI Program reviewed the result of a search for responsive records conducted by TSA's Office of Intelligence Analysis ("OIA") and determined that TSA cannot disclose whether OIA located any records concerning Plaintiff because acknowledging the existence or non-existence of such records would reveal SSI.  Blair Decl. ¶ 11.  Because OIA generally maintains a record relating to a particular airline passenger only when the passenger was on a federal watchlist at the time of a flight, "revealing that OIA has a record of a passenger would generally confirm that the passenger was on a watchlist," and "revealing that OIA does not have a record of a passenger would generally confirm that the passenger was not on a watchlist."  *Id.* ¶ 12.  As explained, under 49 U.S.C. § 114(r) and TSA's SSI regulations, TSA cannot disclose a passenger's status with respect to a watchlist, and therefore can neither confirm nor deny whether OIA located any records responsive to Plaintiff's FOIA request.  *Id.*  This approach is "consistent with the Federal government's policy regarding watchlist information and the practice of other Federal agencies that maintain watchlist information when responding to FOIA requests.  *Id.* ¶ 13.

Because TSA has determined that this information constitutes SSI, the agency's withholdings under Exemption 3 should be upheld.  Indeed, pursuant to 49 U.S.C. § 46110(a), "[j]udicial review of TSA's determination that certain material is nondisclosable 'sensitive security information' is available exclusively in federal circuit courts." *Elec. Privacy Info Ctr.*, 928 F. Supp. 2d at 147 n.4; *City of Rochest v. Bond*, 603 F.2d 927, 934-35 (D.C. Cir. 1979); *Koutny v. Martin*, 530 F. Supp. 2d 84, 91 (D.D.C. 2007).

## IV.    Exemption 4 (CBP)

CBP has withheld information under Exemption (b)(4), which protects records that contain "commercial or financial information obtained from a person" that is "privileged or confidential."  5 U.S.C. § 552(b)(4).  Commercial or financial information is "confidential" for purposes of Exemption 4 if disclosure is likely either "(1) to impair the Government's ability to obtain necessary information in the future," or "(2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974).  This test recognizes that Exemption 4 protects both the government's interest in the continued availability and reliability of information from third parties, as well as the submitter's interests in the confidentiality of commercial or financial information.  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 877–79 (D.C. Cir. 1992).

Here, CBP redacted certain information consistent with Exemption 4 to protect confidential business information of air carriers that appears in Passenger Name Records found in ATS.  U.S. law authorizes CBP to require airlines to provide it with passenger name record information.   49 U.S.C. § 44909(c)(3).  These records include information about persons traveling to and from the United States on commercial air carriers, to the extent it is collected by

the carrier.  Burroughs Decl. ¶ 25.  Withholding this business information is proper because its disclosure "could cause substantial competitive harm to the airlines that provide the information, and may impair the Government's relations with air carriers and the ability to collect such information in the future."  *Id.* ¶ 28; *see also Nat'l Parks & Conservation Ass'n*, 498 F.2d at 770 (withholding under Exemption 4 proper where disclosure could "impair the government's ability to obtain necessary information in the future," or "cause substantial competitive harm").

## V.      Exemption 5 (FBI, CBP)

FBI and CBP withheld information pursuant to Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  Records are exempt from disclosure if they would be "normally privileged in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Exemption 5 thus incorporates the privileges that are available to an agency in civil litigation, including the protection of attorney work product, attorney-client communications, and deliberative process materials.  *Id.* at 148–50; *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).

### A.      CBP Properly Withheld Information Under Exemption 5

CBP has withheld information protected by the attorney-client privilege, which protects "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client."  *Whitaker v. CIA*, 31 F. Supp. 3d 23, 40 (D.D.C. 2014) (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)), *aff'd*, 2016 U.S. App. LEXIS 1086 (D.C. Cir. Jan. 21, 2016).  Here, CBP has withheld Office of Chief Counsel communications among CBP attorneys, as well as communications

between CBP attorneys and other CBP personnel. Burroughs Decl. ¶¶ 33, 41, 46. These communications involved CBP attorneys who "were acting in their capacity as legal counsel for CBP," and "the communications were for the purpose of rendering legal services." *Id.* ¶ 33; *see also Tax Analysts*, 117 F.3d at 618 (recognizing that in "the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer"). This information must be protected to ensure that the Government's attorneys may communicate in candor with their clients. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (recognizing that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client").

