UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.,<br><br>　　　　　Defendants. | Case No. 1:15-cv-1091 (KBJ) |

**EXHIBIT 2: Public Declaration of David M. Hardy (FBI)**

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LAURA POITRAS | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:15-cv-01091 |
| UNITED STATES DEPARTMENT OF JUSTICE, et. al. | ) | |
| Defendants. | ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), of the Federal Bureau of Investigation

("FBI"), in Winchester, Virginia.  I have held this position since August 1, 2002.  Prior to joining

the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the

Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of Information Act

("FOIA") policy, procedures, appeals, and litigation for the Navy.  From October 1, 1980 to

April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked

with FOIA matters.  I am also an attorney who has been licensed to practice law in the State of

Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 239

employees who staff a total of ten (10) FBI Headquarters ("FBIHQ") units and two (2) field

operational service center units whose collective mission is to effectively plan, develop, direct,

and manage responses to requests for access to FBI records and information pursuant to the

1

FOIA, as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13,526; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  My responsibilities also include the review of FBI information for classification purposes as mandated by E.O. 13526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of claims asserted under Exemption 1 of the FOIA, 5 U.S.C. § 552(b)(1).  I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13526, §§ 1.3 ad 3.1.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  Specifically, I am familiar with the FBI's handling of plaintiff's January 24, 2014 Freedom of Information/Privacy Act ("FOIPA") request to the FBI for all information concerning Laura Poitras.

(4)     The FBI processed 344 pages of records responsive to plaintiff's request.  Of these pages, 1 page was released in full ("RIF"), 256 pages were released in part ("RIP"), and 87 pages were withheld in full.

(5)     In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration is being submitted in support of the FBI's motion for summary judgment in order to provide the Court and plaintiff with an explanation of the FBI's recordkeeping system; the procedures used to search for, review, and process responsive records; and the FBI's justification

for withholding records in full or in part pursuant to Privacy Act exemption[1] (j)(2), 5 U.S.C. §
552a (j)(2); FOIA exemptions 1, 3, 5, 6, 7 (A), 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(1),
(b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIPA REQUEST

(6)     By letter dated January 24, 2014, Mr. David Sobel submitted a FOIPA request to
FBIHQ on behalf of his client, Laura Poitras, seeking "all agency records concerning, naming, or
relating to Ms. Poitras." (*See* **Exhibit A.**)

(7)     The FBI opened FOIPA Request Number 1250943-000 to address plaintiff's
request regarding herself. By letter dated February 19, 2014, the FBI acknowledged receipt of
plaintiff's request. The letter advised plaintiff that the FBI was searching the indices to its
Central Records System for information responsive to her request. (*See* **Exhibit B.**)

(8)     By letter dated May 29, 2015, plaintiff filed an administrative appeal with the
Office of Information Policy ("OIP"). (*See* **Exhibit C.**)

(9)     By letter dated July 7, 2015, OIP acknowledged plaintiff's FBI appeal and
assigned it appeal number AP-2015-04130. (*See* **Exhibit D.**)

(10)     By letter dated July 13, 2015, OIP advised plaintiff that no adverse determination
has yet been made by the FBI, there was no action for OIP to consider on appeal. (*See* **Exhibit
E.**)

(11)     Plaintiff filed this instant civil action on July 13, 2015.

(12)     By letter dated October 14, 2015, the FBI made a first interim release of records
to plaintiff. The FBI advised plaintiff it had reviewed 145 pages of records and was releasing 62
pages of those pages to her in full or in part, citing Privacy Act Exemption (j)(2) and FOIA

---

[1] Privacy Act Exemptions (j)(1) and (k)(1) will be addressed in the Central Intelligence Agency's ("CIA") *Vaughn*
submission in this case.

exemptions 3, 6, 7(C), 7(D), and 7(E) as its bases for protecting information.  The FBI advised

plaintiff she could appeal the FBI's determinations by filing an administrative appeal with OIP

within sixty (60) days.  In accordance with standard FBI practice, and pursuant to FOIA

exemption 7(E), the FBI notified plaintiff that its response neither confirmed nor denied the

existence of information indicating whether her name is or has been on a federal watch list.[2]

Finally, the FBI informed plaintiff no fees were being assessed in conjunction with the FBI's

processing and release of responsive records.  (*See* **Exhibit F.**)

(13)    By letter dated November 10, 2015, the FBI made a second interim release of

records to plaintiff.  The FBI advised plaintiff it had reviewed and was releasing 8 pages in full

or in part, citing Privacy Act Exemption (j)(2) and FOIA exemptions 1, 3, 6, 7(C), 7(D), and

7(E) as its bases for protecting information.  The FBI advised plaintiff she could appeal the FBI's

determinations by filing an administrative appeal with OIP within sixty (60) days.  In accordance

with standard FBI practice, and pursuant to FOIA exemption 7(E), the FBI notified plaintiff that

its response neither confirmed nor denied the existence of information indicating whether her

name is or has been on a federal watch list.  Finally, the FBI informed plaintiff a $20 fee was

assessed in conjunction with the FBI's processing and release of responsive records.  (*See*

**Exhibit G.**)

(14)    By letter dated December 14, 2015, the FBI made a third interim release of

records to plaintiff.  The FBI advised plaintiff it had reviewed and was releasing 10 pages in full

or in part, citing Privacy Act exemption (j)(2) and FOIA exemptions 1, 3, 5, 6, 7(C), 7(D), and

---

[2] It is FBI's practice in responding to first party FOIA/Privacy Act requests (*i.e.,* requests by individuals for their own records) to include a standard *Glomar* response that neither confirms nor denies the existence of any watch list information.  This *Glomar* response is based on FOIA Exemption 7(E), which protects "records or information compiled for law enforcement purposes [when disclosure] would disclose techniques and procedures for law enforcement investigation or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522(b)(7)(E).

7(E) as its bases for protecting information. The FBI advised plaintiff she could appeal the FBI's

determinations by filing an administrative appeal with OIP within sixty (60) days. In accordance

with standard FBI practice, and pursuant to FOIA exemption 7(E), the FBI notified plaintiff that

its response neither confirmed nor denied the existence of information indicating whether her

name is or has been on a federal watch list. Finally, the FBI informed plaintiff a $15 fee was

assessed in conjunction with the FBI's processing and release of responsive records. (*See*

**Exhibit H.)**

(15)   By letter dated February 16, 2016, the FBI made a fourth interim release of

records to plaintiff. The FBI advised plaintiff it had reviewed 124 pages and was releasing 120

pages of those pages in full or in part, citing Privacy Act Exemptions (j)(1), (j)(2), and (k)(1) and

FOIA Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E) as its bases for protecting information. The

FBI advised plaintiff she could appeal the FBI's determinations by filing an administrative

appeal with OIP within sixty (60) days. In accordance with standard FBI practice, and pursuant

to FOIA Exemption 7(E), the FBI notified plaintiff that its response neither confirmed nor denied

the existence of information indicating whether her name is or has been on a federal watch list.

Finally, the FBI informed plaintiff a $15 fee was assessed in conjunction with the FBI's

processing and release of responsive records. (*See* **Exhibit I.)**

(16)   By letter dated March 4, 2016, the FBI made its final release of records to

plaintiff. The FBI advised plaintiff it had reviewed 57 pages and was releasing all 57 pages in

full or in part, citing Privacy Act Exemptions (j)(1), (j)(2), and (k)(1) and FOIA Exemptions 1, 3,

6, 7(A), 7(C), 7(D), and 7(E) as its bases for protecting information. The FBI advised plaintiff

she could appeal the FBI's determinations by filing an administrative appeal with OIP within

sixty (60) days. In accordance with standard FBI practice, and pursuant to FOIA Exemption

7(E), the FBI notified plaintiff that its response neither confirmed nor denied the existence of information indicating whether her name is or has been on a federal watch list. Finally, the FBI informed plaintiff a $30 fee was assessed in conjunction with the FBI's processing and release of responsive records ($15 for the March 5th release and $15 for the February 4th interim release). (*See* Exhibit J.)

## THE FBI CENTRAL RECORDS SYSTEM

(17)   The Central Records System ("CRS") is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency, including performance of administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBI HQ, FBI Field Offices, and FBI Legal Attaché Offices ("Legats") worldwide.

(18)   The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. The broad array of CRS file classification categories include types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number ("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI Office of Origin ("OO") initiating the file, and (c) the assigned individual case file number for that particular subject matter.[3] Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order which the

---

[3] For example, in a fictitious file number of "11Z-HQ-56789," the "11Z" component indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and "56789" is the assigned case specific file number.

document is added to the file, typically in chronological order.

## THE CRS GENERAL INDICES AND INDEXING

(19)    The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS.  The CRS is indexed in a manner which meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties.  The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval.  The entries in the general indices fall into two category types:

> (a) Main entry.  This entry pertains to records indexed to the main subject(s) of a file, known as "main file" records.  The "main" entry carries the name of an individual, organization, or other subject matter that is the designated subject of the file.

> (b) Reference entry.  This entry, or a "cross-reference," pertains to records that merely mention or reference an individual, organization, or other subject matter that is contained in a "main" file record about a different subject matter.

(20)    FBI Special Agents ("SA") and/or designated support personnel may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.,* a terrorist attack or bank robbery).  Indexing information in the CRS is based on operational necessity, and the FBI only indexes that information considered relevant and necessary for future retrieval.  Accordingly, the FBI does not index every individual name or other subject matter in the general indices.

## AUTOMATED CASE SUPPORT

(21)    Automated Case Support ("ACS") is an electronic, integrated case management system that became effective for FBIHQ and all FBI Field Offices and Legats on October 1,

1995.  As part of the ACS implementation process, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices.  ACS has an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions.[4]

(22)    The Universal Index ("UNI") is the automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching.  Individual names are recorded with applicable identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event.  Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS.  As such, a UNI index search in ACS is capable of locating FBI records well before its 1995 FBI-wide implementation to the present day in both paper and electronic format.[5] Currently, UNI consists of approximately 112.5 million searchable records and is updated daily with newly indexed material.

## ACS AND SENTINEL

(23)    Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012.  Sentinel provides a web-based interface to FBI users, and it

---

[4] ACS and the next generation Sentinel system are relied upon by the FBI daily to fulfill essential functions such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries, and security screening, to include Presidential protection.

[5] Older CRS records that were not indexed into UNI as result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "manual indices."  A search of the manual indices is triggered for requests on individuals if the person was born on or before January 1, 1958; and for requests seeking information about organizations or events on or before January 1, 1973.  Records created after these dates would be captured through a UNI search.

includes the same automated application that is utilized in ACS.  After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace ACS and its relevance as an important FBI search mechanism.  Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed for future retrieval.  Moreover, there is an index data sharing nexus between the Sentinel and ACS systems whereby information indexed into Sentinel is replicated or "backfilled" into ACS.  In sum, the Sentinel case management system builds on ACS and shares its operational purpose; Sentinel provides another portal to locate information within the vast CRS for FBI records generated on or after July 1, 2012.

### ELECTRONIC SURVEILLANCE INDICES

(24)    The Electronic Surveillance system (ELSUR) has a separate legal identity from the CRS as "systems of records" under the Privacy Act as both the CRS and ELSUR are Privacy Act System of Records; however, in terms of function, information from both ELSUR and the CRS are indexed and retrieved via an index search of ACS and Sentinel.  Information that is housed in the ELSUR system is indexed for retrieval by the names of the target(s) of the surveillance; participants in monitored conversations; and owners, lessors, or licensors of the premises where the FBI conducted the surveillance.  As a result, the names of these individuals are indexed within, and searchable by, the same UNI application employed to locate CRS records.[6]

(25)    Moreover, other information about an investigation where the FBI is conducting electronic surveillance is maintained in the case file in the CRS.[7]  For example, the FBI must

---

[6] The records include subjects monitored by FBIHQ or FBI Field Offices since January 1, 1960.

[7] The FBI conducts electronic surveillance in furtherance of investigations; therefore, before any electronic surveillance is conducted, there is an investigative case file in the CRS.

obtain proper legal process in order to conduct electronic surveillance; the application for and

resulting court order are types of records that would be serialized into a case file.  In short, the

existence of a CRS record is a condition precedent for the existence of an ELSUR record.

Therefore, there is no factual basis for the FBI to conclude an ELSUR record exists if there are

no corresponding case files in the CRS relating to electronic surveillance.

(26)    In this case, the FBI did not locate any responsive ELSUR records within the

CRS.  Specifically, there are no records and/or documents referencing that an electronic

surveillance had been conducted.  Again, the search of the ELSUR indices here was conducted

simultaneously with the CRS search via the UNI function of ACS and an index search of

Sentinel, as described below.

## ADEQUACY OF SEARCH

(27)    <u>Index Searching</u>.  To locate CRS information, RIDS employs an index search

methodology.  Index searches of the CRS are reasonably expected to locate responsive material

within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate

retrieval based on operational necessity.  Given the broad range of indexed material in terms of

both time frame and subject matter that it can locate in FBI files, the automated UNI application

of ACS is the mechanism RIDS employs to conduct CRS index searches.  If a request seeks

records that may have been generated on or after July 1, 2012, an overlapping search of ACS via

the UNI application and a Sentinel index search are performed at the litigation stage to ensure

adequacy of the CRS index search.

(28)    <u>CRS Search and Results</u>.  Upon receipt of plaintiff's request, RIDS conducted a

CRS index search for responsive records employing the UNI application of ACS and a Sentinel

index search by using the following search term:  "Laura Poitras" and aliases found during

search—"Laura Susan Poitras" and "Lara Susan Poitras." The FBI's search included a three-way phonetic[8] breakdown of "Laura Poitras" and an on-the-nose[9] search for "Laura Susan Poitras" and "Lara Susan Poitras." The FBI's CRS search encompassed records maintained in FBIHQ as well as all FBI's field offices. The FBI used information in plaintiff's request letter, such as her date of birth and other identifying information, to facilitate the identification of responsive records. As a result of this search effort, the FBI identified main and cross-reference records indexed to plaintiff's name.

(29)    ELSUR Search and Results. In this case, the search of the CRS via the UNI application of ACS also accomplished the task of searching the ELSUR indices for any responsive records. As noted above, although ELSUR has a different identity from the CRS as a Privacy Act System of Records, the functional task of indexing and retrieving information from both ELSUR and the CRS is accomplished via the UNI application of the FBI's ACS system. *See supra.* ¶¶ 24-26. As relevant here, as the information sought would have only existed before the July 1, 2012 implementation of Sentinel, the same search terms described herein to perform the UNI search of ACS for CRS indexed records were by default also utilized to locate any ELSUR records.

(30)    Scope of Search. RIDS conducted a search reasonably calculated to locate records responsive to plaintiff's request. First, given its comprehensive nature and scope, the CRS is the principal records system searched by RIDS, to locate information responsive to most

---

[8] Three-way phonetic search ("TP search)—the FBI used the phonetic search capabilities of ACS to conduct a TP search of subject's name. This means that first, the computer automatically broke her name down and searched the index for three different breakdowns of the name entered. Then, the computer breaks names down based on their phonetic characteristics. The computer will return results based on whether or not they phonetically match a certain percentage of the first and last name searched.

[9] On-the-nose phonetic search ("OTN" search)—the FBI used the phonetic search capabilities of ACS to conduct an OTN search of plaintiff's aliases. This means the computer will search exactly the name entered in the name field and only that name.

FOIPA requests, as the CRS is where the FBI indexes information about individuals,

organizations, events, and other subjects of investigative interest for future retrieval.  Second, the

CRS is the FBI system where records responsive to this request would reasonably be found.

Given plaintiff's request seeking information about herself, such information would reasonably

be expected to be located in the CRS via the index search methodology.  Third, in this case, the

ELSUR indices were likewise searched via the UNI application of ACS; however, the task of

locating any responsive records in ELSUR via the same index search terms was unsuccessful.

### BACKGROUND INFORMATION ON PLAINTIFF AND FBI'S INVESTIGATION

(31)    In 2004, the U.S. military received information pertaining to American

independent film maker, Laura Poitras, possibly being involved in an ambush on U.S. Forces

near Baghdad that resulted in the death of one U.S. solider and serious injuries of several others.

The military was informed that Poitras watched and filmed the ambush from on top of a nearby

building.  Poitras later confirmed that she was on the building working on a documentary that

focused on the 2005 Iraqi election.  In 2006, the FBI received further information about Poitras's

involvement, including the possibility that she had prior knowledge of the ambush and purposely

chose not to report it.  As a result, the U.S. military requested an investigation of Poitras because

of her possible involvement with anti-coalition forces during her time in Iraq as an independent

media representative.

### JUSTIFICATION FOR NONDISCLOUSRE UNDER THE PRIVACY ACT

(32)    When an individual requests records about herself from the FBI, the well settled

RIDS process is to first consider the request under the Privacy Act, which generally provides

individuals a right of access to records about them maintained in government files, unless the

records are part of a system of records exempted from individual access.  *See* 5 U.S.C. § 552a(d).

Exemption (j)(2) exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals…" 5 U.S.C. § 522a(j)(2).

(33)    Under the Privacy Act, agencies may promulgate rules to exempt systems of records from various provisions of the Act, to include individual requests for access or amendment. *See* 5 U.S.C. § 552a(d), (j) and (k).  Accordingly, the U.S. Department of Justice ("DOJ") promulgated regulations exempting certain systems of records from individual access, *inter alia*, under the Privacy Act, 5 U.S.C. § 552a(d).  As relevant here, the FBI is a criminal and regulatory enforcement agency within DOJ responsible for enforcing federal laws, and DOJ has exempted FBI law enforcement investigative records maintained in the CRS[10] from the Privacy Act's access provision pursuant to (j)(2).  In other words, pursuant to 28 C.F.R. § 16.96(a)(1), the plaintiff has no individual right of access to investigative records about herself under the Privacy Act.  Therefore, plaintiff's request was processed under the provisions of the FOIA.

