UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA POITRAS,

            Plaintiff,

   v.

U.S. DEPARTMENT OF HOMELAND
SECURITY ET AL.,

            Defendants.

Case No. 1:15-cv-1091 (KBJ)

**EXHIBIT 3: Declaration of Jennifer L. Hudson (ODNI)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA POITRAS, | ) Case No.: 15-cv-01091-kbj |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF HOMELAND | ) |
| SECURITY, DEPARTMENT OF JUSTICE, | ) |
| OFFICE OF THE DIRECTOR OF | ) |
| NATIONAL INTELLIGENCE, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## (U) DECLARATION OF JENNIFER L. HUDSON, DIRECTOR, INFORMATION MANAGEMENT DIVISION, OFFICE OF THE CHIEF INFORMATION OFFICER, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE

Pursuant to 28 U.S.C. § 1746, I, Jennifer L. Hudson, declare the following to be true and correct:

1.      I am the Director of the Information Management Division ("IMD") for the Office of the Director of National Intelligence ("ODNI"). I have held this position since May, 2013. I joined ODNI in 2007 as the Chief of the Information Review and Release Branch, and was directly involved in the creation of ODNI's IMD. After a one-year assignment working in ODNI's Office of Legislative Affairs, I returned to IMD and assumed my current position as Director. Prior to my arrival in ODNI, I held information management positions at the Department of Defense, including at the Joint Personnel Recovery Agency, the Defense Prisoner of War/Missing Persons Office, and the Public Access Branch at the Defense Intelligence Agency. In my current position, I am the final decision-making authority for ODNI's IMD.

2.      IMD is responsible for facilitating the implementation of information management-related Executive orders, laws, regulations, and ODNI policy.  This function entails controlling information throughout its life cycle and includes the areas of records management, classification management and declassification, pre-publication reviews, and responding to requests under the Freedom of Information Act ("FOIA") and the Privacy Act.

3.      Under a written delegation of authority by the Director of National Intelligence ("DNI") pursuant to section 1.3(c) of Executive Order 13526, I hold original classification authority ("OCA") at the TOP SECRET level.  I am authorized, therefore, to conduct classification reviews and to make original classification and declassification decisions for intelligence information up to and including the TOP SECRET level.

4.      Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request.  I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

## I.  BACKGROUND RELATING TO ODNI AND NCTC

5.      During the course of my work with ODNI I have become familiar with the organization, functions, and missions of ODNI and its components, including the National Counterterrorism Center ("NCTC").  Where applicable I have also consulted with representatives of NCTC in order to ensure the accuracy of this declaration.

6.      Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1101(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending Sections 102 through 104 of Title 1 of the National Security Act of 1947).  Subject to the authority, direction, and control of the President, the DNI serves as the head of the Intelligence Community (IC) and as the principal adviser to the President and the National Security Council for intelligence matters related to the national security.  50 U.S.C. §§ 3023(b)(1), (2).

1

7.      The responsibilities and authorities of the DNI are set forth in the National Security

Act of 1947, as amended.  These responsibilities include ensuring that national intelligence is

provided to the President, the heads of the departments and agencies of the Executive Branch, the

Chairman of the Joint Chiefs of Staff and senior military commanders, and certain committees of

the Senate and House of Representatives.  50 U.S.C. § 3024(a)(1).  The DNI is charged with

establishing the objectives of, determining the requirements and priorities for, and managing and

directing the tasking, collection, analysis, production, and dissemination of national intelligence by

elements of the IC.  50 U.S.C. §§ 3024(f)(1)(A)(i) and (ii).

8.      In the course of executing these duties, the DNI is responsible for protecting

information that has been classified in the interest of the national defense or foreign policy, and

that has in fact been properly classified pursuant to Executive Order 13526 ("E.O. 13526").