CBP also relies on Exemption 5 to withhold information protected by the deliberative process privilege. Burroughs Decl. ¶¶ 33, 41. This privilege protects agency documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears, Roebuck & Co.*, 421 U.S. at 150. Exemption 5 applies to these materials because they include communications among CBP attorneys and between CBP attorneys and CBP personnel that reflect the agency's deliberative processes and conclusions concerning "CBP inspections, processes, and legal authorities." Burroughs Decl. ¶¶ 33, 41; *see also Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) ("There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the give-and-take—of the deliberative process—by which the decision itself is made.'").

Finally, CBP also withheld information protected by the work product doctrine, which protects materials prepared by attorneys during, or in reasonable anticipation of, litigation. *Hickman v. Taylor*, 329 U.S. 495, 509–10 (1947). The doctrine protects records generated as part

of a law enforcement investigation when the investigation is "based upon a specific wrongdoing and represent[s] an attempt to garner evidence and build a case against the suspected wrongdoer." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

Here, the CBP declaration explains that CBP withheld internal legal memoranda found during the search relating to the 2010 encounter between Plaintiff and CBP.  Burroughs Decl. ¶ 49.  These memoranda were prepared by CBP attorneys and reflect the agency's deliberative processes and conclusions concerning "CBP inspections, processes, and legal authorities."  *Id.*

### B.    FBI Properly Withheld Information Under Exemption 5

The FBI has withheld materials protected by the deliberative process privilege. Specifically, the FBI asserted Exemption 5 to withhold information from an FBI FD-542 form (Accomplishment Report form).  "The document is an intra-agency communication from the New York Field Office ("NY FO")," in which "the NY FO is analyzing, delivering, sorting ideas and providing recommendations of things to consider for this particular investigation."  Hardy Decl. ¶ 61.  "The advisory and deliberate nature of this information can be evidence by the word 'recommendations' preceding the redaction block on Poitras-158."  *Id.*  Because releasing such opinions and recommendations would "chill the full and frank discussion between agency personnel," *id.*, the FBI has properly withheld this information pursuant to Exemption 5.

## VI.    Exemption 7 (FBI, CBP)

Information withheld by FBI and CBP is also protected from disclosure under Exemption 7, 5 U.S.C. § 552(b)(7), which protects "records or information compiled for law enforcement purposes" when disclosure of such records would cause certain types of harm.  Of relevance here, the exemption applies when disclosure

(A)  could reasonably be expected to interfere with enforcement proceedings,

. . .

      (D)  could reasonably be expected to disclose the identity of a confidential source, including State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, [or] (E)  would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7).   As detailed below, Defendants have met their burden under FOIA and established that their withholdings under Exemption 7 are proper.

## A.   The Records Were "Compiled for Law Enforcement Purposes"

Records withheld under each prong of Exemption 7 must first satisfy the threshold requirement that they be "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  "In assessing whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. DOJ*, 284 F.3d 172, 176–77 (D.C. Cir. 2002).   Documents are compiled for law enforcement purposes if they meet two criteria: (1) the documents were created or acquired in the course of an investigation related to the enforcement of federal laws, and (2) the nexus between the activity and one of the agency's law enforcement duties was based on information sufficient to support at least a "colorable claim" of the relationship's rationality.  *Abdelfattah v. DHS*, 488 F.3d 178, 186 (3d Cir. 2007).

Here,  each  agency's  declaration  makes  clear  that  the  information  withheld  under Exemption 7 was "compiled for law enforcement purposes."  For example, the FBI's declaration explains that its records were compiled as part of a criminal investigation into Plaintiff's "potential involvement with anti-coalition forces during her time in Iraq as an independent media

representative." Hardy Decl. ¶ 64. The investigation of criminal conduct is plainly a law enforcement purpose. *See, e.g.*, *Baez v. FBI*, 443 F. Supp. 2d 717, 724 (E.D. Pa. 2006) ("[T]here is no question" that documents that "pertain to the investigation of crimes" were "compiled for law enforcement purposes.").

For its part, CBP's records include documents that are taken from a database system that contains enforcement, inspection, and intelligence records which are relevant to the agency's anti-terrorism and law enforcement missions. Burroughs Decl. ¶ 15. Because these records relate to the Government's mission to enforce immigration laws and to secure the border, they satisfy the threshold inquiry under Exemption 7. *See Strunk*, 845 F. Supp. 2d at 43 (CBP TECS records satisfied Exemption 7 threshold, as they concerned "enforcement checks on individuals seeking to enter or depart the United States").