(34)    In response to plaintiff's request, the FBI located responsive records relating to investigative matters that were compiled per the FBI's primary law enforcement mission to investigate violations of federal laws.  The law enforcement records at issue were retrieved by RIDS through a search of the CRS, a system of records specifically exempt from the access provisions of the Privacy Act as noted above per 5 U.S.C. § 552a(j)(2), as implemented by 28 C.F.R. §16.96(a)(1).  Furthermore, records responsive to the plaintiff's request are law enforcement records as they were specifically compiled in the course of the FBI's investigation of plaintiff's possible involvement with anti-coalition forces during her time in Iraq as an independent media representative.   Consequently, because the records were generated in

---

[10] Privacy Act System of Records FBI-002, 63 FR 8671 (1998) (last publication of complete notice).

13

furtherance of an FBI criminal investigation and are maintained in the CRS, an FBI system of records exempted from individual access under the Privacy Act, the FBI processed the records under the FOIA to achieve maximum disclosure.  As a result, the records identified as exempt under Privacy Act Exemption (j)(2) were processed and released to plaintiff subject only to the FOIA exemptions noted.  None of the information exempt from disclosure under the Privacy Act has been withheld from plaintiff unless it was withheld under a FOIA exemption.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

### *Explanation of the Coded Format Used to Describe and Justify Withholdings*

(35)     All responsive documents subject to the FOIA were processed to achieve maximum disclosure consistent with the access provisions of the FOIA.  Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information in the responsive records.  No reasonably segregable, nonexempt portions have been withheld from plaintiff.  Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information that the FBI has protected.  Copies of the pages released in part and in full have been consecutively numbered "Poitras-1 through Poitras-344" at the bottom of each page.  Pages withheld in their entirety (*e.g.*, removed per exemption, duplicates) were replaced by a "Deleted Page Information Sheet" ("DPIS"), which identifies the reason and/or the applicable FOIA exemptions relied upon to withhold the page in full, as well as the Bates numbers for the withheld material.  The exemptions asserted by the FBI as grounds for non-disclosure of information are FOIA exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

(36)     The Bates-numbered documents contain, on their faces, coded categories of

14

exemptions detailing the nature of the information withheld pursuant to the provisions of the

FOIA.  The coded categories are provided to aid the Court's and plaintiff's review of the FBI's

explanations of the FOIA exemptions it asserted to withhold the material.  The coded, Bates-

numbered pages (which will be made available to the Court upon request), together with this

declaration demonstrate that all material withheld by the FBI is exempt from disclosure pursuant

to the cited FOIA exemptions, or is so intertwined with protected material that segregation is not

possible without revealing the underlying protected material.

(37)    Each instance of information withheld on the Bates-numbered documents is

accompanied by a coded designation that corresponds to the categories listed below.  For

example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA

Exemption 7(C) protecting against unwarranted invasions of personal privacy.  The numerical

designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific

subcategory, such as "Names and/or Identifying Information of FBI Special Agents and Support

Personnel."

(38)    Listed below are the categories used to explain the FOIA exemptions asserted to

withhold the protected material:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES**[11] | **INFORMATION WITHHELD** |
| **Category (b)(1)** | **CLASSIFIED INFORMATION** *[cited at times with other exemptions (e.g., (b)(3), 7(D), 7(E), 6/7(C))]* |
| (b)(1)-1 | E.O. 13526 § 1.4(c)—Intelligence Activities, Sources, and Methods *[cited at time in conjunction with (b)(3)]* |
| **Category (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| (b)(3)-1 | Grand Jury Information—Federal Rules of Criminal Procedure, Rule 6(e) *[cited at times in conjunction with (b)(6) and (b)(7)(C)]* |

[11] Throughout the released documents the FBI inadvertently cited codes with other government agencies' (OGAs') exemptions.  For instance, "(b)(3)-3 per CIA".  OGAs' redactions should have been cited without codes.

| SUMMARY OF JUSTIFICATION CATEGORIES | |
| --- | --- |
| **CODED CATEGORIES**[11] | **INFORMATION WITHHELD** |
| (b)(3)-2 | 50 U.S.C., § 3024(i)(1) *[cited at times in conjunction with (b)(1)]* |
| **Category (b)(5)** | **PRIVILEGED INFORMATION** |
| (b)(5)-1[12] | Deliberative Process Privilege |
| **Category (b)(6) and (b)(7)(C)** | **CLEARLY UNWARRANTED INVASION OF PRIVACY AND UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 and (b)(7)(C)-1 | Names and/or Identifying Information[13] of FBI Special Agents  and Support Personnel |
| (b)(6)-2 and (b)(7)(C)-2 | Names and/or Identifying Information of Local Law Enforcement Personnel |
| (b)(6)-3 and (b)(7)(C)-3 | Names and/or Identifying Data of Third Parties of Investigative Interest |
| (b)(6)-4 and (b)(7)(C)-4 | Names and/or Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-5 and (b)(7)(C)-5 | Names and/or Identifying Information of 3rd Parties who Provided Information *[cited at times in conjunction with 7(D)]* |
| (b)(6)-6 and (b)(7)(C)-6 | Names and/or Identifying Information of Non-FBI Federal Government Personnel |
| **Category (b)(7)(A)** | **PENDING LAW ENFORCEMENT PROCEEDINGS** |
| (b)(7)(A)-1 | Information Which, if Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE INFORMATION** |
| (b)(7)(D)-1[14] | Foreign Government Agency Information Under Express Confidentiality |
| (b)(7)(D)-2 | Names, Identifying Data of a Source Under an Express Assurance of Confidentiality *[cited, at times, in conjunction with Exemption 6 and 7(C)]* |
| **Category (b)(7)(E)** | **INVESTIGATIVE TECHNIQUES AND PROCEDURES** |
| (b)(7)(E)-1 | Sensitive File Numbers or Subfile Names |

---

[12] In the documents released to plaintiff, the FBI inadvertently cited (b)(5)-2 instead of (b)(5)-1 for information related to deliberative process privilege.

[13] As used in this declaration, the term "identifying information" includes, but is not limited to dates of birth, social security numbers, addresses, telephone numbers, and/or other personal information.

[14] In the 4th interim release dated February 16, 2016, the FBI inadvertently applied FOIA exemption (b)(7)(E)-7 on Bates pages Poitras-231, 237-238, 243-244, and 246-247.  The FBI is asserting FOIA exemption (b)(7)(D)-1 in place of FOIA exemption (b)(7)(E)-7 on Bates pages Poitras-231, 237-238, 243-244, and 246-247.

| SUMMARY OF JUSTIFICATION CATEGORIES | |
| --- | --- |
| **CODED CATEGORIES**[11] | **INFORMATION WITHHELD** |
| (b)(7)(E)-2 | Internal FBI Secure Email or IP Address, Intranet/Web Address |
| (b)(7)(E)-3 | Dates and/or Types of Investigations (Preliminary or Full Investigations) |
| (b)(7)(E)-4 | Identity and/or Location of FBI or Joint Units, Squads, Divisions |
| (b)(7)(E)-5[15] | Collection/ analysis of Information |
| (b)(7)(E)-6 | Investigative Focus of Specific Investigation |
| (b)(7)(E)-7 | Law Enforcement Strategies and Techniques for Addressing Techniques, Tactics, and/or Procedures ("TTPs") |
| (b)(7)(E)-8 | Monetary Payments for Investigative Techniques |

### *EXEMPTION 1 – CLASSIFIED INFORMATION*

(39)   The FBI withheld classified information contained in these documents based on the standards articulated in the FOIA statute, 5 U.S.C. § 552(b)(1).[16]  Exemption 1 protects from disclosure those records that are:

> (A)   specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and
>
> (B)   are in fact properly classified pursuant to such Executive Order.

(40)   The FBI's analysis of whether Exemption 1 permits the withholding of agency records consists of two significant steps.  The FBI must determine first whether the information contained in the records qualifies for classification under the applicable Executive Order governing classification and protection of national security[17] information, and second whether the information actually has been classified in compliance with the various substantive and

---

[15] In the 4th interim release dated February 16, 2016, the FBI mistakenly indicated it had applied FOIA exemption (b)(7)(E)-7 on Bates page Poitras-249.  The FBI is asserting FOIA exemption (b)(7)(E)-5 in place of FOIA exemption (b)(7)(E)-7 on Bates page Poitras-249.

[16] My *in camera, ex parte* declaration provides additional detail concerning the classified information withheld, as a more detailed description on the public record of the withheld material would expose the very classified information that is exempt from disclosure.

[17] Section 6.1 (cc) of E.O. 13526, § 6.1(cc) defines "National Security" as "the national defense or foreign relations of the United States."

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES**[11] | **INFORMATION WITHHELD** |
| (b)(7)(E)-2 | Internal FBI Secure Email or IP Address, Intranet/Web Address |
| (b)(7)(E)-3 | Dates and/or Types of Investigations (Preliminary or Full Investigations) |
| (b)(7)(E)-4 | Identity and/or Location of FBI or Joint Units, Squads, Divisions |
| (b)(7)(E)-5[15] | Collection/ analysis of Information |
| (b)(7)(E)-6 | Investigative Focus of Specific Investigation |
| (b)(7)(E)-7 | Law Enforcement Strategies and Techniques for Addressing Techniques, Tactics, and/or Procedures ("TTPs") |
| (b)(7)(E)-8 | Monetary Payments for Investigative Techniques |

### *EXEMPTION 1 – CLASSIFIED INFORMATION*

(39)     The FBI withheld classified information contained in these documents based on

the standards articulated in the FOIA statute, 5 U.S.C. § 552(b)(1).[16]  Exemption 1 protects from

disclosure those records that are:

> (A)     specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and

> (B)     are in fact properly classified pursuant to such Executive Order.

(40)     The FBI's analysis of whether Exemption 1 permits the withholding of agency

records consists of two significant steps.  The FBI must determine first whether the information

contained in the records qualifies for classification under the applicable Executive Order

governing classification and protection of national security[17] information, and second whether

the information actually has been classified in compliance with the various substantive and

---

[15] In the 4th interim release dated February 16, 2016, the FBI mistakenly indicated it had applied FOIA exemption (b)(7)(E)-7 on Bates page Poitras-249.  The FBI is asserting FOIA exemption (b)(7)(E)-5 in place of FOIA exemption (b)(7)(E)-7 on Bates page Poitras-249.

[16] My *in camera, ex parte* declaration provides additional detail concerning the classified information withheld, as a more detailed description on the public record of the withheld material would expose the very classified information that is exempt from disclosure.

[17] Section 6.1 (cc) of E.O. 13526, § 6.1(cc) defines "National Security" as "the national defense or foreign relations of the United States."

procedural criteria of the Executive Order.  E.O. 13526 presently governs the classification and

protection of information that affects the national security, and prescribes the various substantive

and procedural criteria.  I am bound by the requirements of E.O. 13526 when making

classification determinations.

(41)    For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O.

13526 § 1.1(a):

>(1)  an original classification authority must have classified the information;

>(2)  the information must be owned by, produced by or for, or be under the control
>of the United States Government;

>(3)  the information must fall within one or more of the categories of information
>listed in § 1.4 of this order; and

>(4)  the original classification authority must determine that the unauthorized
>disclosure of the information reasonably could be expected to result in damage to
>the national security, which includes defense against transnational terrorism, and
>the original classification authority must be able to identify or describe the
>damage.

(42)    In my capacity as an original classification authority, I have determined that the

information withheld pursuant to Exemption 1 is under the control of the United States

Government, falls within applicable categories of E.O. 13526 §1.4, and requires a classification

marking at the "Secret" level because the unauthorized disclosure of this information reasonably

could be expected to cause serious damage to the national security.  *See* E.O. 13526 §1.2(a)(2).

(43)    In addition to these substantive requirements, certain procedural and

administrative requirements of E.O. 13526 must be followed before information can be

considered to be properly classified, such as proper identification and marking of documents.

Accordingly, I made certain that all procedural requirements of E.O. 13526 were followed and

specifically that:

   (a) each document was marked as required and stamped with the proper
       classification designation, *see* E.O. 13526 § 1.6(a)(1) – (5);

   (b) each document was marked to indicate clearly which portions are classified
       and which portions are exempt from declassification as set forth in E.O. 13526
       § 1.5(b), *see* E.O. 13526, § 1.6(a)(5)(c);

   (c) the prohibitions and limitations on classification specified in E.O. 13526 §1.7
       were adhered to;[18]

   (d) the declassification policies set forth in E.O. 13526 §§ 3.1 and 3.3 were
       followed; and

   (e) any reasonably segregable portion of these classified documents that did not
       meet the standards for classification under E.O. 13526 were declassified and
       marked for release, unless withholding was otherwise warranted under
       applicable law.

**Defendant's Burden of Establishing Exemption 1 Claims**

(44)    I examined the information withheld in this case pursuant to Exemption 1 in light

of the body of information available to me concerning the national defense and foreign relations

of the United States.  This information was not examined in isolation.  Instead, each piece of

information was evaluated with careful consideration given to the impact that disclosure of this

information will have on other sensitive information contained elsewhere.  Equal consideration

was given to the impact that other information either in the public domain or likely known or

suspected by present or potential adversaries of the United States would have upon the

information I examined, and upon attempts by a hostile entity to analyze such information.

(45)    In those instances where, in my judgment, the disclosure of this information could

reasonably be expected to cause serious damage to the national security, and its withholding

outweighed the benefit of disclosure, I exercised my prerogative as an original classification

---

[18]  I have determined on a document-by-document basis that information is classified and withheld subsequent to the
receipt of plaintiff's FOIA request and that the classification decisions are justified.

authority, designated that information as classified in the interest of national security, and

invoked Exemption 1 of the FOIA to prevent disclosure. Likewise, the justifications for the

withheld classified information were prepared with the intent that they be read with

consideration given to the context in which the classified information is found. This context

includes not only the surrounding unclassified information, but also other information already in

the public domain, as well as information likely known or suspected by other hostile intelligence

entities. It is my judgment that any greater specificity in the descriptions and justifications set

forth with respect to information relating to foreign government relations or foreign activities

and intelligence sources and methods of the United States could reasonably be expected to

jeopardize the national security of the United States, and as a result, further information

concerning the withheld material and justifications for its withholding is being provided to the

Court for its *ex parte, in camera* review. As demonstrated here and in the *in camera* submission,

all information withheld pursuant to FOIA Exemption 1 has been appropriately classified

pursuant to E.O. 13526.

**(b)(1)-1**      **E.O. 13526, § 1.4(c)—Intelligence Activities, Sources, and Methods**

(46)    E.O. 13,526 § 1.4(c) authorizes the classification of "intelligence activities

(including covert action), intelligence sources or methods, and cryptology," in order to protect

classified intelligence sources, methods, and activities utilized by the FBI for gathering

intelligence data.

(47)    An intelligence activity or method includes any intelligence action or technique

utilized by the FBI against a targeted individual or organization that has been determined to be of

national security interest. An intelligence method is used to indicate any procedure (human or

non-human) utilized to obtain information concerning such individual or organization. An

20

intelligence activity or method has two characteristics.  First, the intelligence activity or method - - and information generated by it -- is needed by U. S. Intelligence/Counterintelligence agencies to carry out their missions.  Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved.  Information was withheld pursuant to Exemption 1 to protect intelligence methods utilized by the FBI for gathering intelligence data.

(48)    The classified material here would, if disclosed, reveal actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence-gathering capabilities of the activities or methods directed at specific targets.  The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.

(49)    The FBI (on its own or at the request of other agencies) protected information under FOIA Exemption (b)(1) and § 1.4(c) because the information is classified and the release of such information could reasonably be expected to cause serious damage to the national security for the following reasons: (a) disclosure would allow hostile entities to discover the current intelligence-gathering methods used; (b) disclosure would reveal current specific targets of FBI's national security investigations; and (c) disclosure would reveal the determination of criteria used and priorities assigned to current intelligence or counterintelligence investigations. With the aid of this detailed information, hostile entities could develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-gathering capabilities.  This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of national security and criminal laws of the United States.  This information is

21

currently and properly classified at the "Secret" level, in accordance with E.O. 13,526 § 1.4(c), and is exempt from disclosure pursuant to Exemption 1, as well Exemption 3/National Security Act of 1947, 50 U.S.C. § 3024(i)(1), as explained *infra*.

(50)    The classified information withheld within these documents contains detailed intelligence activity information gathered or compiled by the FBI on a specific individual or organization of national security interest.  The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time.  This information is properly classified at the "Secret" level and withheld pursuant to E.O. 13,526 § 1.4(c), and is exempt from disclosure pursuant to Exemption 1.

(51)    It is my determination that the release of this information could permit hostile non-U.S. persons, entities, and foreign governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information.  This revelation of intelligence activities and methods would severely disrupt the FBI's intelligence-gathering capabilities and could cause serious damage to our national security.  This information is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c).  Thus, the information is exempt from disclosure pursuant to Exemption 1. [19]

---

[19] The FBI asserted coded category (b)(1)-1 on Bates numbered pages: Poitras-146, 148-152, 155, 160-161, 179-181, 205, 210, 220-221, 225-235, 237-241, 244-245, 296, 300, 311-312, 317, 328-329, 340, 343.

### EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE

(52)    Exemption 3 protects information that is:

> specifically exempted from disclosure by statute requiring . . .
> provided that such statute (A)(i) requires that the matters be
> withheld from the public in such a manner as to leave no discretion
> on the issue; or (ii) establishes particular criteria for withholding or
> refers to particular types of matters to be withheld; and (B) if
> enacted after the date of enactment of the OPEN FOIA Act of
> 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

**(b)(3)-1        Grand Jury Information—Federal Rules of Criminal Procedure, Rule 6(e)**

(53)    In Category (b)(3)-1, the FBI has asserted Exemption (b)(3)-1 in conjunction with

Rule 6(e) of the Federal Rules of Criminal Procedure to withhold Federal Grand Jury

information.  As relevant to 5 U.S.C. § 552 (b)(3)(B), Rule 6(e) is a statute enacted before the

date of enactment of the OPEN FOIA Act of 2009.  It is well-established that Rule (6)(e)

embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of

the substance in which the material is contained.  In the investigative records at issue, only that

information which explicitly discloses matters occurring before a Federal Grand Jury has been

withheld pursuant to Exemption (b)(3)-1.  Specifically, the information withheld consists of the

names and/or identifying information of third parties who were either subpoenaed to provide

testimony or actually provided testimony to the Federal Grand Jury; the company names and/or

employees served with Federal Grand Jury subpoenas; information identifying specific records

subpoenaed by the Federal Grand Jury; and other information on the internal workings of the

Federal Grand Jury.[20]  The disclosure of this material would clearly violate the secrecy of the

grand jury proceedings, revealing the inner workings that led to the information filed against the

---

[20] The FBI asserted coded category (b)(3)-1 on Bates numbered pages: Poitras-100, 104, 109-110, 113-123, 318-319, 327, 341-343.

plaintiff, as well as other possible violations being investigated.  Accordingly, the FBI has

properly asserted FOIA exemption (b)(3)-1 to withhold this information from disclosure.  The

FBI also relied on Exemptions 6 and 7(C) to protect information in some of these records.