9.      Section 1.1 of E.O. 13526 provides that information may be originally classified if:

1) an original classification authority is classifying the information; 2) the information is owned by,

produced by or for, or is under the control of the Government; 3) the information falls within one

or more of the categories of information listed in section 1.4 of the Executive Order; and 4) the

original classification authority determines that the unauthorized disclosure of the information

reasonably could be expected to result in damage to the national security, and the original

classification authority is able to identify or describe the damage.[1]

10.     In addition, the National Security Act of 1947, as amended, provides that the DNI

"shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. §

3024(i)(1).  Consistent with this responsibility, the DNI establishes and implements guidelines for

---

[1] Section 1.2(a) of E.O. 13526 provides that information shall be classified at one of three levels.  Information shall be classified at the TOP SECRET level if its unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to the national security.  Information shall be classified at the SECRET level if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security.  Information shall be classified at the CONFIDENTIAL level if its unauthorized disclosure reasonably could be expected to cause damage to the national security.

2

the IC for the classification of information under applicable law, executive orders, or other

presidential directives, and for access to and dissemination of intelligence.  50 U.S.C. §

3024(i)(2)(A), (B).

11.    The function of ODNI is to assist the DNI in carrying out his duties and

responsibilities under the Act and other applicable provisions of law, and to carry out such other

duties as may be prescribed by the President or by law.

12.    ODNI contains within it several component organizations, such as the National

Counterproliferation Center and the National Counterintelligence and Security Center, which assist

the DNI in carrying out his national intelligence mission.  One of these components is the NCTC.

13.    NCTC was established by Executive Order 13354 and became a part of ODNI upon

enactment of the Intelligence Reform and Terrorism Prevention Act of 2004.  50 U.S.C. § 3056.

Among its principal missions, NCTC serves as the primary organization within the U.S.

Government for the analysis and integration of all information related to terrorism and

counterterrorism, with the exception of intelligence pertaining exclusively to domestic terrorists

and domestic counterterrorism; ensures that appropriate agencies have access to and receive

intelligence needed to accomplish their missions; and serves as the central and shared knowledge

bank on known and suspected terrorists and international terror groups, as well as their goals,

strategies, capabilities, and networks of contact and support.  50 U.S.C. §3056(d).  NCTC has

broad authority to access all terrorism-related information that may be collected by other federal

agencies, both within and without the IC.  Executive Order No. 13388 (Oct. 25, 2005).

14.    Pursuant to its role as the "central and shared knowledge bank on known or

suspected terrorists and international terror groups," NCTC maintains the Terrorist Identities

Datamart Environment (TIDE) as the consolidated repository of information on international

terrorist identities.  TIDE supports the Government's various terrorist screening systems and the

IC's overall counterterrorism mission. TIDE includes, to the extent permitted by law, information the U.S. Government possesses related to the identities of individuals known or suspected to be engaging in conduct constituting terrorism, or in conduct that constitutes aid or preparation for terrorism or that is related to terrorist activities. However, TIDE does not contain purely domestic terrorism information. TIDE records thus include a great deal of intelligence information obtained through the collection, operations, and reporting of the IC, implicating the most sensitive sources and methods of intelligence gathering. Records in TIDE are classified up to the TOP SECRET/SCI level.

15.     A TIDE record is a collection of reporting from various sources, assembled to represent all information the U.S. Government possesses about an individual known or suspected to be an international terrorist. All information is sourced back to specific intelligence or law enforcement reports, whether from the Central Intelligence Agency, the National Security Agency, the Federal Bureau of Investigation (FBI)), the Department of Homeland Security, the Department of State, or another intelligence or law enforcement entity. These reports can be extremely sensitive, implicating classified collection methods and sources, including clandestine human sources and signals intelligence.

16.     In addition to the array of analytic and investigatory uses throughout the IC, the information in TIDE supports the U.S. Government's terrorist screening system by serving as the primary source of information for the Terrorist Screening Database (TSDB) or Terrorist Watchlist. Every day, NCTC analysts create and enhance TIDE records based on their review of information and reporting received. NCTC then exports, in real time, a sensitive but unclassified subset[2] of the data containing terrorist identifiers to the Terrorist Screening Center (TSC), a multi-agency center administered by the FBI, for use in the U.S. Government's unclassified consolidated terrorist

---

[2] Providing declassified information is necessary so that TSC can share the terrorist identifiers with downstream users (e.g., law enforcement) who do not have access to classified information.