## B.    Exemption 7(A) (FBI)

The FBI has determined that certain documents must be withheld in full under Exemption 7(A) because their disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Congress enacted Exemption 7(A) because it "recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases" in court. *NLRB v. Robbins Tire & Rubber Corp.*, 437 U.S. 214, 224 (1978). The exemption must therefore be construed pragmatically, so as to ensure that the statutory protection of law enforcement records is given "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

"To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be

expected to cause some articulable harm." *Manna v. DOJ*, 51 F.3d 1158, 1164 (3d Cir. 1995). The exemption broadly applies to pending or prospective proceedings, including ongoing criminal, civil, and administrative investigations. *Id.* at 1165. Moreover, "Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927.

In justifying its reliance on Exemption 7(A), the Government need not discuss the exemption on a document-by-document basis. Instead, an agency may "group[] documents into relevant categories that are sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (internal citation omitted).

The FBI has asserted Exemption 7(A) to protect file numbers of pending FBI investigations. Hardy Decl. ¶ 76. "The release of the file numbers pertaining to investigative activities of third parties of an on-going FBI investigation could result not only in the acknowledgment of the existence of the investigation, but also in the identification of suspects and thus jeopardize the investigation." *Id.* As a result, disclosure of this information "would interfere with pending and prospective enforcement proceedings, including investigations and prosecutions." *Id.* The information was therefore properly withheld pursuant to Exemption (7)(A). *See, e.g.*, *Hammouda v. U.S. Dep't of Justice Office of Info. Policy*, 920 F. Supp. 2d 16, 24 (D.D.C. 2013) (FBI properly applied exemption 7(A) in withholding investigation file numbers).

## C.    Exemption 7(D) (FBI)

The FBI has withheld information under Exemption 7(D), which permits the redaction of law enforcement records where their release "could reasonably be expected to disclose the

identity of a confidential source."   5 U.S.C. § 552(b)(7)(D).   Unlike some other FOIA exemptions, Exemption 7(D) is an absolute protection, and requires no balancing of public and private interests.  *See Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575–76 (D.C. Cir. 1990).  Indeed, "Exemption 7(D) has long been recognized as affording the most comprehensive protection of all of FOIA's law enforcement exemptions."  *Billington v. DOJ*, 301 F. Supp. 2d 15, 22 (D.D.C. 2004).

A source is confidential within the meaning of Exemption 7(D) if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  *DOJ v. Landano*, 508 U.S. 165, 172 (1993) (quoting S. REP. NO. 93-1200, at 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6291)).  "Under Exemption 7(D), the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential."  *Id.*  Accordingly, agencies invoking Exemption 7(D)'s protection with respect to an implied assurance of confidentiality must demonstrate expectations of confidentiality based upon the "circumstances" of the case at issue.  *Id.* at 180; *see also Billington v. DOJ*, 233 F.3d 581, 585 (D.C. Cir. 2000) ("[T]he circumstances under which the FBI receives information might support a finding of an implied assurance of confidentiality").  As the FBI has explained, "sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public."  Hardy Decl. ¶ 79.

Here, the FBI asserted Exemption 7(D) to protect two categories of sources: confidential information from foreign governments, and information from third parties who provided

information under an implied assurance of confidentiality.  Hardy Decl. ¶¶ 79–83.  First, the FBI

has invoked Exemption 7(D) to protect the "identity as well as the information provided by an

intelligence agency of a foreign government with an implicit understanding of confidentiality."

Hardy Decl. ¶ 79.  As explained by the FBI, "the foreign intelligence agency referenced in the

responsive records here specifically requested its relationship with the FBI be classified."  *Id.* ¶

81.  This evidences the foreign government's expectation of "confidentiality in its interactions

with the FBI and with regard to the information it provided to the FBI for law

enforcement/national security purposes under applicable information sharing agreements."  *Id.*;

*see also Shaw v. FBI*, 749 F.2d 58, 62 (D.C. Cir. 1984) ("Nor is it possible to deny that foreign []

law enforcement agencies can qualify as confidential sources for purposes of Exemption 7.");

*Billington*, 233 F.3d at 585 n.5 (recognizing that foreign government agencies may qualify as

confidential sources).  Under these circumstances, there can be no doubt that "the source

furnished information with the understanding that the FBI would not divulge the communication

except to the extent the Bureau thought necessary for law enforcement purposes."  *Landano*, 508

U.S. at 174.