**(b)(3)-2          50 U.S.C., § 3024(i)(1)**

(54)    The FBI has asserted Exemption (b)(3)-2, at times in conjunction with Exemption

(b)(1), to protect information pursuant to Section 102A(i)(1) of the National Security Act of

1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004

("IRTPA"), 50 U.S.C. § 3024 (i)(1), which provides that the Director of National Intelligence

("DNI") "shall protect from unauthorized disclosure intelligence sources and methods."  As

relevant to U.S.C. § 552 (b)(3)(B), the National Security Act of 1947 was enacted before the date

of enactment of the OPEN FOIA Act of 2009.  On its face, this federal statute leaves no

discretion to the DNI about withholding from the public information about intelligence sources

and methods.  Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. §

3024(i)(1) is absolute.  See CIA v. Sims, 471 U.S. 159 (1985).

(55)    To fulfill its obligation of protecting intelligence sources and methods, the DNI is

authorized to establish and implement guidelines for the Intelligence Community ("IC") for the

classification of information under applicable laws, Executive Orders, or other Presidential

Directives, and for access to and dissemination of intelligence.  50 U.S.C. § 3024(i)(i)(1).  The

FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence

sources and methods.

(56)    As described above, Congress enacted the NSA, as amended by the IRTPA, to

protect the IC's sources and methods of gathering intelligence.  Disclosure of such information

presents the potential for individuals to develop and implement countermeasures, which would

24

result in the loss of significant intelligence information, relied upon by national policymakers and the IC.  Given that Congress specifically prohibited the disclosure of information pertaining to intelligence sources and methods used by the IC as a whole, I have determined that the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiff.  Thus, the FBI is prohibited from disclosing information falling under 50 U.S.C. § 3024(i)(1).  Accordingly, this information was properly withheld pursuant to Exemption (b)(3)-2.[21]

### EXEMPTION 5 – PRIVILEGED INFORMATION

(57)    FOIA exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

(58)    Exemption 5 has been construed to exempt documents or information normally privileged in the civil discovery context, and incorporates the attorney work product, attorney-client, and deliberative process privileges.  The deliberative process privilege protects pre-decisional, deliberative communications that are part of a process by which agency decisions are made.  It protects opinions, advice, evaluations, deliberations, proposals, or recommendations that form part of an agency decision-making process, as well as the selection and sorting of factual information relied upon as part of the decision-making process.

(59)    In order to apply Exemption 5, agencies must first satisfy the threshold requirement – i.e., show that the information protected was "inter-agency or intra-agency."  As it pertains to the documents withheld pursuant to Exemption 5 in this case, the inter-agency and/or intra-agency character of the documents is readily apparent on their face or by the context in

---

[21] The FBI asserted coded category (b)(3)-2 on Bates numbered pages: Poitras-151, 160-161, 179-181, 205, 210, 220-221, 225-234, 238-240, 244-245, 296, 300, 311-312, 317, 328-329, 340, 343.

which they appear.  The documents were generated and distributed in the context of internal FBI discussions or communications between the FBI and other federal agencies, as will be further demonstrated in the following paragraphs.  Agencies must next satisfy the elements of the pertinent privilege.  With respect to the deliberative process privilege, agencies must show that the withheld information was both pre-decisional – *i.e.*, antecedent to a final agency decision – and deliberative – *i.e.*, part of the process in which the agency engaged in an effort to reach a final decision (whether or not any final decision was ever reached).  The satisfaction of the particular elements is discussed in further detail in the following paragraphs.

**(b)(5)-1**          **Deliberative Process Privilege**

(60)    The FBI asserted exemption (b)(5)-1 to protect privileged deliberative materials. The deliberative process privilege protects the internal deliberations of the government by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making.  The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.  Thus, material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld.  Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.  If agency personnel knew that their preliminary opinions, evaluations and comments would be released for public consumption, they may be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.

(61)    To invoke the deliberative process privilege, an agency must show that an allegedly exempt document is both (a) "pre-decisional" – antecedent to the adoption of agency policy; an agency must also pinpoint an agency decision or policy to which document contributed…or…identify a decision-making process to which a document contributed – and (b) "deliberative" – a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters, reflects the give and take of the consultative process, and bears on the formulation or exercise of agency policy-oriented judgment. Furthermore, an agency must identify the role of a contested document in a specific deliberative process.

(62)    The FBI asserted Exemption 5 to withhold an intra-agency analysis from the New York Field Office ("NY FO"). In this analysis the NY FO is discussing results of database checks conducted to aid in the investigation at issue and whether a court order or coordination with other agencies needed to be considered. On the face of the information provided, it is unclear if the FBI took any of these actions; therefore, the withheld information details pre-decisional analysis between NY FO personnel. The NY FO is analyzing, deliberating, sorting and modifying ideas and providing recommendations on how to further advance the investigation. The advisory and deliberate nature of this information is evidenced by the word "recommendations" preceding the redaction block on Poitras-158. Accordingly, because the information consists of preliminary opinions, recommendations, evaluations, and comments of FBI staff, and because release of these exempted materials would chill the full and frank discussion between agency personnel, the FBI has properly withheld this information pursuant to FOIA exemption (b)(5)-1.[22]

---

[22] The FBI asserted coded category (b)(5)-1 on Bates numbered pages: Poitras-158-159, 163-164.

## EXEMPTION 7 THRESHOLD

(63)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as

implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-

DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal

government with authority and responsibility to investigate all violations of federal law not

exclusively assigned to another agency, to conduct investigations and activities to protect the

United States and its people from terrorism and threats to national security, and further the

foreign intelligence objectives of the United States.  Under this investigative authority, the

responsive records herein were compiled for the following specific law enforcement purpose.

(64)     The plaintiff's investigative main file was complied during the FBI's criminal

investigation of plaintiff's possible involvement with anti-coalition forces during her time in Iraq

as an independent media representative.  Thus, these records were compiled for a law

enforcement purpose and they squarely fall within the law enforcement duties of the FBI;

therefore, the information readily meets the threshold requirement of Exemption (b)(7).

### EXEMPTIONS 6 AND 7(C) –UNWARRANTED INVASION OF PERSONAL PRIVACY[23]

(65)     5 U.S.C. § 552 (b)(6) exempts from disclosure "personnel and medical files and

similar files when the disclosure of such information would constitute a clearly unwarranted

invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

---

[23] The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C).  Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.

(66)   In withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  For purposes of this analysis, a public interest exists when information would shed light on the FBI's performance of its mission to protect and defend the United States against terrorists and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.  In each instance where information was withheld pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI determined that the individuals' privacy interests outweighed the public interest, if any, in the information.

### (b)(6)-1 and (b)(7)(C)-1     Names and/or Identifying Information of FBI Special Agents and Support Personnel

(67)   Exemptions (b)(6)-1 and (b)(7)(C)-1 have been asserted to protect the names of FBI Special Agents ("SAs") who are responsible for conducting, supervising, and/or maintaining the investigative activities in this pending investigation and related investigations.  These responsibilities included conducting interviews and compiling information, as well as reporting on the status of investigations.  Assignments of SAs to any particular investigation are not by choice.  Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations.  The privacy consideration is also to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI.  FBI SAs conduct official inquiries into various

29

criminal and national security violation cases. They come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. It is possible for an individual targeted by such law enforcement actions to carry a grudge which may last for years. These individuals may seek revenge on the agents and other federal employees involved in a particular investigation. The publicity associated with the release of an agent's identity in connection with a particular investigation could trigger hostility toward a particular agent. The FBI could identify no discernible public interest in the disclosure of this information because disclosure of the names and identifying information of FBI SAs would not shed light on the operations and activities of the FBI.

(68)     The names of FBI support employees were also protected. Support personnel are assigned to handle tasks related to the official investigations reflected in the documents responsive to plaintiff's FOIA request. They were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI concluded that no public interest would be served by disclosing the identities of these FBI support employees to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Accordingly, after balancing these employees' substantial privacy interests against the non-existent public interest, the FBI properly protected the names and identifying information of SAs and support personnel pursuant to Exemptions 6 and 7(C).[24]

---

[24] The FBI asserted coded categories (b)(6)-1 and (b)(7)(C)-1 on Bates numbered pages: Poitras-2, 4, 7-8, 45, 47, 52-53, 56-57, 62-63, 68, 96, 98-99, 103, 108-109, 111, 113, 115-117, 123-124, 127-132, 134, 136, 138, 140, 144-146,

**(b)(6)-2 and (b)(7)(C)-2     Names and/or Identifying Information of Local Law
                               Enforcement Personnel**

(69)     In Category (b)(6)-2 and (b)(7)(C)-2, the FBI protected the names and identifying

information of local law enforcement employees.  These employees were acting in their official

capacities and aided the FBI in the law enforcement investigative activities reflected in the

records responsive to plaintiff's requests.  The rationale for protecting the identities of FBI SAs

discussed in ¶¶ 67-68, *supra.*, applies equally to the names of these local law enforcement

employees.  Release of the identities of these law enforcement employees could subject them as

individuals to unnecessary and unwelcome harassment that would invade their privacy, and

could cause them to be targeted for compromise.  In contrast, disclosure of this information

would serve no public interest because it would not shed light on the operations and activities of

the FBI.  Accordingly, the FBI properly withheld this information pursuant to Exemptions 6 and

7(C).[25]

**(b)(6)-3 and (b)(7)(C)-3     Names and/or Identifying Information of Third Parties of
                               Investigative Interest**

(70)     The FBI asserted exemptions (b)(6)-3 and (b)(7)(C)-3 to protect the names and/or

identifying information of third parties who were of investigative interest to the FBI.  Identifying

information includes, but is not limited to, names, dates of birth, social security numbers,

addresses, telephone numbers, and/or other personal information.  Being identified as a subject

of a domestic terrorism or criminal investigation carries a strong negative connotation and a

---

148-150, 153-155, 157, 162, 164, 168, 170, 172, 174-175, 179, 181, 183-185, 189, 191, 193, 195, 197, 199, 201,
205-206, 210-212, 217, 220, 225, 230, 234, 236, 240, 242, 245, 247-248, 252-277, 279-289, 295, 301, 305-306, 310,
320, 326, 328, 331-332, 335, 337, 339.

[25] The FBI asserted coded categories (b)(6)-2 and (b)(7)(C)-2 on Bates numbered pages: Poitras-1, 4-5, 7, 45, 48-49,
51, 53-54, 56-57, 59, 61-63, 65, 67-69, 96-99, 103, 111, 115, 117, 140, 144, 146, 150, 154, 157, 164-165, 168, 170,
174-175, 179, 183-185, 187,  189, 191, 195, 197, 199, 201, 206, 211-212, 216, 220, 225, 230, 236, 242, 248, 252-
259, 261, 263, 272, 288-289, 295, 301, 305-306, 310, 315-320, 335, 339-343.

stigma. Release of the identities of these individuals to the public could subject them to

harassment or embarrassment, as well as undue public attention. Accordingly, the FBI has

determined that these individuals maintain substantial privacy interests in not having their

identities disclosed. In contrast, disclosing personal information about these individuals would

not significantly increase the public's understanding of the FBI's performance of its mission and

so the FBI concluded that there was no public interest here sufficient to override these

individuals' substantial privacy interests. For these reasons, the FBI properly withheld this

information pursuant to Exemptions 6 and 7(C).[26]

### (b)(6)-4 and (b)(7)(C)-4     Names and/or Identifying Information of Third Parties Merely Mentioned

(71)     Exemptions (b)(6)-4 and (b)(7)(C)-4 were asserted to protect the names and

identifying information of third parties who were merely mentioned in the criminal investigative

files containing information responsive to plaintiff's request. The FBI has information about

these third parties in its files because these individuals came into contact directly or indirectly

with subject of FBI investigation. These individuals were not of investigative interest to the FBI.

These third parties maintain substantial and legitimate privacy interests in not having this

information disclosed and thus, being connected with a criminal investigation. Disclosure of

these third parties' names and/or identifying information in connection with an FBI investigation

of criminal activities carries an extremely negative connotation. Disclosure of their identities

would subject these individuals to possible harassment or criticism and focus derogatory

inferences and suspicion on them. The FBI then considered whether there was any public

interest that would override these privacy interests, and concluded that disclosing information

---

[26] The FBI asserted coded categories (b)(6)-3 and (b)(7)(C)-3 on Bates numbered pages: Poitras-109, 117-119, 121-123, 150-151, 157-161, 163, 166-167, 169-171, 181, 190-192, 196-198, 201-204, 206-209, 212-223, 225-227, 230-234, 236, 238-240, 242, 244-245, 248-249, 307-309, 316-319, 321-322, 327, 335, 339-344.

about individuals who were merely mentioned in an FBI investigative file would not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected these individuals' privacy interests pursuant to FOIA exemptions 6 and 7(C).[27]

### (b)(6)-5 and (b)(7)(C)-5    Names and/or Identifying Information of Third Parties Who Provided Information to the FBI

(72)    In Category (b)(6)-5 and (b)(7)(C)-5, the FBI protected the names and identifying information of individuals who were interviewed and/or provided information to the FBI during the course of its investigation of plaintiff.

(73)    The FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock to successfully obtaining the desired information through an interview is fear by the interviewee that his/her identity will be exposed and consequently, that he/she could be harassed, intimidated, or threatened with legal or economic reprisal, possible physical harm, or even death. In order to surmount these obstacles, persons interviewed by the FBI must be assured that their names and personally-identifying information will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit the public might derive from disclosure of the names of those who cooperated with the FBI. Thus, the FBI has determined that these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI could identify no public interest in the disclosure of this information because disclosure of these third parties' names and identifying information would not shed light on or significantly increase the public's understanding of the operations and activities of the FBI.

---

[27] The FBI asserted coded categories (b)(6)-4 and (b)(7)(C)-4 on Bates numbered pages:  Poitras-54-55, 97, 176, 186-187, 203-204, 208, 266, 290-291, 298, 314, 316.

Accordingly, the FBI properly protected these individuals' privacy interests pursuant to Exemptions 6 and 7(C).[28]  The FBI is also relying on Exemption 7(D) to protect this information in some instances.

**(b)(6)-6 and (b)(7)(C)-6        Names and/or Identifying Information of Non-FBI Federal Government Personnel**

(74)     The FBI asserted exemptions (b)(6)-6 and (b)(7)(C)-6 to protect the names and/or identifying information of personnel from non-FBI federal government agencies who provided information to or otherwise assisted the FBI in its investigation of plaintiff and/or others.  The rationale for protecting the identities of other government employees is the same as the rationale for protecting the identities of FBI employees.  *See* ¶¶ 67-68, *supra.*  Publicity, adverse or otherwise, concerning the investigative participation of these other agency employees in an FBI investigation would seriously impair their effectiveness in assisting or participating in future FBI investigations.  The privacy consideration also protects these individuals from unnecessary, unofficial questioning as to the FBI investigation.  It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the personnel involved in the criminal investigation at issue in these FBI records.  The publicity associated with the release of their names and/or identifying information in connection with this particular investigation could trigger hostility towards them by such persons.  Therefore, these employees maintain substantial privacy interests in protecting their identities.  In contrast, there is no public interest to be served by the disclosure of these employees' names and/or identifying information because their identities, by themselves, would not demonstrate how the FBI performed its statutory mission and thus, would not significantly increase the public's

---

[28] The FBI asserted coded categories (b)(6)-5 and (b)(7)(C)-5 on Bates numbered pages:  Poitras-132-139.

34

understanding of the FBI's operations and activities.  Accordingly, the FBI properly protected

these employees' privacy interests pursuant to FOIA exemptions 6 and 7(C).[29]

### EXEMPTION 7(A) – PENDING ENFORCEMENT PROCEEDINGS

(75)     5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information … could reasonably be expected to interfere
> with enforcement proceedings.

(76)     Application of this exemption requires:  the existence of law enforcement records;

a pending or prospective law enforcement proceeding; and a determination that release of the

information could reasonably be expected to interfere with the enforcement proceeding.

Typically, the FBI asserts Exemption (b)(7)(A) for a variety of different documents in an

investigative file, which the FBI then groups into functional categories and describes in greater

detail.  In this case, however, the FBI has asserted Exemption (b)(7)(A) in a limited fashion as

explained below.

### (b)(7)(A)-1     Information, If Disclosed, Could Reasonably be Expected to Interfere with Pending Law Enforcement Proceedings

(77)     Exemption (b)(7)(A)-1was asserted to protect file numbers of pending FBI

investigations.  The release of the file numbers pertaining to investigative activities of third

parties of an on-going FBI investigation could result not only in the acknowledgment of the

existence of an investigation, but also in the identification of suspects and thus jeopardize the

investigation.  The FBI has concluded that this information is intertwined with other ongoing

investigations of known and suspected third party terrorists.  The FBI has determined that

disclosure of the information, in the midst of this active and ongoing investigation, could

---

[29] The FBI asserted coded categories (b)(6)-6 and (b)(7)(C)-6 on Bates numbered pages: Poitras-53-55, 57, 59-61, 63, 65-70, 96-97, 252-286, 290, 297-298, 313-314, 317-318, 337, 342.

reasonably be expected to interfere with these other investigations as well as any resulting

prosecutions.  As such, the release of this information would interfere with pending and

prospective enforcement proceedings, including investigations and prosecutions; therefore, the

FBI withhold this information pursuant to FOIA exemption (b)(7)(A)-1.[30]

### EXEMPTION 7(D) – CONFIDENTIAL SOURCE INFORMATION

(78)    Exemption 7(D) protects "records or information compiled for law enforcement

purposes" when disclosure:

> could reasonably be expected to disclose the identity of a
> confidential source, including a State, local or foreign
> agency or authority or any private institution which
> furnished information on a confidential basis, and, in the
> case of a record or information compiled by a criminal law
> enforcement agency conducting a lawful national security
> intelligence investigation, information furnished by a
> confidential source.