4

watchlist.[3]  The TSDB is a critical tool for counterterrorism and homeland security, as it supports

the screening processes to detect and interdict known and suspected terrorists at home and abroad,

through implementation of tools such as the No Fly list, and the sharing of terrorism information

with those in the counterterrorism community responsible for protecting the homeland, such as the

Department of Homeland Security, the Department of State, the Department of the Treasury, and a

variety of law enforcement organizations, including the FBI.

## II. THE PROCESSING OF FOIA REQUESTS FOR PERSONAL INFORMATION IN GENERAL AND OF PLAINTIFF'S REQUEST IN PARTICULAR

17.  When a requester submits a request for information within ODNI files about herself,

IMD first assigns a file number to the request.  If accompanying the request is a signed document

authorizing release of the requested information under the Privacy Act,[4] IMD begins to process the

request.  As a standard practice IMD tasks the personnel, security, and human resources

components of ODNI to search for responsive unclassified records regarding that individual.  This

will sometimes turn up responsive records, particularly if the individual is a former employee of

the ODNI seeking information about herself.

18.  Whether ODNI will conduct a search of its classified holdings depends on the

nature of the request.  If the request relates to a category of ODNI classified records, the existence

of which is not a secret – national intelligence estimates, for example, or budget records[5] – IMD

will authorize a search of ODNI's classified holdings in an attempt to locate responsive documents.

However, where a FOIA requester seeks information about a particular individual, ODNI generally

---

[3] Purely domestic terrorist identity information is provided by the FBI directly to the TSDB.
[4] While individuals generally have a right of access to records about them maintained in government files, the right does not apply to information that is currently and properly classified pursuant to an Executive Order in accordance with Privacy Act exemption (k)(1).
[5] The Director of National Intelligence is required, pursuant to the National Security Act, to exercise budgetary authorities (50 U.S.C § 3024(c)) and to oversee the production of national intelligence estimates through the National Intelligence Council (50 U.S.C. § 3027), and so the mere fact that it possesses classified holdings on those subjects is not a classified fact.

will not search its classified holdings, because the system most likely to house responsive records

is TIDE, and the existence or nonexistence of a particular TIDE record is a classified fact.  Instead,

ODNI provides a "Glomar" response to the requester, informing her that no classified ODNI

records have been searched in response to the request, and that this response should not be taken as

an indication that records exist or do not exist with respect to that request.

     19.    By letter dated January 24, 2014, Plaintiff, through her attorney David L. Sobel,

submitted a request under the FOIA.  Plaintiff requested the following:

> {A}ll agency records concerning, naming, or relating to Ms. Poitras.  This request
> includes, but is not limited to, records maintained by the National
> Counterterrorism Center ("NCTC").  In the event that you determine that some
> responsive material might be exempt under FOIA, please indicate the specific
> exemption or exemptions upon which the agency relies.  Ms. Poitras agrees to
> bear legally assessable processing fees not to exceed $100.[6]

     20.    The case was assigned number DF 2014-00111 for tracking purposes.  IMD then

tasked the relevant ODNI components—DNI's Executive Secretariat, Personnel Security, and

Human Resources directorates—to conduct a search of personnel, human resources, or security

records pertaining to Ms. Poitras.  That search turned up no responsive records.  Further, based on

the parameters of the request, ODNI determined that the classified system most likely to hold

responsive information was TIDE.  Consistent with standard practice, ODNI did not task NCTC

with conducting a search of TIDE, because, as explained at length below, to provide any response

other than a Glomar response would cause damage to the national security.

     21.    On February 25, 2014, in a letter to Mr. Sobel, I explained that ODNI had

conducted a search of certain unclassified holdings and located no records relating to Ms. Poitras.

I also explained that, with regard to any classified records that might be responsive to the request:

> FOIA exemption (b)(1) and Privacy Act exemption (k)(1) protect information which is
> currently and properly classified in accordance with Executive Order 13526.  Exemption
> (b)(3) protects information that is specifically covered by statute.  In this case, the
> applicable statute is the National Security Act, which protects information pertaining to

---

[6] A true and correct copy of this letter is attached as Exhibit A.