An implied assurance of confidentiality is further reflected by both the customary trust

that exists between the FBI and foreign government and law enforcement agencies, as well as the

significant implications that disclosure of material received from such sources would have on

diplomatic relations.  As explained in the FBI's declaration,

> The release of official United States Government documents revealing the
> existence of such a confidential relationship with a current and long-term foreign
> government partner, in contravention of law enforcement/national security
> information sharing agreements, reasonably could be expected to strain relations
> between the United States and the foreign government and lead to negative
> diplomatic, political, or economic repercussions.

Hardy Decl. ¶ 81.  "Without assurance that information given to the FBI would be protected from public disclosure, [foreign] law agencies may very well abstain from providing information to the FBI in their cooperative endeavors." *Beard v. DOJ*, 917 F. Supp. 61, 63 (D.D.C. 1996).

The FBI has also invoked Exemption 7(D) to protect source-identifying information, including information concerning "an individual source who is a source symbol numbered information under express grant of confidentiality."  Hardy Decl. ¶ 85.  "The withheld information includes the name, social security number, phone number, file number, source number, and the type of source expenditures."  *Id.*  The disclosure of this information likely would reveal the confidential source's identity, "forever neutraliz[ing] the source" and resulting in a "chilling effect on the activities and cooperation of other sources." *Id.*  The information was therefore properly withheld.  *See, e.g.*, *Bullock v. FBI*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008) (withholding was proper where requested information could enable plaintiff to identify confidential source).

### D.  Exemption 7(E) (FBI and CBP)

CBP and FBI have withheld information under Exemption 7(E), which protects information whose release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *see also Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("[T]he importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").  The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law

enforcement investigations or prosecutions. *Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997) (citing *Fisher v. DOJ*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992)).

Here, the FBI withheld eight types of information to protect investigative techniques and procedures: (1) sensitive file numbers or sub-file names; (2) internal, non-public email or IP addresses; (3) dates or types of investigations; (4) identity or location of FBI or Joint Units, Squads, or Divisions; (5) collection or analysis of information; (6) investigative focus; (7) law enforcement strategies or techniques for addressing the techniques, tactics or procedures (TTPs) used by an organization; (8) monetary payments for investigative techniques. Hardy Decl. ¶¶ 87–95.

The Hardy declaration provides detailed and specific justifications for withholding each type of information under Exemption 7(E). *See id.* In each instance, the FBI has determined as a categorical matter that disclosure of the particular type of information implicates law enforcement procedures and techniques and could enable individuals to circumvent the law. For example, the FBI has withheld sensitive case file numbers on the basis that revealing file numbering conventions could identify "the investigative interest or priority given to such matters" and allow suspects to use these numbers, together with other known information, to circumvent the FBI's law enforcement efforts. Hardy Decl. ¶ 85; *see also Labow v. DOJ*, 66 F. Supp. 3d 104, 127 (D.D.C. 2014) (upholding FBI's assertion of Exemption 7(E) to protect sensitive case file numbers). Similarly, the FBI has protected information about the types and dates of investigations—i.e., whether an investigation was "preliminary" or "full" and the date it was initiated—because disclosure would allow "individuals to know the types of activities that would trigger a full investigation as opposed to a preliminary investigation, and the particular

dates the investigation covers, which would allow individuals to adjust their behavior accordingly." Hardy Decl. ¶ 87. In the same way, disclosure of information about the focus of specific FBI investigations "would reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity," thereby allowing criminals to "gauge the FBI's strengths and weaknesses within certain areas of the criminal arena and structure their activities in a manner that avoids detection." *Id.* ¶ 90.

The Hardy declaration sets forth similar law enforcement rationales for protecting internal email and intranet information, information about the location and identity of FBI investigative units, the methods used to collect and analyze investigative information, information relating to "the techniques, tactics, and/or procedures ('TTPs')" used by certain organizations, and information about monetary payments for investigative techniques. Hardy Decl. ¶¶ 85–92; *see also Labow*, 66 F. Supp. 3d at 127; *Light v. DOJ*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013).

For its part, CBP asserts Exemption 7(E) to protect "the computer screen transaction code, computer program transaction code, computer function codes (i.e., 'PF codes' or 'navigation keys') and information that would reveal the results of specific law enforcement database queries." Burroughs Decl. ¶ 21. The codes "facilitate access to and navigation through" the TECS system, and release of the information would "enable an individual knowledgeable in computer mainframes and systems to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and interfere with enforcement proceedings." *Id.* ¶ 22. *See also id.* ("Public dissemination of these access codes would permit unauthorized users to manipulate records to avoid recognition, instant detection and apprehension.").