5 U.S.C. § 552(b)(7)(D).

(79)    Numerous confidential sources report to the FBI on a regular basis; they provide

information under express assurances of confidentiality and are "informants" within the common

meaning of the term.  Others are interviewed and/or provide information under implied

assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality

may be inferred).  In either situation, these sources are considered to be confidential because they

furnish information only with the understanding that their identities and the information they

provided will not be divulged outside the FBI.  Information provided by these sources is singular

in nature, and if released, could reveal their identities.  The FBI has learned through experience

that sources assisting, cooperating with, and providing information to the FBI must be free to do

---

[30] The FBI asserted coded category (b)(7)(A)-1 on Bates numbered pages: Poitras-175-180, 183, 289-294, 328.

so without fear of reprisal.  The FBI has also learned that sources must be free to furnish

information to the FBI with complete candor and without the understandable tendency to hedge

or withhold information because of fear that their cooperation with the FBI will later be made

public.  Sources providing information to the FBI should be secure in the knowledge that their

assistance and their identities will be held in confidence.

(80)    The release of a source's identity would forever eliminate that source as a future

means of obtaining information.  When the identity of one source is revealed, that revelation has

a chilling effect on the activities and cooperation of other sources providing information to the

FBI.  Such a result would eliminate one of the FBI's most important means of collecting

information and thereby severely hamper law enforcement efforts to detect and apprehend

individuals engaged in the violation of federal criminal laws.

**(b)(7)(D)-1    Foreign Government Agency Information Under Express Confidentiality**

(81)    In Category (b)(7)(D)-1, the FBI protected the identity as well as the information

provided by an intelligence agency of a foreign government with an implicit understanding of

confidentiality.  The FBI has many agreements with foreign governments under which national

security and/or criminal law enforcement information is exchanged.  The FBI's conclusion that

the foreign government agency at issue here expected confidentiality in its dealings with the FBI

and with regard to the information it provided to the FBI is based on the Foreign Government

Information Classification Guide #1 (The "G-1 Guide").[31]  The G-1 Guide governs classification

of foreign government information that foreign governments have asked the FBI to protect over

the course of time.  The FBI uses the G-1 Guide to determine the level and duration of derivative

---

[31] The G-1 Guide is issued in accordance with E.O. 13526, 75 Fed. Reg. 707 (2010) and 75 Fed. Reg. 1013 (2010); the National Archives and Records Administration ("NARA") Information Security Oversight Office ("ISOO") Implementing Directive Number One;[31] the FBI Security Policy Manual (rev. Apr. 3, 2006); and the designated Original Classification Authority ("OCA") of the Executive Assistant Director, FBI National Security Branch.

classification of foreign government information, including unmarked internal FBI documents which are being reviewed for possible classification.

(82)    While ostensibly a classification document, the G-1 Guide also provides for confidentiality in non-national security areas. Specifically, it provides that the relationships between certain foreign law enforcement entities and the FBI will not be disclosed and will remain confidential, at the request of those foreign entities.

(83)    As relevant here, according to the G-1 Guide, the foreign agency referenced in the records at issue here requested its relationship with the FBI be classified. That request evidences the foreign intelligence agency's expectation of confidentiality in its interactions with the FBI and with regard to the information it provided to the FBI for law enforcement/national security purposes under applicable information sharing agreements. The release of official United States Government documents revealing the existence of such a confidential relationship with a current and long-term foreign government partner, in contravention of law enforcement/national security information sharing agreements, reasonably could be expected to strain relations between the United States and the foreign government and lead to negative diplomatic, political, or economic repercussions. Furthermore, a breach of this relationship can be expected to have a chilling effect on the free flow of vital law enforcement and national security information to the FBI, which would impede the FBI's effectiveness in countering and solving crimes and protecting our national security.

(84)    For the reasons explained above, the FBI properly concluded that the foreign government intelligence agency whose identity and information were protected in Category (b)(7)(D)-1 expected confidentiality in its dealings with the FBI, and consequently, there was an

38

express assurance of confidentiality.[32]   Accordingly, the FBI appropriately asserted Exemption

7(D) to protect this information.

### (b)(7)(D)-2   Names, Identifying Data of a Source  Under an Express Assurance of Confidentiality

(85)    Under Exemption (b)(7)(D)-2, the FBI protected information regarding an

individual source who is a source symbol numbered informant under an express grant of

confidentiality.  The withheld information includes the name, social security number, phone

number, file number, source number, and the type of source expenditures.  The disclosure of this

information may likely reveal the confidential source's identity.  The disclosure of a source's

identity would forever neutralize that source as a future means of obtaining information.  In

addition, the identity of one source is revealed, that revelation has a chilling effect on the

activities and cooperation of other sources.  This is particularly significant in national security

cases.  It is only with the understanding of complete confidentiality that the aid of such sources

can be enlisted, and only through this confidence that these sources can be persuaded to continue

providing valuable assistance in the future.  The FBI therefore properly protected information

identifying this third party as well as the information they provided pursuant to FOIA exemption

7(D), cited at times in conjunction with Exemptions 6 and 7(C).[33]

#### *Exemption (b)(7)(E) – Investigative Techniques and Procedures*

(86)    5 U.S.C. § 552 (b )(7)(E) provides for the withholding of:

> law enforcement records which would disclose techniques and
> procedures for law enforcement investigations or prosecutions, or
> would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to

---

[32] The FBI asserted coded category (b)(7)(D)-1 on Bates numbered pages: Poitras-118, 151-155, 159, 163-164, 166-167, 212, 214-220, 222, 224, 231, 236-238, 240-247, 316, 339.

[33] The FBI asserted coded category (b)(7)(D)-2 on Bates numbered pages: Poitras-130-139.

risk circumvention of the law.

### (b)(7)(E)-1     Sensitive File Number or Subfile Names

(87)     The FBI asserted exemption (b)(7)(E)-1 to protect sensitive case file numbers. The FBI has determined that this exemption is appropriate for protecting these file numbers. The release of file numbering convention identifies the investigative interest or priority given to such matters. Applying a mosaic analysis, suspects could use these numbers (indicative of investigative priority), in conjunction with other information known about other individuals and/or techniques, to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities, etc. Thus, the FBI properly protected this information from disclosure pursuant to Exemption 7(E).[34]

### (b)(7)(E)-2     Internal FBI Secure Email or IP Address, Intranet/Web Address

(88)     In Category (b)(7)(E)-2, the FBI protected internal e-mail addresses, non-public intranet web addresses, and a secure internal e-mail tool. With the current emerging news of data breaches and other hacking attempts, it is highly likely that the release of this type of information could allow individuals under investigation to exploit the FBI's Information Technology system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the FBI's non-public intranet protocol. Such actions could arm them with the information or ability to circumvent the law. Additionally, release of this information would allow individuals to disrupt official business and could subject FBI employees to harassing e-mails. Thus, the FBI properly protected this information from disclosure pursuant to FOIA

---

[34] The FBI asserted coded category (b)(7)(E)-1 on Bates numbered pages: Poitras-1, 4, 7-9, 45-48, 50-70, 96-99, 103, 108-118, 124, 127-128, 130-132, 134, 136, 138, 140, 144-147, 150-151, 154, 157-164, 166-175, 177-180, 183-216, 218, 220-231, 236-246, 248-252, 254-256, 258, 260, 262, 264, 266, 268-270, 272, 274, 276, 278, 280, 282-284, 286, 288- 296, 301-311, 320-328, 330, 332, 335-344.

exemption 7(E).[35]

#### (b)(7)(E)-3    Dates and/or Types of Investigations (Preliminary or Full Investigations)

(89)    Exemption (b)(7)(E)-3 was asserted to protect information pertaining to the types

and dates of investigations referenced in the records at issue.  Specifically, the information

withheld, when referenced in connection with an actual investigation and not in general

discussion, pertains to the type of investigation, whether it is a "preliminary" or "full"

investigation and the date is was initiated.  Disclosure of this information would allow

individuals to know the types of activities that would trigger a full investigation as opposed to a

preliminary investigation, and the particular dates that the investigation covers, which would

allow individuals to adjust their behavior accordingly.  Moreover, the knowledge that a specific

activity in general warrants investigation could likewise cause individuals to adjust their conduct

to avoid detection.  Because disclosure of this information could reasonably be expected to

impede the FBI's effectiveness and potentially aid in circumvention of the law, the FBI has

properly withheld this information pursuant to Exemption 7(E).[36]

#### (b)(7)(E)-4    Identity and/or Location of FBI or Joint Units, Squads, Divisions

(90)    The FBI asserted exemption (b)(7)(E)-4 to protect methods and techniques

involving the location and identity of FBI units and/or joint units that were involved in this

investigation.  The office location and units are usually found in the administrative headings of

internal FBI documents.  These headings identify the locations of the office and unit that

originated or received the documents.  Disclosure of the location of the units conducting the

---

[35] The FBI asserted coded category (b)(7)(E)-2 on Bates numbered pages: Poitras-8, 98, 148-149, 248-249, 333.

[36] The FBI asserted coded category (b)(7)(E)-3 on Bates numbered pages: Poitras-1, 45, 48, 51, 57-58, 63-64, 98, 109, 111, 117, 124, 140, 155, 157-158, 164, 168, 175-176, 180-181, 183, 185-186, 189, 195, 212, 225, 252, 254-256, 258, 260, 262, 264, 268, 270, 272, 274, 276, 278, 280, 282-284, 286, 289-290, 293, 296-297, 301, 306, 311-313, 338,

41

investigation would reveal the targets, the physical areas of interest of the investigation, and

when taken together with the other locations if identified, could establish a pattern or "mosaic"

that identification of a single location would not.  If the locations are clusters in a particular area,

it would allow hostile analysts to avoid or circumvent those locations, especially if one or more

location appeared with frequency or in a pattern.  This would disrupt the method of the

investigative process and deprive the FBI of valuable information.  The withholding of the units

involved is justifiable as well under a similar rationale.  Once identified, the unit's areas of

expertise become known and an individual would then be aware of exactly what the law

enforcement agency's interest is.  For example, knowing that a unit whose focus is on financial

crimes is involved is quite different information than knowing that the unit involved has a focus

on crimes of violence.  This knowledge could allow a subject to employ countermeasures

targeted toward concealing particular types of behavior and/or to avoid altogether activities in a

particular location.  The revelation of the involvement that one or more units of differing focuses

is critical information that can allow the adjustment of behaviors and activities to avoid

detection.  Accordingly, the FBI properly withheld this information pursuant to Exemption

7(E).[37]

### (b)(7)(E)-5    Collection/Analysis of Information

(91)    In Category (b)(7)(E)-5,[38] the FBI protected methods the FBI uses to collect and

analyze the information it obtains for investigative purposes.  The release of this information

---

[37] The FBI asserted coded category (b)(7)(E)-4 on Bates numbered pages: Poitras-4, 7-9, 45-46, 52, 54, 57-61, 63-67, 69,  97-98, 109, 111-115, 117-119, 123-128, 130-132, 134, 136, 138, 140, 144-155, 157-169, 172-173, 175-183, 185-190, 193-196, 199-210, 212-232, 234, 236-261, 263-287, 289-294, 297, 301, 305-309, 313, 316-318, 320, 326-330, 332-335, 339-344.

[38] In the 4th interim release dated February 16, 2016, the FBI inadvertently indicated it had applied FOIA exemption (b)(7)(E)-7 on Bates page Poitras-249.  The only codes applied to FOIA exemption (b)(7)(E) on Bates page Poitras-249 are (b)(7)(E)-1, 2, 4, 5.

would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it, once it is collected. Such disclosures would enable subjects of FBI investigations to circumvent similar currently used techniques. The relative utility of these techniques could be diminished if the actual techniques were released in this matter. This in turn would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and the usefulness of the information obtained. Release of this type of information would enable criminals to educate themselves about the techniques employed for the collection and analysis of information and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law and engage in criminal activities. The FBI has properly withheld this information pursuant to FOIA exemption 7(E).[39]

### (b)(7)(E)-6    Investigative Focus of Specific Investigation

(92)    Exemption (b)(7)(E)-6 has been asserted to protect the investigative focus of specific FBI investigations. Revealing the broader investigative focuses as they relate to interconnected investigations would reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity. Release of this type of information would allow criminals to gauge the FBI's strengths and weakness within certain areas of the criminal arena and structure their activities in a manner that avoids detection and disruption by the FBI. For example, if criminals knew that certain individuals were being investigated based on their association with one particular individual, they would be able to

---

[39] The FBI asserted coded category (b)(7)(E)-5 on Bates numbered pages: Poitras-1-2, 4-8, 45-52, 113-114, 117-126, 148, 153, 157-172, 177-181, 184, 189-193, 195-199, 202-210, 212-216, 218-227, 230-234, 236, 238-240, 242, 244-245, 247-250, 252-286, 289, 291-293, 299, 306-309, 316-319, 321-327, 329-330, 332-333, 339-341, 343-344.

discern that their association with this particular individual may cause them to be the subjects of an FBI investigation. They may then decide to cut ties with this individual and find different ways to pursue criminal activities thus circumventing the FBI's efforts. As releasing the focus of specific FBI investigations would enable criminals to circumvent the law, this information is exempt from disclosure pursuant to Exemption 7(E).[40]

### (b)(7)(E)-7    Law Enforcement Strategies and Techniques for Addressing Techniques, Tactics, and/or Procedures ("TTPs")

(93)    The FBI asserted FOIA exemption (b)(7)(E)-7 to protect information in two ways: (1) strategies and law enforcement techniques utilized by the United States military and the FBI for countering TTPs of a terrorist organization in Iraq and (2) TTPs utilized by that terrorist organization. With respect to (b)(7)(E) being asserted to protect the United States military's TTPs, the FBI protected an investigative technical tool used by both the military and the FBI. While this particular tool is known by the public, the specific circumstances of its use, and at times the mere fact that it was used at all, are not. Accordingly, the FBI protected a specific instance where the tool was used by the United States military. Although the FBI protected this tool's use in a military context, the FBI also uses this specific tool in various domestic and international security and criminal investigations to gather singular information and intelligence to support those investigations. Disclosure of the use of this specific technical tool in this context could reasonably be expected to risk circumvention of the law or enhance criminals' and terrorists' ability to evade and avoid detection during combat because it would provide these nefarious individuals key details regarding when this technology is employed and by extension

---

[40] The FBI asserted coded category (b)(7)(E)-6 on Bates numbered pages: Poitras-45, 57, 63, 98, 109, 111, 113, 115, 117, 124, 127-128, 130-131, 144-146, 150, 153-154, 157, 164, 168, 175, 179, 183, 189, 195, 201, 206, 212, 218, 220, 225, 230, 236, 242, 248, 289, 297-301, 306, 311-320, 328, 335, 343.

the capabilities, limitations, and/or vulnerabilities while it is in use whether for military or investigative purposes of the military and the FBI.

(94)    The FBI also asserted (b)(7)(E)-7 to protect the TTPs utilized by the terrorist organization that planned and coordinated the ambush attack against the United States military that triggered this investigation.  This information is used by the Intelligence Community ("IC") to prevent future terrorist attacks and to gain knowledge of the inner workings of terrorist organizations.  Disclosure of this specific information could reasonably be expected to circumvent efforts to safeguard national security because disclosure would (1) aid potential terrorists  in planning and coordinating attacks against Americans on foreign soil, (2) reveal how the FBI exploits weaknesses of certain terrorist organizations, and (3) reveal the FBI's strategy in tracking down terrorist organizations and allow those organizations  to circumvent United States national security and/or criminal law.  With the aid of this detailed information, members of terrorist or insurgent organizations could also develop countermeasures which would, in turn, severely disrupt the FBI's intelligence gathering capabilities.  This severe disruption would severely damage the FBI's efforts to detect, deter, and apprehend violators of United States national security and criminal laws.  In sum, the withheld information constitutes an enforcement roadmap for conducting terrorist activity investigations.  The FBI continues to use the same or similar strategies and techniques in this roadmap to conduct investigations into terrorist activity. As a result, the FBI properly withheld this information pursuant to Exemption 7(E).[41]

**(b)(7)(E)-8    Monetary Payments for Investigative Techniques**

(88)    In Category (b)(7)(E)-8, the FBI protected monetary amounts requested by FBI personnel and/or paid by the FBI in order to implement particular investigative techniques.  The

---

[41] The FBI asserted coded category (b)(7)(E)-7 on Bates numbered pages: Poitras-69-70, 97.

FBI has limited resources that it must allocate strategically in order to effectively pursue its law enforcement and intelligence gathering missions.  Revealing the amount of money the FBI has paid or plans to pay in order to implement certain investigative techniques would reveal the FBI's level of focus on certain types of law enforcement or intelligence gathering efforts. Revealing this level of focus would reveal how the FBI plans to allocate its limited resources and essentially paint a picture as to where the FBI"s strengths and weaknesses lie within the spectrum of illegal activities it is mandated to investigate.  Releasing the information would give criminals the opportunity to structure their activities in a manner which avoids the FBI's strengths and exploits its weaknesses.  Because release of this type of information would enable criminals to circumvent the law, this information has been redacted pursuant to Exemption 7(E).[42]

## DOCUMENTS REFERRED TO OTHER GOVERNMENT AGENCIES ("OGAs") FOR DIRECT RESPONSE TO PLAINTIFF

(95)    As part of its search for and processing of records responsive to plaintiff's request, the FBI identified a number of pages containing information and/or equities originating with numerous OGAs.  In accordance with DOJ regulations, 28 C.F.R. § 16.4, the FBI referred the documents to those agencies for direct response to plaintiff.