6

intelligence sources and methods.  Accordingly, no classified ODNI records systems were searched and this response should not be taken as an indication that ODNI records do or do not exist with respect to your request.[7]

22.    On March 21, 2014, Ms. Poitras appealed IMD's determination.

23.    In response to the appeal, IMD re-tasked the DNI's Executive Secretariat, Personnel Security, and Human Resources directorates to search their holdings for responsive documents.  Once again, no responsive documents were located.

24.    On November 5, 2015, Mr. Sobel sent a letter to IMD clarifying that responsive records should include "all public source materials that are responsive to {the} pending request."

25.    On November 12, 2015, Mark W. Ewing, the authority for FOIA administrative appeals, confirmed that no responsive documents were located in ODNI's human resource, security, or personnel files, and that ODNI would neither confirm nor deny the existence or nonexistence of any responsive information in its classified holdings.  Mr. Ewing also stated that ODNI would search its unclassified holdings for public source materials in response to Mr. Sobel's November 5, 2015 letter.[8]

### III. ODNI's GLOMAR DETERMINATION

26.    Section 3.6(a) of Executive Order 13526 provides the authority for ODNI to issue a response neither confirming nor denying the existence of requested records, also known as a "Glomar" response, in response to requests for information submitted pursuant to the FOIA.  Specifically, Section 3.6(a) provides that:  "An agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors."

27.    To the extent Plaintiff's request seeks records relating to Plaintiff in ODNI's

---

[7] A true and correct copy of this letter is attached as Exhibit B.

[8] A true and correct copy of this letter is attached as Exhibit C. ODNI is working diligently to process the records generated by this supplemental search, which are voluminous and include a substantial amount of copyright-protected material.

classified holdings, the mere existence or non-existence of records responsive to that aspect of the request is a protectable fact under exemptions (b)(1) and (b)(3). Acknowledging the existence or non-existence of any such records would reveal a classified fact—whether TIDE contains intelligence information relating to Plaintiff or her activities.

28. As a matter of national security, the United States can neither confirm nor deny the existence or nonexistence of records concerning intelligence activities, sources, methods, relationships, or targets. If the United States confirms that it is conducting a particular intelligence activity, or that it has gathered information on a particular person, such activities would be compromised, and foreign adversaries and terrorist organizations could use that information to avoid detection. Even confirming that a certain intelligence activity or relationship does not exist, either in general or with respect to specific targets or channels, would harm national security because alerting our adversaries to channels or individuals that are not under surveillance could likewise help them avoid detection.

29. In a typical scenario, a FOIA requester submits a request to ODNI for information on a particular subject, and ODNI conducts a search of non-exempt records and advises where responsive records have been located. If records are located, the agency provides the non-exempt records or reasonably segregable non-exempt portions of those records. In this typical circumstance, ODNI's response---either to provide or not to provide the requesters sought— actually confirms the existence or nonexistence of these records. Typically, a confirmation of this nature would reveal neither classified information nor intelligence sources and methods because, as explained, the mere fact that ODNI possesses records on a particular subject (e.g., national intelligence estimates or budget records) is often not a classified fact.

30. This is not the case with a request for personal information that may or may not be located within TIDE. In such a case, confirming the existence or nonexistence of responsive

records within that classified database would reveal a classified fact. If ODNI were to confirm the existence of documents that would reveal whether ODNI has interest in a particular individual or activity, the mere acknowledgment of responsive records – even if those records were withheld in full – would reveal a classified fact, namely, ODNI's interest in the individual or activity. Conversely, if ODNI were to confirm that no responsive records existed, that fact would itself be revealing, because the absence of records would tend to reveal that ODNI does not have an interest in the particular individual or activity. In these circumstances, ODNI asserts a Glomar response because the existence or nonexistence of ODNI records responsive to the request is a currently and properly classified fact, the disclosure of which could be expected to cause damage to the national security.

31.    As noted, TIDE contains information derived from intelligence reports on the identities of known or suspected international terrorists. It is an important tool in the government's watchlisting and terrorist identity screening programs, and it remains an effective tool in large part because its contents are not disclosed outside intelligence and law enforcement channels.