Courts have routinely upheld withholding of computer transaction and function codes, including those associated with the TECS system.  *See, e.g.*, *Strunk*, 845 F. Supp. 2d 38 (collecting cases); *Miller v. DOJ*, 872 F. Supp. 2d 12, 29 (D.D.C. 2012) (upholding non-disclosure of TECS program and access codes on the ground that "disclosing [them] would expose a law enforcement technique, promote circumvention of the law by allowing criminals to conceal their activity, or allow fraudulent access to DEA's databases"); *Bloomer v. DHS*, 870 F. Supp. 2d 358, 369 (D. Vt. 2012) (upholding non-disclosure of "various codes and case numbers," including TECS Record ID numbers, because disclosure of "internal instructions, codes, and guidance would reveal both a law enforcement technique and an internal investigative practice").

CBP has also withheld information concerning law enforcement techniques and methods which, if disclosed, could enable individuals to circumvent the law.  *See* Burroughs Decl. ¶ 24. For example, CBP withheld narrative information from TECS records describing law enforcement techniques and procedures used by CBP officers, *id.*; information from New York field office records concerning non-public law enforcement techniques and procedures used by CBP and ICE, "including information explaining methods regarding data destruction," *id.* ¶ 37; and email communications between CBP personnel "describing techniques and processes used during CBP inspections and other law enforcement functions," *id.* ¶ 44.  The Burroughs declaration concludes that the disclosure of this information "would enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate countermeasures," with "debilitating and detrimental" consequences to both CBP and the law enforcement community.  *Id.* ¶¶ 24, 37, 44.  Because disclosure of this information could

allow individuals to circumvent law enforcement investigations, the information is protected by Exemption 7(E).  *See, e.g.*, *Brunetti v. FBI*, 357 F. Supp. 2d 97, 108 (D.D.C. 2004).

Further, in response to Plaintiff's FOIA request, CBP advised that it could neither confirm nor deny the existence or nonexistence of certain records in its search results which would tend to indicate whether a particular person is or ever was listed on a federal watchlist. Exemption (7)(E) would apply to any such records, if they existed, "given their nexus to the terrorist watch-list, because information related to any such status would disclose law enforcement techniques and procedures which are not publicly known or disclosed."  Burroughs Decl. ¶ 13.

## VII.   Defendants Have Produced All Reasonably Segregable Portions of Responsive Records

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  This provision does not require disclosure of records in which the non-exempt information that remains is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.").

CBP and FBI have produced all reasonably segregable information.  CBP has conducted a line-by-line review of the records determined to be responsive and determined that all reasonably segregable portions of the responsive records have been released to Plaintiff. Burroughs Decl. ¶ 52.  The FBI has reviewed the 256 pages released in part and determined that the protected information was either exempt itself or so intertwined with non-exempt information that segregation of the non-exempt information was not reasonably possible without revealing

exempt information or leaving nothing but meaningless content.  With respect to the 83 pages

withheld in full (not counting four duplicate records), FBI FOIA personnel determined that the

83 pages were either fully covered by one more of the cited FOIA exemptions or so intertwined

with non-exempt information that no information could reasonably be segregated for release.

Hardy Decl. ¶ 110.  For its part, TSA has explained that the only information redacted from the

responsive DHS TRIPS records was SSI, and that no other portions of those records constituted

SSI.  McCoy Decl. ¶ 26.  Accordingly, Defendants have produced all "reasonably segregable

portion[s]" of the responsive records.  5 U.S.C. § 552(b).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their

Motion for Summary Judgment and enter final judgment for them in this matter.


June 6, 2016                              Respectfully submitted,



                                          BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General

                                          MARCIA BERMAN
                                          Assistant Branch Director,
                                          Federal Programs Branch

                                          */s/ Samuel M. Singer*
                                          SAMUEL M. SINGER
                                          D.C. Bar. No. 1014022
                                          Trial Attorney, Federal Programs Branch
                                          Civil Division
                                          United States Department of Justice
                                          20 Massachusetts Ave., NW, Room 6138
                                          Washington, DC 20001
                                          Tel: (202) 616-8014 | Fax: (202) 616-8470
                                          samuel.m.singer@usdoj.gov

                                          *Counsel for Defendant*

**Certificate of Service**

I hereby certify that on June 6, 2016, I electronically filed the foregoing Memorandum with

the Clerk of the Court using the CM/ECF system, which will send notice of this filing to all

parties.


/s/ Samuel M. Singer
SAMUEL M. SINGER