### U.S. Army Criminal Investigation Command ("ACIC")

(96)    On February 2, 2015, the FBI referred 35 pages to ACIC for a direct response to plaintiff.  These pages are identifiable as Poitras-10-44.  By letter dated October 2, 2015, the ACIC notified plaintiff that pages marked 000001 thru 000035 are partial denied pursuant to FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  ACIC also informed plaintiff that they are not the originating agency of pages 000014 thru 000021, and, as explained below, the documents in

---

[42] The FBI asserted coded category (b)(7)(E)-8 on Bates numbered pages: Poitras-130-139.

question have been referred to the U.S. Army for a direct reply to plaintiff.  These pages are identifiable as Poitras-23-30.  Detailed accountings of the results of the referrals to ACIC are described in ACIC's *Vaughn* submission in this case.  (*See* **Exhibit K.**)

### U.S. Army

(97)    By letter dated October 2, 2015, ACIC referred pages 000014 thru 000021 to Army's FOIA Office.  These pages are identifiable as Poitras-23-30.  The Army's FOIA Office will be processing the 7 pages for a direct response to plaintiff.  If the Court requests, the Army can provide a separate declaration on its own behalf detailing the justifications of its withholdings, if any.

### Executive Office for United States Attorney ("EOUSA")

(98)    On February 3, 2015, the FBI referred 4 pages to EOUSA for a direct response to plaintiff.  These pages are identifiable as Poitras-101-102, 105-106.  By letter dated May 21, 2015, EOUSA notified plaintiff that pages are being withheld in full pursuant to FOIA exemption (b)(3).  EOUSA's accounting of the referral results will be described in EOUSA's *Vaughn* submission in this case. (*See* **Exhibit L.**)

### DOCUMENTS REFERRED TO OGAs FOR COORDINATION WITH THE FBI

(99)    The FBI also identified pages, some in their entireties and some in part, containing information and/or equities originating with OGAs.  In accordance with DOJ regulations, 28 C.F.R. § 16.4(d), the FBI coordinated with these OGAs with equities in these documents to determine how the OGAs wanted the FBI to treat their information contained within the responsive FBI documents.

47

### *Department of the Air Force ("AF")*

(100)   On February 9, 2015, the FBI referred 19 pages to the AF for coordination.  These pages are identifiable as Poitras-311-319, 335-344.  On April 19, 2015, the FBI was notified to withhold in full all AF equities pursuant to FOIA exemption (b)(1).  If the Court requests, the AF can provide a separate declaration on its own behalf detailing the justifications of these withholdings.

### *U.S. Army Criminal Investigation Command ("ACIC")*

(101)   On March 4, 2015, the FBI referred 15 pages to ACIC for coordination.[43]  On August 11, 2015, the FBI was notified to withhold Army-originated information pursuant to FOIA exemptions (b)(6) and (b)(7)(C).  The justification for these withholdings will be addressed in ACIC's *Vaughn* submission in this case. **(*See* Exhibit K.)**

### *U.S. Army Intelligence and Security Command ("AISC")*

(102)   On February 4, 2015, the FBI referred 7 pages to the AISC for coordination. These pages are identifiable as Poitras-157-163.  On February 12, 2015, the FBI was notified to withhold Army-originated information pursuant to FOIA exemption (b)(6).  If the Court requests, AISC can provide a separate declaration on its own behalf detailing the justifications of these withholdings.

### *Central Intelligence Agency ("CIA")*

(103)   On February 5, 2015, the FBI referred 17 pages to CIA for coordination.  These pages are identifiable as Poitras-242-251, 328-334.  On June 23, 2015, the FBI was notified to withhold in full all CIA equities pursuant to PA exemptions (j)(1) and (k)(1) and FOIA

---

[43] The documents were originally referred to the National Guard Bureau on February 9, 2015.  On February 27, 2015, the National Guard Bureau notified the FBI that the referred documents belonged to the ACIC.  For the FBI's reference purposes, these pages are identifiable as Poitras-57-61, 335-344.

exemptions (b)(1) and (b)(3).  Detailed accountings of the results of the referral to CIA are

described in CIA's *Vaughn* submission in this case. (*See* **Exhibit M.**)

(104)   On August 31, 2015, the FBI referred 5 classified FBI documents containing

information concerning CIA equities for coordination.  These pages are identifiable as Poitras-

146-149, 150-152, 154-156, 230-241.  On September 16, 2015, the FBI was notified to withhold

in full all CIA equities pursuant to FOIA exemptions (b)(1) and (b)(3).  Exemption (b)(3)

pertains to Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. §

3024.  The justification for these withholdings will be addressed in CIA's *Vaughn* submission in

this case. (*See* **Exhibit M.**)

### *Customs and Border Protection ("CBP")*

(105)   On August 31, 2015, the FBI referred 1 page to CBP for coordination.  This page

is identifiable as Poitras-153.  On November 6, 2015, CBP informed the FBI to withhold

portions of CBP-originated information pursuant to FOIA exemption (b)(7)(E).  If the Court

requests, CBP can provide a separate declaration on its own behalf detailing the justifications of

these withholdings.

(106)   On September 30, 2015, the Department of Homeland Security ("DHS")

forwarded 25 pages[44] of FBI referred documents to CBP for a direct response to plaintiff and 53

pages[45] of FBI referred documents to CBP for coordination.  On February 29, 2016 the Office of

General Counsel ("OGC") of CBP notified FBI's OGC to withhold CBP equities pursuant to

---

[44] The FBI originally referred these documents to DHS on February 3, 2015.  On October 20, 2015, the FBI was notified that the referred documents were forwarded to CBP on September 30, 2015.  For the FBI's reference purposes, these pages are identifiable as Poitras-71-95.

[45] The FBI originally referred these documents to DHS on February 3, 2015.  On October 20, 2015, the FBI was notified that the referred documents were forwarded to CBP on September 30, 2015.For the FBI's reference purposes, these pages were Bates numbered Poitras-289-294, 296-304, 306-309, 311-344.

FOIA exemption (b)(3) and (b)(7)(E).  If the Court requests, CBP can provide a separate

declaration on its own behalf detailing the justifications of these withholdings.

### Department of State ("DoS")

(107)   On February 3, 2015, the FBI referred 24 pages to DoS for coordination.  These

pages are identifiable as Poitras-157-163, 242-247, 289-294, 296-300.  On October 1, 2015 via

email, the FBI was notified to withhold in part portions of DoS's equities pursuant to FOIA

exemption (b)(7)(C).  On June 4, 2016 via email, the FBI was advised that the referred

information originated with the Department of Transportation and DOS claims no equities in the

referred documents.

### Department of Transportation ("DoT")

(108)   On June 6, 2016 the FBI referred 24 pages to DoT for coordination.  These pages

are identifiable as Poitras-157-163, 242-247, 289-294, 296-300.  The FBI has requested DoT to

review the information and return their response to the FBI by June 27, 2016, making any

deletions deem appropriate, citing the exemptions claimed.

### National Guard Bureau

(109)   On February 9, 2015 the FBI referred 15 pages to the National Guard for

coordination.  These pages are identifiable as Poitras-57-61, 335-344.  On February 27, 2015, the

FBI was notified that the referred information originated with ACIC.  On February 8, 2016,

FBI's OGC confirmed with the National Guard that it is claiming no equities in the referred

documents, including Bates pages Poitras-176, 186, 290, 297-298.  The FBI advised National

Guard it was going to withhold the names of third parties individuals the FBI can unequivocally

determine from the face of the documents belong to National Guard members, on their behalf.

The FBI was advised by the National Guard that the ACIC's *Vaughn* submission in this case will

50

address their withholdings.  (*See* **Exhibit K.**)

## SEGREGABILITY

(110)   As discussed previously, the FBI identified 344 pages of records responsive to

plaintiff's request.  Of these, 1 page was RIF, 256 pages were RIP, and 87 pages were WIF.

> (A)    Pages RIF.  During its review and processing of responsive records in this
>
> case, RIDS determined that 1 page could be released in full without redaction as
>
> there was no foreseeable harm to an interest protected by a FOIA exemption.
>
> (B)    Pages RIP.  RIDS further determined that 256 pages could be released in
>
> part with redactions pursuant to the specific FOIA exemptions identified on these
>
> pages and described herein.  These pages comprise a mixture of material that could
>
> be segregated for release and material that was withheld because release would
>
> trigger foreseeable harm to one or more interests protected by the cited FOIA
>
> exemptions on these pages.  The protected information was either exempt itself or
>
> was so intertwined with non-exempt information that segregation of the non-
>
> exempt information was not reasonably possible without revealing exempt
>
> information or leaving nothing but meaningless words or sentence fragments.
>
> (C)    Pages WIF.  RIDS determined 87 pages were required to be withheld in
>
> their entirety.  RIDS determined 4 pages of these 87 pages were duplicates of other
>
> records released to plaintiff in whole or in part.[46] The remaining 83 pages were
>
> WIF since they were fully covered by one or more of the cited FOIA exemptions,
>
> or determined that any non-exempt information on these pages was so intertwined

---

[46] It is the policy of the FBI to withhold duplicate pages, in order to speed the processing of requests and reduce duplication costs for requesters.  For purposes of this litigation, a deleted page sheet has been inserted in the location of the duplicate pages citing the original pages to which the duplicates correspond.

with exempt material that no information could be reasonably segregated for release. Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content.

## CONCLUSION

(111)   The FBI has performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to plaintiff's FOIPA request. The FBI denied access to these records pursuant to Privacy Act exemption (j)(2). The FBI processed the responsive records under the access provisions of the FOIA to achieve maximum disclosure. The FBI asserted FOIA exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E) to withhold information from these records as release of this information would reveal classified information; would disclose information protected by a statue; would reveal privileged information; would cause a clearly unwarranted invasion of personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to interfere with enforcement proceedings; could reasonably be expected to disclose the identities of confidential sources and the information they provided; and/or would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, I have determined there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through M attached hereto are true and correct copies.

Executed this _____ day of June, 2016.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

53

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 1:15-cv-01091

# Exhibit A

# David L. Sobel
Attorney-at-Law

Suite 410
1818 N Street, N.W.
Washington, DC 20036

(202) 246-6180  (voice)
(202) 237-7727  (fax)
sobel@att.net (e-mail)

January 24, 2014

**BY CERTIFIED MAIL -- 70131710000104259885**

Federal Bureau of Investigation
Att'n: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

**Re: Freedom of Information Act Request**

Dear Sir or Madam:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of my client, Laura Poitras. A "privacy waiver" form executed by Ms. Poitras and authorizing disclosure of responsive records to me is attached to this request.

I request disclosure of all agency records concerning, naming, or relating to Ms. Poitras. I specifically request that the FBI perform a complete and thorough search of all filing systems and locations for all records maintained by the Bureau pertaining to Ms. Poitras. Such a search should include, but not be limited to, files and documents captioned in (or whose captions include) her name in the title. The FBI should search the Central Records System, Electronic Surveillance Records (ELSUR), and Electronic Case File (ECF). Further, I pecifically request that the Bureau conduct a text search of the ECF to identify all potentially responsive main and cross-reference files. The FBI's search should include "main" files and "see references."

In the event that you determine that some responsive matewrial might be exempt from disclosure under FOIA, please indicate the specific exemption or exemptions upon which the agency relies. Ms. Poitras agrees to incur legally assessable processing fees not to exceed $100.

As the FOIA requires, I will anticipate your response to this request within twenty working days. Please feel free to contact me at the e-mail address or telephone number indicated above if you wish to discuss this request.

2 9 JAN 2014

Federal Bureau of Investigation
January 24, 2014
Page two


Thank you for your prompt attention.


                                        Sincerely,


                                        David L. Sobel


encl.

**U.S Department of Justice**                    **Certification of Identity**        

FORM APPROVED OMB NO 1103-0016
EXPIRES 10/31/13

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests t mail under the Privacy Act of 1974, 5 U.S.C. Section 552a. is required. The purpose of this solicitation is to ensure that the records of individua who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not l processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.c Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewir instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs. Office of Manageme and Budget. Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester ¹ ___Laura Poitras_____

Citizenship Status ² _U.S._____    Social Security Number ³ ███████████

Current Address _135 Hudson St., Apt. 3F, New York, NY 10013__        **FRCP 5.2**

Date of Birth ███████        Place of Birth _Boston_____

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the pers named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under fal: pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature ⁴ _Laura Poit_____    Date _Jan 9, 2014_____

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

___David L Sobel, Esq._____
**Print or Type Name**

¹ Name of individual who is the subject of the record(s) sought.
² Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence." pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.
³ Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
⁴ Signature of individual who is the subject of the record sought.

FORM DOJ-361

**David L. Sobel**
Attorney-at-Law
1818 N Street, N.W., Suite 410
Washington, DC 20036

**CERTIFIED MAIL**

7013 1710 0001 0425 9885



U.S. POSTAGE
PAID
WASHINGTON,DC
20036
JAN 24, '14
AMOUNT

**$3.56**
00095559-22

1000      22602

WPV

Federal Bureau of Investigation
Att'n: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

JAN 2

22602484370

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA POITRAS                              )
                                           )
            Plaintiff,                     )
                                           )
            v.                             )        Civil Action No. 1:15-cv-01091
                                           )
UNITED STATES DEPARTMENT OF                )
JUSTICE, et. al.                           )
                                           )
            Defendants.                    )
                                           )

# Exhibit B



**U.S. Department of Justice**



**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 19, 2014

MR. DAVID L. SOBEL
SUITE 410
1818 NORTH STREET, NORTHWEST
WASHINGTON, DC 20036

FOIPA Request No.: 1250943-000
Subject: POITRAS, LAURA

Dear Mr. Sobel:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.

☑    Your request has been received at FBI Headquarters for processing.

☐    Your request has been received at the [_____ Resident Agency / _____ Field Office] and forwarded to FBI Headquarters for processing.

☑    We are searching the indices to our Central Records System for the information responsive to this request.   We will inform you of the results in future correspondence.

☐    Your request for a fee waiver is being considered and you will be advised of the decision at a later date.

☑    Please check for the status of your FOIPA request at www.fbi.gov/foia.

The FOIPA Request number listed above has been assigned to your request.   Please use this number in all correspondence concerning your request.   Your patience is appreciated.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:15-cv-01091 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

# Exhibit C



**ELECTRONIC FRONTIER FOUNDATION**
Defending Your Rights in the Digital World

May 29, 2015

**BY CERTIFIED MAIL – 7013 1710 0000 9654 0398**

Director
Office of Information Policy
United States Department of Justice
Suite 11050
1425 New York Avenue
Washington, D.C. 20530-0001

RECEIVED

**JUN 0 3 2015**

Office of Information Policy

RE:     Freedom of Information Act Appeal – REFF-2015-01391

This letter constitutes an appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,
and is submitted on behalf of my client, Laura Poitras. A "privacy waiver" form executed by Ms.
Poitras and authorizing disclosure of responsive records to me was attached to the original FOIA
request, as submitted to the Federal Bureau of Investigation ("FBI") and referred by the FBI to your
agency.

By letter dated January 24, 2014 to the FBI, I requested disclosure of all agency records concerning,
naming, or relating to Ms. Poitras. I requested "that the FBI perform a complete and thorough search
of all filing systems and locations for all records maintained by the Bureau pertaining to Ms. Poitras"
and indicated that "[s]uch a search should include, but not be limited to, files and documents
captioned in (or whose captions include) her name in the title." I also requested that the FBI "search
the Central Records System, Electronic Surveillance Records (ELSUR), and Electronic Case File
(ECF)." I further requested that the FBI conduct "a text search of the ECF to identify all potentially
responsive main and cross-reference files" and that the FBI's search "include 'main' files and 'see
references.'"

By letter dated February 19, 2014 (attached hereto), the FBI acknowledged receipt of my FOIA
request. In its letter, the FBI assigned my request reference number 1250943-000.

After over a year of no further response from the FBI, by letter dated May 21, 2015 (also attached
hereto), Susan B. Gerson, Assistant Director of the DOJ's Executive Office for U.S. Attorneys,
denied my request—which had been relabeled as request number REFF-2015-01391. Ms. Gerson's
letter indicated that the agency had located six (6) pages relevant to my request but that the agency
was withholding in full ("WIF") these documents. Ms. Gersen cited Federal Rule of Criminal
Procedure 6(e) as the basis for her refusal to disclose the documents.

First, I hereby appeal the agency's application of Federal Rule of Criminal Procedure 6(e).

815 Eddy Street · San Francisco California USA · 94109 · voice 1.415 436 9333 · fax 1.415 436.9993 · info@eff.org     eff.org

Second, Ms. Poitras has repeatedly been subject to detentions and interrogations when returning to the United States from foreign travel. This suggests a strong likelihood that the FBI and the DOJ each maintain more than six (6) pages of documents responsive to my request. As such, I hereby appeal the agency's contrary determination.

As FOIA requires, I will anticipate you respond to this appeal within twenty (20) working days. Thank you for your prompt attention to this matter.

Sincerely,

David Sobel JW

David L. Sobel
Electronic Frontier Foundation
sobel@eff.org

Enclosures.

U.S. Department of Justice

Federal Bureau of Investigation
*Washington, D.C  20535*

February 19, 2014

MR. DAVID L. SOBEL
SUITE 410
1818 NORTH STREET, NORTHWEST
WASHINGTON, DC 20036

FOIPA Request No.: 1250943-000
Subject: POITRAS, LAURA

Dear Mr. Sobel:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.

☑       Your request has been received at FBI Headquarters for processing.

☐       Your request has been received at the [_____ Resident Agency / _____ Field Office]
        and forwarded to FBI Headquarters for processing.

☑       We are searching the indices to our Central Records System for the information responsive
        to this request.   We will inform you of the results in future correspondence.

☐       Your request for a fee waiver is being considered and you will be advised of the decision at
        a later date.

☑       Please check for the status of your FOIPA request at www.fbi.gov/foia.

The FOIPA Request number listed above has been assigned to your request.   Please use this
number in all correspondence concerning your request.   Your patience is appreciated.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division



**U.S. Department of Justice**
*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.*
*Suite 7300, Bicentennial Building*
*Washington, DC  20530-0001*
*(202) 252-6020    FAX: 252-6047    (www.usdoj.gov/xxxx)*

May 21, 2015

David Sobel
1818 N Street, NW, Suite 410
Washington, DC  20036

    Re: Request Number: REFF-2015-01391      Date of Receipt: February 13, 2015
    Subject of Request: Laura Poitras
    Government Component that Referred Material:  NSD FOIA/PA #15-027

Dear Mr. Sobel:

        This is in reply to your Freedom of Information Act/Privacy Act request of January 24,
2014.  Records were referred to us by the government component above for direct response to
you.