32.    ODNI can make no response to a request for TIDE records relating to a particular individual without compromising intelligence-gathering and national security interests. To confirm that an individual has (or once had) a TIDE record database is necessarily to confirm that he or she is (or once was) the subject of counterterrorism intelligence-gathering by the Government. Once so alerted, that individual would likely take steps to avoid further surveillance of his or her terrorist activities. Similarly, terrorist groups with whom the confirmed subject of a TIDE record has associated could use that information to undermine the Government's intelligence-gathering efforts. On the other hand, to confirm that a particular individual is not now, or never has been, the subject of a TIDE record would also be detrimental to the national security, because it would reassure individuals or groups intent on committing acts of terrorism

9

that they can carry out their plans without fear of surveillance.

33.    In short, to be credible and effective, ODNI must assert a Glomar response consistently in all cases where the existence or nonexistence of responsive records is itself a classified fact, including in those cases where ODNI does not possess records responsive to a particular request.  If ODNI were to invoke a Glomar response only when it actually possessed responsive records, the Glomar response would be interpreted as an admission that the responsive records exist, thereby revealing the very information that ODNI is obligated to protect.

34.    After careful review, I have determined that if ODNI were to confirm the existence of records responsive to Plaintiff's request, whether in TIDE or another classified system of records, such confirmation would at the very least indicate that ODNI had an intelligence interest in Plaintiff.  On the other hand, if ODNI were to respond by admitting that it did not possess any responsive records, it would indicate that ODNI had no intelligence interest in Plaintiff.  Either confirmation would reveal sensitive information about intelligence activities and intelligence sources and methods that are protected from disclosure by statute and Executive Order 13526.  Accordingly, a Glomar response to Plaintiff's request is appropriate because the existence or nonexistence of ODNI records responsive to Plaintiff's request is a classified fact, the disclosure of which could be expected to cause damage to the national security. This classified fact is therefore exempt from disclosure under exemptions (b)(1) and (b)(3).

IV. **CONCLUSION**

35.  In this case, the fact of the existence or nonexistence of records responsive to Plaintiff's request is itself a properly classified fact.  Requiring the disclosure of information from classified ODNI holdings would cause damage to the national security and would result in the unauthorized disclosure of intelligence sources and methods protected by the National Security Act of 1947, as amended.  Accordingly, I have determined the only appropriate response is for ODNI to neither

10

confirm nor deny the existence of such a record under FOIA exemptions (b)(1) and (b)(3), as well as (k)(1) of the Privacy Act.

     I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

     Executed this 6th day of June, 2016

Jennifer L. Hudson
Director, Information Management Division
Office of the Director of National Intelligence

11

**EXHIBIT A**

DR 2014-00111

# David L. Sobel
### Attorney-at-Law

Suite 410
1818 N Street, N.W.
Washington, DC 20036

(202) 246-6180 (voice)
(202) 237-7727 (fax)
sobel@att.net (e-mail)

January 24, 2014

**BY CERTIFIED MAIL – 70131710000104259892**

Jennifer L. Hudson
Chief, Information and Data Management Group
Office of the Director of National Intelligence
Washington, D.C. 20511

### Re: Freedom of Information Act Request

Dear Ms. Hudson:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of my client, Laura Poitras. A "privacy waiver" form executed by Ms. Poitras and authorizing disclosure of responsive records to me is attached to this request.

I request disclosure of all agency records concerning, naming, or relating to Ms. Poitras. This request includes, but is not limited to, records maintained by the National Counterterrorism Center ("NCTC"). In the event that you determine that some responsive matewrial might be exempt from disclosure under FOIA, please indicate the specific exemption or exemptions upon which the agency relies. Ms. Poitras agrees to incur legally assessable processing fees not to exceed $100.

As the FOIA requires, I will anticipate your response to this request within twenty working days. Please feel free to contact me at the e-mail address or telephone number indicated above if you wish to discuss this request.

Thank you for your prompt attention.

Rcd
JAN 30 2014

Sincerely,

David L. Sobel

encl.