        The referred material has been considered under both the FOIA and the Privacy Act to
provide you the greatest degree of access.  Exemptions have been applied when deemed
appropriate either for withholding records in full or for excising certain information.  The
exemptions cited are marked below.  An enclosure to this letter explains the exemptions in more
detail.

                    (B)(3) – FRCrP Rule 6(e)

        We have reviewed approximately 6 page(s) of material:
_____page(s) are being released in full (RIF);
_____page(s) are being released in part (RIP);
__6___page(s) are withheld in full (WIF) and
_____page(s) were duplicate copies of material already processed.

        This is the final action on this above-numbered request. If you are not satisfied with my
response to this request, you may administratively appeal by writing to the Director, Office of
Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue,
Washington, DC 20530-0001, or you may submit an appeal through this Office's eFOIA portal at
http://www.justice.gov/oip/efoia-portal.html.  Your appeal must be received within sixty days
from the date of this letter.  If you submit your appeal by mail, both the letter and the envelope
should be clearly marked "Freedom of Information Act Appeal."

                    Sincerely,

                    Susan B. Gerson
                    Assistant Director

Enclosure(s)                                             Form No. 0024 – 4/11

# ADDENDUM TO THE EXPLANATION OF EXEMPTION SHEET

X     Rule 6(e) of the Federal Rules of Criminal Procedure pertains to the Federal Grand Jury, its integrity and the secrecy surrounding the Jury.

❏     Under the Freedom of Information Act, an agency has no discretion to release any record covered by an injunction, protective order, or court seal which prohibits disclosure.  See GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386-387 (1980); See also Robert Tyrone Morgan v. U.S. Dept. of Justice, 923 F.2d 195 (D.C. Cir. 1991).

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:15-cv-01091 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Exhibit D**



**U.S. Department of Justice**

Office of Information Policy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

July 7, 2015

Mr. David L. Sobel
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
sobel@eff.org

   Re: Request No. 1250943

Dear Mr. Sobel:

   This is to advise you that your administrative appeal from the action of the Federal
Bureau of Investigation was received by this Office on June 3, 2015.

   The Office of Information Policy has the responsibility of adjudicating such appeals. In
an attempt to afford each appellant equal and impartial treatment, we have adopted a general
practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned
number AP-2015-04130. Please mention this number in any future correspondence to this
Office regarding this matter. Please note that if you provide an e-mail address or another
electronic means of communication with your request or appeal, this Office may respond to your
appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

   We will notify you of the decision on your appeal as soon as we can. If you have any
questions about the status of your appeal, you may contact me at the number above. If you have
submitted your appeal through this Office's online electronic appeal portal, you may also obtain
an update on the status of your appeal by logging into your portal account.

        Sincerely,

        Priscilla Jones
        Supervisory Administrative Specialist

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LAURA POITRAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-01091 |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit E



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

David L. Sobel, Esq.
Electronic Frontier Foundation
815 Eddy Street          Re:    Appeal No. AP-2015-04130
San Francisco, CA  94109               Request No. 1250943
sobel@eff.org                          CDT:JMB

**VIA:  E-mail**

Dear Mr. Sobel:

       You attempted to appeal on behalf of your client, Laura Poitras, from the failure of the Federal Bureau of Investigation to respond to her request for access to records concerning herself.[1]

       Department of Justice regulations provide for an administrative appeal to the Office of Information Policy only after there has been an adverse determination by a component. <u>See</u> Disclosure or Production of Records or Information, 80 Fed. Reg. 18099, 18110 (Apr. 3, 2015) (to be codified at 28 C.F.R. pt. 16.8(a)).  As no adverse determination has yet been made by the FBI, there is no action for this Office to consider on appeal.

       As you may know, the Freedom of Information Act authorizes requesters to file a lawsuit when an agency takes longer than the statutory time period to respond. <u>See</u> 5 U.S.C. § 552 (a)(6)(C)(i).  However, I can assure you that this Office has contacted the FBI and has been advised that your client's request is currently being processed.  If your client is dissatisfied with the FBI's final response, she may appeal again to this Office.

       This Office has forwarded a copy of your client's letter to the FBI.  Your client should contact the FBI's Requester Service Center at 540-868-1535 for further updates regarding the status of her request.

                          Sincerely,

                                            7/13/2015

                          X _____

                          Christina D. Troiani, Attorney-Advisor for
                          Sean O'Neill, Chief, Administrative Appeals Staff
                          Signed by: ctroiani

---

[1] Please be advised that the portion of your appeal concerning REFF-2015-01391 is being adjudicated in Appeal No. AP-2015-04128.

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:15-cv-01091 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

# Exhibit F

**U.S. Department of Justice**



**Federal Bureau of Investigation**
*Washington, D.C. 20535*

October 14, 2015

MS. LAURA POITRAS
c/o DAVID L. SOBEL, ESQUIRE
ELECTRONIC FRONTIER FOUNDATION
SUITE 640
5335 WISCONSIN AVENUE, NW
WASHINGTON, DC 20015-2052

FOIPA Request No.: 1250943-000
Subject: POITRAS, LAURA

*Laura Poitras v. DOJ, et. al.*
Civil Action No:   1:15-cv-01091

Dear Mr. Sobel:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

|  | **Section 552** |  |  |  | **Section 552a** |
|---|---|---|---|---|---|
| ☐ (b)(1) |  | ☐ (b)(7)(A) |  | ☐ (d)(5) | |
| ☐ (b)(2) |  | ☐ (b)(7)(B) |  | ☑ (j)(2) | |
| ☑ (b)(3) |  | ☑ (b)(7)(C) |  | ☐ (k)(1) | |
| Rule 6(e), Federal Rules of |  | ☑ (b)(7)(D) |  | ☐ (k)(2) | |
| Criminal Procedure |  | ☑ (b)(7)(E) |  | ☐ (k)(3) | |
| _____ |  | ☐ (b)(7)(F) |  | ☐ (k)(4) | |
| ☐ (b)(4) |  | ☐ (b)(8) |  | ☐ (k)(5) | |
| ☐ (b)(5) |  | ☐ (b)(9) |  | ☐ (k)(6) | |
| ☑ (b)(6) |  |  |  | ☐ (k)(7) | |

145 pages were reviewed and 62 pages are being released.

☑ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

  ☑ This information has been referred to the OGA(s) for review and direct response to you.
  ☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

☑
  In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.   See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records that are subject to the requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 § USC 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.   The envelope and the letter should      be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

☐      The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑      See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

In response to your client's Freedom of Information/Privacy Acts (FOIPA) request submitted to FBI Headquarters, Records Management Division, Winchester, Virginia, enclosed is one (1) compact disc (CD) containing a processed copy of the related material.

The enclosed documents Bates Stamped Poitras-1 through Poitras-145 represent the 1st interim release of information responsive to the referenced request.

The enclosed documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), subsection (j)(2).   However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws

No fee is being assessed at this time.   When the second interim release is made in this case, you will be billed for the $5.00 fee associated with this first release as well as the $15.00 duplication fee for the second release for a total of $20.00.   Each subsequent release will be made at a cost of $15.00.

Deletions were made by the U.S. Army Criminal Investigation Command Crime Center.   If you wish to appeal those denials, please write directly to that agency.

Inquiries regarding your OGA referrals may be directed to the following agencies at:

Executive Office for United States Attorneys
Department of Justice
ATTN:   William G. Stewart II, Assistant Director
FOIA/Privacy Unit
Suite 7300, 600 E Street, NW
Washington, D.C. 20530-0001

U.S. Army Criminal Investigation Command Crime Center
Michael Kardelis
Chief, FOI/PA Division
Russell-Knox Building
27130A Telegraph Road
Quantico, VA 22134

Department of Homeland Security
Delores Barber, Deputy Chief FOIA Officer
Privacy Office FOIA, Mailstop 0655
245 Murray Drive, SW
Washington, D.C. 20528-0655

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA POITRAS                          )
                                       )
              Plaintiff,               )
                                       )
         v.                            )        Civil Action No. 1:15-cv-01091
                                       )
UNITED STATES DEPARTMENT OF            )
JUSTICE, et. al.                       )
                                       )
            Defendants.                )
                                       )

**Exhibit G**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 10, 2015

MS. LAURA POITRAS
c/o DAVID SOBEL
ELECTRONIC FRONTIER FOUNDATION
5335 WISCONSIN AVENUE, N.W.
SUITE 640
WASHINGTON, DC 20015

FOIPA Request No.: 1250943-000
Subject: POITRAS, LAURA

*Laura Poitras v. DOJ, et. al.*
Civil Action No:   1:15-cv-01091

Dear Mr. Sobel:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision.  The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☑ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☑ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC, Section 3024(i)(1) | ☑ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

8 pages were reviewed and 8 pages are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

    ☐ This information has been referred to the OGA(s) for review and direct response to you.
    ☐ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☑
    In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 § USC 552 (a)(6)(A) to provide you the following information concerning your right to appeal. You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should    be clearly marked "Freedom of Information Appeal."  Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

⌐    The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑    See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the 2nd interim release of information responsive to your Freedom of Information/Privacy Acts (FOIPA) request.   The documents have been properly Bates Stamped Poitras-146 through Poitras-153.

The documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), subsection (j)(2). However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

By letter dated October 14, 2015, we sent you a Compact Disc (CD) containing the first interim release for this case. At that time, we explained the $5.00 balance associated with that release would be billed with this release. Accordingly, upon receipt of the enclosed CD please go to www.pay.gov to make an electronic payment* in the amount of $20.00, or make a check or money order payable to the Federal Bureau of Investigation and remit it to the Work Process Unit, Record Information/Dissemination Section, Records Management Division, Federal Bureau of Investigation, 170 Marcel Drive, Winchester, VA 22602. Please include the FOIPA Request Number with your payment. Failure to pay for this release within thirty (30) days from the date of this letter will close any pending FBI FOIPA requests from you. Nonpayment will also cause an automatic denial of any future FOIPA requests.

Deletions were made by U.S. Customs and Border Protection. If you wish to appeal those denials,

please write directly to:

> U.S. Customs and Border Protection
> Sabrina Burroughs
> FOIA Officer/Public Liaison
> 90 K Street, NE, 9th Floor
> Washington, D.C. 20229-1181

*Pay.gov is a secure web-based application that accepts credit card and ACH payments online, and is hosted by the United States Department of Treasury, Financial Management Service.   For frequent FOIPA requesters, it is recommended to create a Pay.gov account to retain an online history of payments made through Pay.gov and to retain specific information for future payments.   To make an electronic payment, complete the FBI Freedom of Information Act and Privacy Act Form located on Pay.gov.   Please note: if a refund is necessary, there is less processing time to refund a credit card payment than an ACH payment.*

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAURA POITRAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-01091 |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# Exhibit H



**U.S. Department of Justice**

_____

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

December 14, 2015

MS. LAURA POITRAS
c/o DAVID SOBEL
ELECTRONIC FRONTIER FOUNDATION
5335 WISCONSIN AVENUE, N.W.
SUITE 640
WASHINGTON, DC 20015

FOIPA Request No.: 1250943-000
Subject: POITRAS, LAURA

*Laura Poitras v. DOJ, et. al.*
Civil Action No:   1:15-cv-01091

Dear Mr. Sobel:

    The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

|  **Section 552** |  |  | **Section 552a** |
|---|---|---|---|
| ☑ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☑ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC, Section 3024(i)(1) | ☑ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

    10 pages were reviewed and 10 pages are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

    ☐ This information has been referred to the OGA(s) for review and direct response to you.
    ☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

☑
    In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.  Enclosed for your information is a copy of the Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request.  Please use this number in all correspondence concerning your request.  Your patience is appreciated.

Although your request is in litigation, we are required by 5 § USC 552 (a)(6)(A) to provide you the following information concerning your right to appeal.  You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.  Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.  The envelope and the letter should   be clearly marked "Freedom of Information Appeal."  Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

☐   The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.  Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).  Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).  Because of our significant backlog, we have given priority to processing only the main investigative file(s).  If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the 3rd interim release of information responsive to your Freedom of Information/Privacy Acts (FOIPA) request.  The documents have been properly Bates Stamped Poitras-154 through Poitras-163.

The documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), Subsection (j)(2).  However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

Upon receipt of the enclosed documents, please go to www.pay.gov to make an electronic payment* in the amount of $15.00, or make a check or money order payable to the Federal Bureau of Investigation and mail it to the Work Process Unit, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation, 170 Marcel Drive, Winchester, VA 22602.  Please include the FOIPA Request Number with your payment. Failure to pay for this release within thirty (30) days from the date of this letter will close any pending FBI FOIPA requests from you.  Nonpayment will also cause an automatic denial of any future FOIPA requests.

Deletions were made by the Department of State and the Department of the Army.   If you wish to appeal those denials, please write directly to:

Department of State
Attn:  Sheryl Walter
Office of Information Programs and Services
A-GIS-IPS-RL-RC
SA 2
Washington, DC 20522

Commander
U.S. Army Intelligence and Security Command
Freedom of Information/Privacy Office (APPEAL)
2600 Ernie Pyle Street, Room 3S02-B
Fort George G. Meade, Maryland 20755-5995

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 1:15-cv-01091 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

# Exhibit I



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 16, 2016

MS. LAURA POITRAS
c/o DAVID SOBEL
ELECTRONIC FRONTIER FOUNDATION
5335 WISCONSIN AVENUE, N.W.
SUITE 640
WASHINGTON, DC 20015

FOIPA Request No.: 1250943-000
Subject: POITRAS, LAURA

*Laura Poitras v. DOJ, et. al.*
Civil Action No:   1:15-cv-01091

Dear Mr. Sobel:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision.  In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely.  The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

| **Section 552** | | **Section 552a** |
|---|---|---|
| ☑ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| | | ☑ (j)(1) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☑ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☑ (k)(1) |
| 50 U.S.C. Section 3024(i)(1), | ☑ (b)(7)(D) | ☐ (k)(2) |
| CIA Act of 1949, and NSA Act of | ☑ (b)(7)(E) | ☐ (k)(3) |
| 1947 | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

124 pages were reviewed and 120 pages are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

　　☐ This information has been referred to the OGA(s) for review and direct response to you.
　　☐ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☑
In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.  Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 § USC 552 (a)(6)(A) to provide you the following information concerning your right to appeal.  You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.  Your appeal must be postmarked or transmitted within sixty (60) days from the date of this letter in order to be considered timely.  The envelope and the letter should be clearly marked "Freedom of Information Appeal."  Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

⌐   The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.  Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).  Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).  Because of our significant backlog, we have given priority to processing only the main investigative file(s).  If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the 4th interim release of information responsive to your Freedom of Information/Privacy Acts (FOIPA) request.  The documents have been properly Bates Stamped Poitras-164 through Poitras-287.

The documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), Subsection (j)(2).  However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

As a result of having completed consultation with the Central Intelligence Agency (CIA), excisions were made by the CIA pursuant to Title 5, United States Code, Section 552, subsections (b1) and (b3), National Security Act of 1947 and the CIA Act of 1949.  Enclosed is a copy of the CIA's explanation of exemptions.  The CIA official responsible for the CIA's determinations is John Giuffrida, Information and Privacy Coordinator.  You have the right to appeal their decision by addressing your appeal to the CIA Information Review Committee, Washington, D.C. 20505.  Should you decide to do this, please explain the basis of your appeal.

Deletions were also made by the National Guard.  If you wish to appeal those denials, please write directly to:

National Guard Bureau
Air National Guard FOIA
ATTN: NGB-JA/OIP
114 South George Mason Drive, AH2
Arlington, VA  22204-1373

Upon receipt of the enclosed documents, please go to www.pay.gov to make an electronic payment* in the amount of $15.00, or make a check or money order payable to the Federal Bureau of Investigation and mail it to the Work Process Unit, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation, 170 Marcel Drive, Winchester, VA 22602.  Please include the FOIPA Request Number with your

payment. Failure to pay for this release within thirty (30) days from the date of this letter will close any pending FBI FOIPA requests from you.   Nonpayment will also cause an automatic denial of any future FOIPA requests.

### EXPLANATION OF EXEMPTIONS

#### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

#### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

## CIA EXPLANATION OF EXEMPTIONS

**FREEDOM OF INFORMATION ACT:**

**(b)(1)**     applies to material which is properly classified pursuant to an Executive order in the interest of national defense or foreign policy;

**(b)(2)**     applies to information which pertains solely to the internal rules and practices of the Agency;

**(b)(3)**     applies to the Director's statutory obligations to protect from disclosure intelligence sources and methods, as well as the organization, functions, names, official titles, salaries or numbers of personnel employed by the Agency, in accord with the National Security Act of 1947 and the CIA Act of 1949, respectively;

**(b)(4)**     applies to information such as trade secrets and commercial or financial information obtained from a person on a privileged or confidential basis;

**(b)(5)**     applies to inter- and intra-agency memoranda which are advisory in nature;

**(b)(6)**     applies to information release of which would constitute an unwarranted invasion of personal privacy of other individuals; and

**(b)(7)**     applies to investigatory records, release of which could (C) constitute an unwarranted invasion of the personal privacy of others, (D) disclose the identity of a confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

**PRIVACY ACT:**

**(b)**     applies to information concerning other individuals which may not be released without their written consent;

**(j)(1)**     applies to polygraph records; documents or segregable portions of documents, release of which would disclose intelligence sources and methods, including names of certain Agency employees and organizational components; and, documents or information provided by foreign governments;

**(k)(1)**     applies to information and material properly classified pursuant to and Executive order in the interest of national defense or foreign policy;

**(k)(5)**     applies to investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, or access to classified information, release of which would disclose a confidential source; and

**(k)(6)**     testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process.

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 1:15-cv-01091

# Exhibit J



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

March 4, 2016

MS. LAURA POITRAS
c/o DAVID SOBEL
ELECTRONIC FRONTIER FOUNDATION
5335 WISCONSIN AVENUE, N.W.
SUITE 640
WASHINGTON, DC 20015

FOIPA Request No.: 1250943-000
Subject: POITRAS, LAURA

*Laura Poitras v. DOJ, et. al.*
Civil Action No:   1:15-cv-01091

Dear Mr. Sobel:

        The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision.  In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely.  The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

| Section 552 | | Section 552a |
|---|---|---|
| ☑ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| | | ☑ (j)(1) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☑ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☑ (k)(1) |
| 50 U.S.C., Section 3024 (i)(1), | ☑ (b)(7)(D) | ☐ (k)(2) |
| CIA Act of 1949, and NSA Act of | ☑ (b)(7)(E) | ☐ (k)(3) |
| 1947 and Rule 6(e), FRCP | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

        57 pages were reviewed and 57 pages are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

        ☐ This information has been referred to the OGA(s) for review and direct response to you.
        ☐ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☑
        In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 § USC 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be postmarked or transmitted within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal."  Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

⌐   The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the final release of information responsive to your Freedom of Information/Privacy Acts (FOIPA) request.   The documents have been properly Bates numbered Poitras-288 through Poitras-344.