Exhibit A

# EXHIBIT B

Office of the Director of National Intelligence
Washington, DC 20511


Mr. David L. Sobel Attorney-at-Law
Suite 410
1818 N. Street, N.W.                                    **FEB 2 5 2014**
Washington, DC 20036

Reference: ODNI Case #DF-2014-00111

Dear Mr. Sobel:

      This is in response to your letter dated 24 January 2014, received in the
Information Management Division of the Office of the Director of National Intelligence
(ODNI) on 30 January 2014. Pursuant to the Freedom of Information Act (FOIA), you
are requesting on behalf of your client Laura Poitras, *"... any disclosure of all agency
records concerning, naming, or relating to Ms. Laura Poitras. This request includes,
but is not limited to, records maintained by the National Counterterrorism Center
("NCTC")."*

      Your request was processed in accordance with the FOIA 5 U.S.C. § 552, as
amended.  ODNI conducted a search for unclassified records responsive to your request
and no records were located.

      In accordance with Section 3.6(a) of Executive Order 13526, the ODNI can
neither confirm nor deny the existence or nonexistence in its files of any information
responsive to your request.  The fact of existence or nonexistence of requested records is
currently and properly classified and is intelligence sources and methods information that
is protected from disclosure by the CIA Act of 1949, as amended, and the National
Security Act of 1947, as amended.  Therefore your request is denied pursuant FOIA
exemptions (b)(1) and (b)(3).

      You have the right to appeal this determination within 45 days of the date of this
letter to:

               Office of the Director of National Intelligence
               Information Management Office
               Washington, DC  20511

Exhibit B

Should you decide to do this, please explain the basis of your appeal.  If you have any questions, please call the Requester Service Center at (703) 874-8500.

Sincerely,

Jennifer Hudson
Director, Information Management Division

**EXHIBIT C**

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
CHIEF MANAGEMENT OFFICER
WASHINGTON, DC 20511

**NOV 12 2015**

Mr. David L. Sobel
Electronic Frontier Foundation
5335 Wisconsin Avenue, N.W.
Suite 640
Washington, DC  20015

Reference: DF-2014-00111 Appeal

Dear Mr. Sobel:

This is in response to your 21 March 2014 letter wherein you appealed our 25 February 2014 determination in response to your 24 January 2014 request for disclosure of all agency records concerning, naming, or relating to Ms. Laura Poitras. This request includes, but is not limited to, records maintained by the National Counterterrorism Center.

Your appeal was processed in accordance with the FOIA, 5 U.S.C § 552, as amended, and the Privacy Act, 5 U.S.C. § 552a. The Office of the Director of National Intelligence (ODNI) conducted an additional search for potentially responsive unclassified records, including human resource, security, and personnel files, and no records were located.

Regarding classified holdings, in accordance with Section 3.6(a) of Executive Order 13526, the ODNI can neither confirm nor deny the existence or nonexistence in its files of any information responsive to your request. The fact of existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by the National Security Act of 1947, as amended. Therefore your request is denied pursuant FOIA exemptions (b)(1) and (k)(1). By this statement, the ODNI neither confirms nor denies that such records may or may not exist. After careful consideration of your appeal, we have determined that the decision of the Director, Information Management Division should be affirmed.

In accordance with the provisions of the FOIA, you have the right to seek judicial review of this determination in a United States district court. Alternatively, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and federal agencies. Using services offered by OGIS does not affect your right to pursue litigation. For more information, including how to contact OGIS, please consult this website, http://ogis/archives.gov.

In your 5 November 2015 letter sent to ODNI's Information Management Division, you indicate that your request includes "all public source materials that are responsive to [your] pending request." Based on that clarification, ODNI will search its unclassified files and process any public records that are responsive to the request. We agree that any challenges you make in

Exhibit C

Mr. David L. Sobel

response to our review will be adjudicated as part of the claims you have raised in <u>Poitras v.</u>
<u>Department of Homeland Security</u>, 15-cv-01001, the FOIA litigation you have filed in the U.S.
District Court for the District of Columbia.

Sincerely,

Mark W. Ewing

Enclosure:
Appeal Request

2