The FBI inadvertently citied FOIA exemption (b)(7)(E)-7 on Bates page Poitras-54.   The FBI has reprocessed the page and has enclosed the page with this release.

The documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), Subsection (j)(2).   However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

Upon receipt of the enclosed documents, please go to www.pay.gov to make an electronic payment* in the amount of $30.00 ($15.00 for the current release and $15.00 for the 4th interim release made on February16, 2016), or make a check or money order payable to the Federal Bureau of Investigation and mail it to the Work Process Unit, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation, 170 Marcel Drive, Winchester, VA 22602.   Please include the FOIPA Request Number with your payment.   Failure to pay for this release within thirty (30) days from the date of this letter will close any pending FBI FOIPA requests from you. Nonpayment will also cause an automatic denial of any future FOIPA requests.

As a result of having completed consultation with the Central Intelligence Agency (CIA), excisions were made by the CIA.   Enclosed is a copy of the CIA's explanation of exemptions.   You have the right to appeal their decision by addressing your appeal to the CIA Information Review Committee, Washington, D.C. 20505.   Should you decide to do this, please explain the basis of your appeal.

Deletions were made by the U.S. Customs and Border Protection.   You have a right to appeal their withholding determination.   Should you wish to do so, you must send your appeal within 60 days of the date of this letter to: FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177, following the procedures outlined in the DHS regulations at Title 6 C.F.R. § 5.9.   Your envelope and letter should be marked "FOIA Appeal."   Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Redactions were made by the Department of the Air Force.   If you choose to appeal their redactions, you must do so within 60 calendar days of the date of this letter.   You can submit your appeal by email to afosi_hq_ foia_request@us.af.mil, by mail to AFOSI/XILI, ATTN:   FOIA Office, 27130 Telegraph Rd, Quantico, VA 22134, or by fax to (571)305-8229.   You must include your reason(s) for reconsideration and attach a copy of the response letter.

Deletions were also made by the Department of the Army.   If you decide to appeal, your appeal must be submitted within 60 days of the date of this letter.   In your appeal, you must state the basis for your disagreement with the partial denial and state the justification for its release.   Your appeal should be addressed to the Director, U.S. Army Crime Records Center, 27130 Telegraph Road, Quantico, Virginia 22134, for forwarding, as appropriate, to the Office of the Secretary of the Army, the appellate authority.   Please note that this appeal should address information denied in this response and cannot be used to make a new request for additional or new information.

Deletions were also made by the National Guard If you wish to appeal those denials, please write directly to:

National Guard Bureau
Air National Guard FOIA
ATTN: NGB-JA/OIP
114 South George Mason Drive, AH2
Arlington, VA   22204-1373

# EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

## CIA EXPLANATION OF EXEMPTIONS

**FREEDOM OF INFORMATION ACT:**

**(b)(1)**    applies to material which is properly classified pursuant to an Executive order in the interest of national defense or foreign policy;

**(b)(2)**    applies to information which pertains solely to the internal rules and practices of the Agency;

**(b)(3)**    applies to the Director's statutory obligations to protect from disclosure intelligence sources and methods, as well as the organization, functions, names, official titles, salaries or numbers of personnel employed by the Agency, in accord with the National Security Act of 1947 and the CIA Act of 1949, respectively;

**(b)(4)**    applies to information such as trade secrets and commercial or financial information obtained from a person on a privileged or confidential basis;

**(b)(5)**    applies to inter- and intra-agency memoranda which are advisory in nature;

**(b)(6)**    applies to information release of which would constitute an unwarranted invasion of personal privacy of other individuals; and

**(b)(7)**    applies to investigatory records, release of which could (C) constitute an unwarranted invasion of the personal privacy of others, (D) disclose the identity of a confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

**PRIVACY ACT:**

**(b)**    applies to information concerning other individuals which may not be released without their written consent;

**(j)(1)**    applies to polygraph records; documents or segregable portions of documents, release of which would disclose intelligence sources and methods, including names of certain Agency employees and organizational components; and, documents or information provided by foreign governments;

**(k)(1)**    applies to information and material properly classified pursuant to and Executive order in the interest of national defense or foreign policy;

**(k)(5)**    applies to investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, or access to classified information, release of which would disclose a confidential source; and

**(k)(6)**    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process.

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA POITRAS                                )
                                             )
            Plaintiff,                       )
                                             )
            v.                               )        Civil Action No. 1:15-cv-01091
                                             )
UNITED STATES DEPARTMENT OF                  )
JUSTICE, et. al.                             )
                                             )
            Defendants.                      )
                                             )

# Exhibit K

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| David L. Sobel, | ) |
| | ) |
| | ) |
| | ) Civil Action No. 1:15-cv-01091 |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Federal Bureau of Investigation | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>DECLARATION OF JON Z. ALI</u>

I, Jon Z. Ali, do hereby declare the following to be true and correct:

1.      I am currently Information Release Specialist in the Freedom of Information Act and Privacy Act Division, U.S. Army Criminal Investigation Command ("USACIDC"), Crime Record Center ("USACRC") headquartered at 27130 Telegraph Road, Quantico, Virginia 22134. I have served in this position for approximately six years. The USACRC is the record holding facility for the USACIDC, which is the U.S. Army command responsible for investigating serious crimes whenever an Army interest exists and jurisdiction has not been reserved to another agency.

2.      In my current capacity as an Information Release Specialist, I process records and documents under the agency's programs established pursuant to the Freedom of Information Act, 5 U.S.C. §552, ("FOIA") and the Privacy Act, 5 U.S.C. §552a, ("PA"). My responsibilities include the review and interpretation of FOIA and PA requests for records located at USACIDC, its field offices, and its offsite storage facilities. I also process files responsive to those requests,

create the correspondence related to those requests, conduct searches in response to those requests, and the preparation of responses to those requests to ensure that determinations to withhold or to release records are made in accordance with the FOIA; the PA; DoD 5400.7-R, the Department of Defense Freedom of Information Act Program; DoD 5400.11-R, the Department of Defense Privacy Program; and 32 C.F.R. §518.

3.      In the course of my official duties at USACIDC, I have become familiar with the FOIA request by Mr. David L. Sobel.  The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon determinations made by me in accordance therewith.

4.      Due to the requirements of my position, I reprocessed the FBI documents involved in this FOIA request to determine if any information withheld pursuant to FOIA Exemption (b)(7)(A) should be released.  All documents provided were processed to achieve maximum disclosure consistent with the provisions of the FOIA.  Every effort was made to provide Plaintiffs with all material in the public domain and with all reasonably segregable portions of releasable material.  The FOIA exemptions asserted as grounds for nondisclosure of the documents are FOIA Exemptions (b)(6), (b)(7)(C) and (b )(7)(E).

5.      The documents referred to the USACRC by the Federal Bureau of Investigation are denied in part under 5 U.S.C. §552(b)(6), (b)(7)(C) and (b)(7)(E).

Exemption (b)(6) Privacy Interest

6.      5 U.S.C. § 552(b)(6) provides that the Government may withhold information about individuals contained in personnel and medical files when the disclosure of such information "would constitute a clearly unwarranted invasion of privacy."  When withholding information pursuant to this exemption, the agency is required to balance the privacy interests of the individuals in the documents against any public interest in disclosure.  In asserting this

exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appear in the document at issue. The public interest in disclosure of the information is determined by whether the information in question would inform the plaintiff or the general public about USACIDC's and the FBI's performance of its mission to investigate individuals suspected of committing offenses in which charges may be brought before a Federal Court. There is no legitimate public interest in the information withheld pursuant to Exemption (b)(6). Information categorically withheld includes personal information of third parties, to include USACIDC special agents and other government employees. This included names, email addresses, telephone numbers, home addresses, passport numbers, photographs and other personally identifiable information (PII) of persons involved in the investigation and individuals whose personal information was merely intermingled with the investigation and responsive material. This information, if released, would constitute an unwarranted invasion of their personal privacy. Therefore, this information is protected under Exemption (b)(6).

EXEMPTION (b)(7)(C)
Personal Information in Law Enforcement Records

7.     5 U.S.C. § 552(b)(7)(C) exempts from disclosure certain "records compiled for law enforcement purposes." The USACIDC and FBI are law enforcement agencies whose sole, overarching mission is to conduct law enforcement investigations. Thus all information included as responsive were obtained by CID and FBI and as such are records compiled for law enforcement purposes.

8.     This exemption provides protection for personal information in law enforcement records. Information is exempt if disclosure could reasonably be expected to constitute an

unwarranted invasion of personal privacy. The categorical withholding of information in these documents applies to information that identifies third parties in the law enforcement records.

9. Disclosure of the names and identifying information of U.S. Government personnel investigating suspected terrorists and their organizations would subject these personnel to harassment and annoyance in the conduct of their official duties and their private lives. These personnel include Special Agents assigned to USACIDC, as well as intelligence analysts, interpreters and support personnel. It also includes contractor personnel working with U.S. government personnel in these investigative efforts. Release of their names could jeopardize their safety and the safety of their family members, and cause undue worry and stress regarding their personal security. Nothing in these documents alleges any wrongdoing by any government personnel whose names are withheld that would justify any public disclosure of their identities. There is no legitimate public interest in the identities of these agents. Due to the breadth of privacy protection under Exemption (b )(7)(C) and potential harm resulting from release, any release of these names would be an unwarranted intrusion on the personal privacy of these individuals, even with respect to the discharge of their official duties.

10. Finally, because the subjects of the FOIA request have waived their privacy rights to have their names and identifying information redacted, none of their names have been redacted.

## EXEMPTION (b)(7)(E)
### Records or Information the Disclosure of Which
### Would Disclose Techniques and Procedures for Law Enforcement
### Investigations or Prosecutions Which Could Reasonably be
### Expected to Risk Circumvention of the Law

17. 5 U.S.C. § 552 (b)(7)(E) affords protection to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement

records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

18.     The information exempted for release by (b)(7)(E) contain information that, if released, would expose law enforcement techniques associated with investigating and detaining suspects, not generally known to the public. While the techniques set forth in the documents may be known to some degree, their usefulness in the context of USACIDC investigations is not commonly known by members of the public. A further description of the material could allow the exempt material to be identified, but in general terms the redacted material pertains to identification numbers assigned to detainees. Release of these techniques would allow suspects to take steps to counter these investigative methods, circumvent law enforcement procedures, and/or prosecution.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 17th day of March, 2016.

Jon Z. Ali
Information Release Specialist
U.S. Army Criminal Investigation Command

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:15-cv-01091 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

# Exhibit L

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAURA POITRAS,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          Civil Action No. 15-1091
                                  )
DEPARTMENT OF HOMELAND            )
SECURITY,                         )
               et al.,            )
                                  )
          Defendant.              )
_____)

## DECLARATION OF DAVID LUCZYNSKI

Pursuant to 28 U.S.C. § 1746, I, David Luczynski, declare the following to be a true and correct statement of facts:

1. I am an Attorney Advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). In that capacity, my responsibilities include acting as liaison with other divisions and offices of DOJ in responding to requests and litigation filed under both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a ("PA"), reviewing FOIA/PA requests for access to records located in this office and the ninety-four United States Attorneys' Offices ("USAOs") and the case files arising therefrom, reviewing correspondence related to requests, reviewing searches conducted in response to requests, locating responsive records, and preparing EOUSA responses to ensure that determinations to withhold or release such responsive records are in accordance with FOIA, PA, and DOJ regulations, 28 C.F.R. §§ 16.3 et seq. and §§ 16.40 et seq.

2. As an Attorney Advisor of the FOIA/PA Unit, EOUSA, I have the authority to release

and withhold records requested under the FOIA/PA.   The statements I make in this Declaration are based upon my review of the official files and records of EOUSA, my own personal knowledge, and information acquired by me through the performance of my official duties.

3.   Due to the nature of my official duties, I am familiar with the procedures followed by this office in responding to the request referred to EOUSA as a result of a FOIA request to FBI by Plaintiff, Laura Poitras.

I have reviewed the Complaint which this Declaration addresses.

## CHRONOLOGY

4.   On February 13, 2015, EOUSA received a referral of a FOIA request from the National Security Division ("NSD").   The FOIA request was initially filed with the Federal Bureau of Investigation ("FBI") and assigned request number FBI FOI/PA # 1250943-000.

5.   By letter dated May 21, 2015, EOUSA responded to the referral informing plaintiff that his request has been processed.   The letter lists FOIA exemption (b)(3) in conjunction with application of Rule 6(e) of the Federal Rules of Criminal Procedure, which pertains to the secrecy of grand jury proceedings.   The response letter also informed Plaintiff of his appeal rights and that the appeal must be received by OIP within 60 days from the date of this letter.   **Government Exhibit A**.

6.   On July 1, 2015, the Office of Information Policy ("OIP") informed plaintiff that it had received his appeal and assigned it number AP-2015-04128.   **Government Exhibit B**.

7.   By letter dated September 28, 2015, OIP informed plaintiff that after considering his appeal, it is affirming EOUSA's action on the records referred to it as the application of FOIA Exemption (b)(3) and Rule 6(e) of the Federal Rules of Criminal Procedure was correct in order to

protect record related to the secrecy of the Grand Jury proceedings.   **Government Exhibit C.**

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE PRIVACY ACT

8.   EOUSA processes all requests by individuals for records pertaining to themselves under both the FOIA and PA in order to provide the requester with the maximum disclosure authorized by law.   Criminal case files maintained by U.S. Attorney's Offices are part of the DOJ Privacy Act System of Records.   The Attorney General has promulgated regulations at 28 C.F.R. §16.81(a)(1) which exempt U.S. Attorney's Office criminal case files (known as Justice/USA-007 files) from the PA's access provisions, as authorized by 5 U.S.C. §552a(j)(2).   Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws.   Since Plaintiff's entire request pertains to criminal investigations, the materials were necessarily compiled for law enforcement purposes.   Therefore, EOUSA determined that the responsive records withheld were not disclosable under the PA.   Accordingly, EOUSA next reviewed the records responsive to plaintiff's request under the provisions of the FOIA.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

### EXEMPTION 5 U.S.C. §552(b)(3)

9.   Exemption (b)(3) exempts from mandatory release information specifically barred from disclosure by another statute.   This exemption permits the withholding of information prohibited from disclosure by another statute if that statute either (A) requires that the matters be withheld from the public without discretion, or (B) establishes particular criteria for

withholding or refers to particular types of matters to be withheld.   5 U.S.C. §552(b)(3).

10.  Rule 6(e) of the Federal Rules of Criminal Procedure regulates the disclosure of matters occurring before a grand jury.   In order for a Federal Rule of Criminal Procedure to qualify as a "statute" for purposes of Exemption (b)(3), it must have been affirmatively enacted into law by Congress.   Rule 6(e) has been held to meet this "statute" requirement since it was affirmatively enacted by Congress in 1977.   Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the document in which the material is contained.   Such material encompasses not only the direct revelation of grand jury transcripts, but also the disclosure of information that would reveal the identities of witnesses or jurors, the substance of the testimony given before the grand jury, the strategy or direction of the investigation, the deliberations or questions of the grand jurors, and any other matter, the disclosure of which would suggest a specific act, thought, or focus of the grand jury's deliberations.

11.  EOUSA applied Exemption (b)(3) in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure categorically to deny parts of the request submitted by the plaintiff. The reasons these records were withheld are because the materials referred were specifically identified as grand jury materials, which, if released, would impermissibly reveal the scope of the grand jury and the direction of the investigation by providing the identities of the target of the investigation, the source of the evidence, as well as the actual evidence produced before the grand jury.   Release of this information would provide the requester with the scope of the grand jury's investigation by setting forth where the Government sought evidence to develop its case, how the Government developed its case, and whom the Government relied upon to develop the elements of

Page 4 of  5

the alleged crimes.   Accordingly, relevant parts of plaintiff's FOIA request were denied in full.

## VAUGHN INDEX

12.   In order to describe the records withheld from plaintiff in more detail, a Vaughn Index is attached to this declaration as **Exhibit D**.

## SEGREGABILITY

13.   All information withheld was exempt from disclosure pursuant to a FOIA exemption. After EOUSA considered the segregability of the requested records, no reasonably segregable non-exempt information was withheld from plaintiff.

## CONCLUSION

Each step in the handling of plaintiff's request has been entirely consistent with the EOUSA's and the USAOs' procedures, which were adopted to ensure an equitable response to all persons seeking responsive records under the FOIA/PA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June   6  , 2016.

David Luczynski
Attorney Advisor
EOUSA, FOIA/PA Unit

Page 5 of  5



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.*
*Suite 7300, Bicentennial Building*
*Washington, DC  20530-0001*
*(202) 252-6020    FAX: 252-6047    (www.usdoj.gov/usao)*

*A*

May 21, 2015

David Sobel
1818 N Street, NW, Suite 410
Washington, DC  20036

    Re: Request Number: <u>REFF-2015-01391</u>    Date of Receipt: <u>February 13, 2015</u>
    Subject of Request: <u>Laura Poitras</u>
    Government Component that Referred Material: <u> NSD FOIA/PA #15-027 </u>

Dear <u>Mr. Sobel</u>:

    This is in reply to your Freedom of Information Act/Privacy Act request of January 24, 2014.  Records were referred to us by the government component above for direct response to you.

    The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access.  Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information.  The exemptions cited are marked below.  An enclosure to this letter explains the exemptions in more detail.

        (B)(3) – FRCrP Rule 6(e)

    We have reviewed approximately 6 page(s) of material:
_____page(s) are being released in full (RIF);
_____page(s) are being released in part (RIP);
\_\_6\_\_page(s) are withheld in full (WIF) and
_____page(s) were duplicate copies of material already processed.

    This is the final action on this above-numbered request. If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, Washington, DC 20530-0001, or you may submit an appeal through this Office's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be received within sixty days from the date of this letter.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

        Sincerely,

        Susan B. Gerson
        Assistant Director

Enclosure(s)

Form No. 0024 – 4/11

# ADDENDUM TO THE EXPLANATION OF EXEMPTION SHEET

X Rule 6(e) of the Federal Rules of Criminal Procedure pertains to the Federal Grand Jury, its integrity and the secrecy surrounding the Jury.

☐ Under the Freedom of Information Act, an agency has no discretion to release any record covered by an injunction, protective order, or court seal which prohibits disclosure. See GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386-387 (1980); See also Robert Tyrone Morgan v. U.S. Dept. of Justice, 923 F.2d 195 (D.C. Cir. 1991).

B



**U.S. Department of Justice**

Office of Information Policy

*Telephone: (202) 514-3642*                    *Washington, D.C.  20530*

July 1, 2015

Mr. David L. Sobel
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA  94109
sobel@eff.org

      Re:  Request No. REFF-2015-01391

Dear Mr. Sobel:

      This is to advise you that your administrative appeal from the action of the Executive Office for United States Attorneys was received by this Office on June 3, 2015.

      The Office of Information Policy has the responsibility of adjudicating such appeals.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **AP-2015-04128**.  Please mention this number in any future correspondence to this Office regarding this matter.  Please note that if you provide an e-mail address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

      We will notify you of the decision on your appeal as soon as we can.  If you have any questions about the status of your appeal, you may contact me at the number above.  If you have submitted your appeal through this Office's online electronic appeal portal, you may also obtain an update on the status of your appeal by logging into your portal account.

                Sincerely,

                Priscilla Jones
                Supervisory Administrative Specialist



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Mr. David L. Sobel                                   Re:     Appeal No. AP-2015-04128
Electronic Frontier Foundation                               Request No. REFF-2015-01391
815 Eddy Street                                              SRO:RRK
San Francisco, CA 94109
sobel@eff.org

**VIA: E-mail**

Dear Mr. Sobel:

        You appealed on behalf of your client, Laura Poitras, from the action of the Executive
Office for United States Attorneys (EOUSA) on records referred to it by the Federal Bureau of
Investigation pursuant to your Freedom of Information Act request for access to records
concerning your client.

        After carefully considering your appeal, I am affirming EOUSA's action on the records
referred to it. In order to provide your client with the greatest possible access to responsive
records, the records that were referred to EOUSA were reviewed under both the Privacy Act of
1974 and the FOIA. I have determined that the records responsive to your client's request are
exempt from the access provision of the Privacy Act. See 5 U.S.C. § 552a(j)(2); see also 28
C.F.R. § 16.81 (2015). For this reason, I have reviewed your appeal under the FOIA.

        The FOIA provides for disclosure of many agency records. At the same time, Congress
included in the FOIA nine exemptions from disclosure that provide protection for important
interests such as personal privacy, privileged communications, and certain law enforcement
activities.

        EOUSA properly withheld this information in full because it is protected from disclosure
under the FOIA pursuant to 5 U.S.C. § 552(b)(3). This provision concerns matters specifically
exempted from release by a statute other than the FOIA (in this instance, Rule 6(e) of the Federal
Rules of Criminal Procedure, which pertains to the secrecy of grand jury proceedings).

        Please be advised that this Office's decision was made only after a full review of this
matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and
analyzed your appeal, your client's underlying request, and the action of EOUSA in response to
your client's request.

        If your client is dissatisfied with my action on your appeal, the FOIA permits her to file a
lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

- 2 -

    For your information, the Office of Government Information Services (OGIS) offers
mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-
exclusive alternative to litigation. Using OGIS services does not affect your client's right to
pursue litigation. The contact information for OGIS is as follows: Office of Government
Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi
Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-
5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

                                        Sincerely,

                                                                        9/28/2015

                                        X _____ _____

                                        Sean R. O'Neill
                                        Chief, Administrative Appeals Staff
                                        Signed by: Sean O'Neill



**VAUGH INDEX**

Laura Poitras v. Homeland Security, 15-1091 DC

| Doc. # | Pages | Description | Exempt/ Status | Justification |
|---|---|---|---|---|
| | | | | **SUMMARY OF ABBREVIATIONS**<br>**"RIF"- Released in full**<br>**"RIP"- Released in part**<br>**"WIF"-Withheld in full**<br>**"NS"  - Deemed not segregable after review for segregability.** |
| 1 | 1 | Grand Jury Subpoena directed at a third party. | (b)3<br>**WIF** | Exemption (b)3 exempts from disclosure information which is protected by another statute.  Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure matters pertaining to the secrecy of grand jury proceedings are exempt from disclosure.<br><br>There are no public interests to weigh.<br><br>No page was determined segregable after review for segregability.  The release of blank portions of the forms would be meaningless. |
| 2 | 1 | Letter dated October 27, 2007 from the USAO to a third party regarding Subpoena compliance. | (b)3<br>**WIF** | Exemption (b)3 exempts from disclosure information which is protected by another statute.  Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure matters pertaining to the secrecy of grand jury proceedings are exempt from disclosure.<br><br>There are no public interests to weigh.<br><br>No page was determined segregable after review for segregability.  The release of blank portions of the forms would be meaningless. |
| 3 | 1 | Rider regarding the Grand Jury Subpoena requesting specific information release of which would reveal the scope and | (b)3<br>**WIF** | Exemption (b)3 exempts from disclosure information which is protected by another statute.  Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure matters pertaining to the secrecy of grand jury proceedings are exempt from disclosure. |

**VAUGH INDEX**
Laura Poitras v. Homeland Security, 15-1091 DC

| | | direction of the investigation. | | There are no public interests to weigh.<br><br>No page was determined segregable after review for segregability.  The release of blank portions of the forms would be meaningless. |
|---|---|---|---|---|
| 4 | 1 | Grand Jury Subpoena directed at a third party. | (b)3<br>**WIF** | Exemption (b)3 exempts from disclosure information which is protected by another statute.  Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure matters pertaining to the secrecy of grand jury proceedings are exempt from disclosure.<br><br>There are no public interests to weigh.<br><br>No page was determined segregable after review for segregability.  The release of blank portions of the forms would be meaningless. |
| 5 | 1 | Letter dated October 26, 2007 from the USAO to a third party regarding Subpoena compliance. | (b)3<br>**WIF** | Exemption (b)3 exempts from disclosure information which is protected by another statute.  Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure matters pertaining to the secrecy of grand jury proceedings are exempt from disclosure.<br><br>There are no public interests to weigh.<br><br>No page was determined segregable after review for segregability.  The release of blank portions of the forms would be meaningless. |
| 6 | 1 | Rider regarding the Grand Jury Subpoena requesting specific information release of which | (b)3<br>**WIF** | Exemption (b)3 exempts from disclosure information which is protected by another statute.  Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure matters pertaining to the secrecy of grand jury proceedings are exempt from |

**VAUGH INDEX**
Laura Poitras v. Homeland Security, 15-1091 DC

| | | | | |
|---|---|---|---|---|
| | | would reveal the scope and direction of the investigation. | | disclosure.<br><br>There are no public interests to weigh.<br><br>No page was determined segregable after review for segregability.  The release of blank portions of the forms would be meaningless. |

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:15-cv-01091 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Exhibit M**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Laura Poitras,                          )
                                        )
         Plaintiff,                     )
                                        )   Civil Action No. 1:15-CV-01091
              v.                        )
                                        )
Department of Homeland                  )
Security, et al.                        )
                                        )
         Defendants.                    )
_____)

### DECLARATION OF ANTOINETTE B. SHINER,
### INFORMATION REVIEW OFFICER,
### LITIGATION INFORMATION REVIEW OFFICE,
### CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

## I.   Introduction

1.   I currently serve as the Information Review Officer
("IRO") for the Litigation Information Review Office ("LIRO") at
the Central Intelligence Agency ("CIA" or "Agency").  I assumed
this position effective 19 January 2016.

2.   Prior to becoming the IRO for LIRO, I served as the
IRO for the Directorate of Support ("DS") for over sixteen
months.  In that capacity, I was responsible for making
classification and release determinations for information
originating within the DS.  Prior to serving in the DS, I was
the Deputy IRO for the Director's Area of the CIA ("DIR Area")
for over three years.  In that role, I was responsible for

1

making classification and release determinations for information originating within the DIR Area, which included, among other offices, the Office of the Director of the CIA, the Office of Congressional Affairs, the Office of Public Affairs, and the Office of General Counsel.  I have held other administrative and professional positions within the CIA since 1986, and have worked in the information review and release field since 2000.

3.   I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010).  Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

4.   Although CIA is not a party to this litigation, this declaration supports the Government's motion for summary judgment by providing additional details regarding certain CIA-related information contained in documents located by the Federal Bureau of Investigation ("FBI") in connection with this litigation.  Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA/Privacy Act request.  I make the following statements based

2

upon my personal knowledge and information made available to me
in my official capacity.

5. The purpose of this declaration is, to the greatest
extent possible on the public record, (a) to explain the nature
and scope of the CIA information involved in this case; (b) to
identify the FOIA exemptions that apply to that information; and
(c) to explain why the information is classified and cannot be
publicly released.

## II.  Plaintiff's FOIA/Privacy Act Request

6. It is my understanding that Plaintiff Laura Poitras,
through her attorney, submitted a FOIA/Privacy Act request to
the FBI, a component of the Department of Justice ("DOJ"), on 24
January 2014.  Plaintiff's request sought "disclosure of all
agency records concerning, naming, or relating to Ms. Poitras."

7. In the course of processing the Plaintiff's FOIA/Privacy
Act request, the FBI located FBI documents that possibly
contained CIA information.  In a letter dated 5 February 2015,
the FBI referred certain FBI documents to the CIA for
consultation.  On 23 June 2015, the CIA sent a letter to the FBI
stating that the Agency had determined that three of the
documents contained CIA information that needed to be redacted
on the basis of FOIA exemptions (b)(1) and (b)(3).[1]
Specifically, CIA requested that FBI redact CIA information on

---

[1] The CIA also inadvertently cited Privacy Act exemptions (j)(1) and (k)(1) as
an additional basis for some of these redactions.

3

pages 243, 246, 249, and 330-32 of the documents produced to
Plaintiff.

     8. On 31 August 2015, the FBI referred five additional
documents to the CIA for consultation.  On 16 September 2015,
the CIA responded to the FBI that it had determined that all
five of the documents contained CIA information that must be
redacted on the basis of FOIA exemptions (b)(1) and (b)(3).
Specifically, CIA requested that FBI redact CIA information on
pages 146, 148-52, 155, 231, 234-35, 237, and 241 of the
documents produced to Plaintiff.

## III. Application of FOIA Exemptions

### A.    FOIA Exemption (b)(1)

     9. FOIA exemption (b)(1) provides that agencies need not
disclose materials that are "specifically authorized under
criteria established by an Executive order to be kept secret in
the interest of national defense or foreign policy" and "are in
fact properly classified pursuant to such Executive order."
5 U.S.C. § 552(b)(1).  Here, the information withheld pursuant
to exemption (b)(1) satisfies the procedural and substantive
requirements of Executive Order 13526, which governs
classification.  *See* Executive Order 13526 § 1.1(a), § 1.4(c).

     10. As an original classification authority, I have
determined that discrete portions of records responsive to
Plaintiff's request are currently and properly classified.  This

4

information is owned by and is under the control of the U.S.
Government. As described below, the information falls under
classification category § 1.4(c) of the Executive Order because
it concerns "intelligence activities (including covert action),
[or] intelligence sources or methods." The unauthorized
disclosure of this information could reasonably be expected to
result in serious damage to national security, and thus the
redacted information is classified SECRET. None of the
information at issue has been classified in order to conceal
violations of law, inefficiency or administrative error; prevent
embarrassment to a person, organization or agency; restrain
competition; or prevent or delay the release of information that
does not require protection in the interests of national
security.

11. Because revealing additional details about the withheld
portions would disclose classified information, I am limited in
my ability to describe the intelligence activities, sources, and
methods at issue and the harm that would be occasioned by their
disclosure on the public record.[2] However, publicly I can
acknowledge that the redacted CIA information can generally be
grouped into three categories: (1) information relating to the
CIA's cooperation with law enforcement; (2) information that

---

[2] If the Court desires, the CIA is prepared to supplement this unclassified
declaration with an in camera, ex parte classified declaration containing
additional information about the withheld information that the CIA cannot
file on the public record.

5

would reveal whether or not the CIA possesses information about a particular individual; and (3) information concerning CIA's organization and functions.  The disclosure of this information could reasonably be expected to cause serious damage to the national security.

12.   Much of the redacted information contains details concerning the coordination process between the CIA and the FBI. Although it is generally acknowledged that the CIA and the FBI coordinate and cooperate to some extent in both the overseas and domestic arenas, the CIA cannot reveal certain details concerning the nature, scope, or application of the CIA-FBI coordination process because doing so would reveal classified CIA intelligence activities, sources, and methods.  Disclosing these details could harm the national security by hindering the intelligence community and law enforcement's ability to track and identify certain individuals who may seek to avoid detection.  For example, if terrorists were to gain knowledge about the specific methods used to facilitate interagency coordination, they might be able to utilize such information to purposely mislead reporting, misdirect investigators, or circumvent detection.

13.   Additionally, some of the redacted CIA information would reveal the results of name traces run by the CIA.  The results of a name trace, regardless of whether the CIA possesses

6

any responsive information about an individual, is classified.
Indeed, the mere confirmation or denial of the existence or
nonexistence of responsive information would in itself reveal a
classified fact: namely, whether the CIA has an intelligence
interest in or clandestine connection to a particular individual
or activity.  Our adversaries could use this information to
identify CIA intelligence interests, capabilities, and
priorities, and to exploit gaps in coverage.  Accordingly, the
results of name traces run by the CIA, regardless of whether the
CIA possesses or does not possess any responsive information,
would reveal sensitive information about the CIA's intelligence
collection interests, capabilities, and activities.  This
information is currently and properly classified pursuant to
Executive Order 13526 and, therefore, protected from disclosure
under FOIA exemption (b)(1) because its disclosure could cause
serious damage to the national security.[3]

    14.   Similarly, additional classified information was
withheld regarding the CIA's organization and functions.  The
CIA is charged with carrying out a number of important functions
on behalf of the United States, which include, among other

---

[3] When the CIA can neither confirm nor deny the existence or nonexistence of
records that would reveal a classified connection to the CIA, it issues what
is known as a "Glomar" response.  The origins of the Glomar response trace
back to the D.C. Circuit's decision in Phillippi v. CIA, 546 F.2d 1009 (D.C.
Cir. 1976), which affirmed the CIA's use of the "neither confirm nor deny"
response to a FOIA request for records concerning the CIA's reported contacts
with the media regarding Howard Hughes' ship, the "Hughes Glomar Explorer."

activities, collecting and analyzing foreign intelligence and
counterintelligence. A defining characteristic of the CIA's
intelligence activities is that they are typically carried out
through clandestine means, and therefore must remain secret in
order to be effective. Disclosure of certain details related to
the CIA's organization and functions, which pertain to
intelligence activities and methods, could undermine these
efforts by revealing, among other things, CIA capabilities,
interests, and resources. Disclosure of these details could
help our adversaries exploit, infiltrate, and target CIA
facilities, infrastructure, and employees.

15.   For the reasons set forth above, disclosure of this
information could reasonably be expected to cause serious damage
to national security and must be withheld under FOIA exemption
(b)(1).

**B.   FOIA Exemption (b)(3)**

16. FOIA exemption (b)(3) provides that the FOIA disclosure
provision does not apply to matters that are:

> Specifically exempted from disclosure by statute (other
> than 552b of this title) provided that such statute
> (A) requires that the matters be withheld from the public
> in such a manner as to leave no discretion on the issue or
> (B) establishes particular criteria for withholding or
> refers to particular types of matters to be withheld.

5 U.S.C. § 552 (b)(3).

8

17. Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1)(the "National Security Act"), provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure." Accordingly, the National Security Act constitutes a federal statute which "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). Under the direction of the DNI pursuant to section 102A, and consistent with section 1.6(d) of Executive Order 12333, the CIA is authorized to protect CIA sources and methods from unauthorized disclosure.[4]

18. Because the information withheld in this case falls within the ambit of the National Security Act, it is exempt from disclosure under FOIA exemption (b)(3). In contrast to Executive Order 13526, this (b)(3) qualified statute does not require the CIA to identify or describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of intelligence sources and methods. Simply stated, no showing of harm is required.

---

[4] Section 1.6(d) of Executive Order 12333, as amended, 3 C.F.R. 200 (1981), *reprinted in* 50 U.S.C.A. § 401 note at 25 (West Supp. 2009), and as amended by Executive Order 13470, 73 Fed. Reg. 45,323 (July 30, 2008) requires the Director of the Central Intelligence Agency to "[p]rotect intelligence and intelligence sources, methods, and activities from unauthorized disclosure in accordance with guidance from the [DNI][.]"

19. Nevertheless, because information withheld pursuant to exemption (b)(3) involves intelligence activities, sources, and methods, i.e., the same categories of information which are classified and exempt from release pursuant to (b)(1), I refer the Court to the paragraphs above for a description of the damage that reasonably could be expected to result from the disclosure of this information.

IV.  Conclusion

20. For all of the reasons stated above, eight of the documents in the FBI records responsive to Plaintiff's FOIA request contain classified information concerning intelligence activities, sources, and methods, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security of the United States.  Consequently, that information must be withheld under FOIA exemption (b)(1). Additionally, and separately, because the classified information implicates intelligence sources and methods, the information must also be withheld under FOIA exemption (b)(3).

***

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of June 2016.

Antoinette B. Shiner,
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency

11