**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LAURA POITRAS,** | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-1091 (KBJ) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.,** | |
| Defendants. | |

**EXHIBIT 4: Declaration of Sabrina Burroughs (CBP)**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

LAURA POITRAS,

        Plaintiff,

  v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
ET AL.,

        Defendants.

Case No. 1:15-cv-1091 (KBJ)

## DECLARATION OF SABRINA BURROUGHS

I, Sabrina Burroughs, declare as follows:

    1.    I am the Director of the Freedom of Information Act (FOIA) Division, Privacy and Diversity Office, Office of the Commissioner, at U.S. Customs and Border Protection ("CBP"). I have been Director of the FOIA Division in Washington, D.C. since May 20, 2013. As Director of the FOIA Division, I am responsible for supervising the processing of FOIA requests submitted to CBP, and I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction, through subordinate supervisors, to a group of FOIA specialists in processing FOIA requests; assist with FOIA / Privacy Act (PA) litigation matters; and am personally familiar with the processing of FOIA/PA responses including by, at times, directly reviewing for adequacy, accuracy, and adherence to federal laws and regulations.

    2.    The statements in this Declaration are based upon my personal knowledge, upon information and documents made available to me in the course of the performance of my duties, as well as my experience and knowledge of the internal operations of this office and agency.

3.     The purpose of this Declaration is to explain the actions CBP has taken since receiving Plaintiff's FOIA request dated January 24, 2014 (the "Request"), and to explain the procedures used in reviewing and processing records in response to the Request.  In accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), this Declaration, together with the corresponding <u>Vaughn</u> index, appropriately identifies information that has been withheld, the statutory exemption(s) claimed, and the justification for asserting the exemptions.

## A. **Plaintiff's Request and CBP's Search for Responsive Records.**

4.     By letter dated January 24, 2014, Plaintiff submitted the Request to CBP seeking disclosure of "all agency records concerning, naming, or relating to [Plaintiff] Ms. Poitras."  A copy of the Request is attached as **Exhibit A**.

5.     Upon receiving the Request, CBP FOIA staff carefully evaluated the Request and considered which offices, databases, and personnel were likely to hold responsive information. CBP personnel determined that responsive records within CBP's control were likely to be found within two CBP systems—TECS (including its subsystems) and the Automated Targeting System (ATS) (specifically, its passenger module, ATS – Passenger or ATS-P)—and performed searches on the relevant databases within those systems using Plaintiff's name and date of birth. CBP personnel further determined that responsive records, both paper and electronic, were likely to be found within CBP's New York field office.  CBP searched paper files and performed an electronic search on email records using Plaintiff's name and other relevant search terms.  These searches identified responsive records that were subsequently provided to Plaintiff consistent with applicable laws and policies, as detailed below.

**B. Applicable FOIA Exemptions.**

6.      CBP released records to Plaintiff through two responses, dated November 12,

2015 and February 17, 2016.  The cover letters for these responses are attached as **Exhibits B**

and **C**.

7.      In each response, CBP provided Plaintiff with a description of all FOIA

exemptions, including applicable exemptions asserted by CBP, as well as supplemental

information regarding appeals and generally applicable agency policies relevant to all FOIA

responses.  With respect to the records released to Plaintiff, CBP has redacted information

pursuant to the exemptions found in 5 U.S.C. §§ 552(b)(4), (b)(5), (b)(6), (b)(7)(C), and

(b)(7)(E).

8.      Section 552(b)(4) of Title 5 of the U.S. Code exempts from disclosure trade

secrets and commercial or financial information which could harm the competitive posture or

business interests of a company.

9.      Section 552(b)(5) of Title 5 of the U.S. Code protects deliberative or policy-

making processes within an agency by exempting from disclosure opinion, conclusions, and

recommendations included within inter-agency or intra-agency memoranda or letters, including

communications covered by the attorney-client privilege.

10.      Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel

and medical files, and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy.  This exemption requires balancing the public's right

to disclosure against an individual's right of privacy.

11.      Section 552(b)(7)(C) of Title 5 of the U.S. Code exempts from disclosure law

enforcement records or information that "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." This exemption extends to CBP as a law enforcement agency, and is designed to protect, among other things, law enforcement personnel from harassment and annoyance in the conduct of their official duties and in their private lives, which could conceivably result from the public disclosure of their identity. The exemption applies where the privacy interest in the identity of an individual outweighs any public interest in disclosure of that information.

12.     Section 552(b)(7)(E) of Title 5 of the U.S. Code exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

13.     In each response, CBP also included supplemental information regarding appeals and generally applicable agency policies relevant to all FOIA responses. For example, Plaintiff was advised that to the extent the Request could be construed as seeking records or information reflecting whether a particular person is or has ever been listed in the government terrorist watchlist, CBP can neither confirm nor deny the existence or non-existence of certain records which would tend to indicate whether a particular person is or ever was listed on the terrorist watchlist, in accordance with exemptions (b)(7)(E). Exemption (b)(7)(E) would apply to any such records, if they existed, given their nexus to the terrorist watch-list, because information related to any such status would disclose law enforcement techniques and procedures which are not publicly known or disclosed.

14.     Below is an explanation of the records pulled from the relevant CBP systems, and how the exemptions identified have been applied to those records.

## C. **TECS Records.**

15.     TECS is an overarching law enforcement information collection, analysis, and

sharing environment, comprised of several modules and subsystems designed to collect,

maintain, and screen data as well as conduct analysis, screening and information sharing to

facilitate the law enforcement and antiterrorism mission of CBP.  CBP is responsible for

collecting and reviewing border crossing information, both inbound and outbound, related to

international travel.  Information collected by CBP related to the inbound and outbound travel of

individuals to and from the United States, including the inspection of travelers seeking entry to

the United States, is maintained in TECS (including its subsystems).[1]

16.     For example, CBP's Advanced Passenger Information System (APIS), which

operates within the TECS system architecture, enables CBP to collect and maintain certain

biographical information on passengers and crew members who arrive in, depart from, or transit

through the United States on covered air or vessel carriers.[2]  Similarly, the Border Crossing

Information system (BCI), another TECS subsystem, allows CBP to collect certain biographic

and biometric information on individuals who enter and exit the United States, including the time

and location of the border crossing.[3]

17.     As a whole, TECS is a key tool of CBP's law enforcement and antiterrorism

mission.  TECS is used by CBP to track individuals who have violated or are suspected of

violating laws or regulations enforced or administered by CBP, assists officers in determining

---

[1] *See* Privacy Act of 1974; U.S. Customs and Border Protection – TECS System of Records Notice, 73 Fed. Reg. 77778, 77779 (December 19, 2008) (describing the TECS system and its subsystems, which are subject to separate SORNs).

[2] *See* Privacy Act of 1974; U.S. Customs and Border Protection – Advanced Passenger Information System Systems of Records Notice, 80 Fed. Reg. 13407 (March 13, 2015).

[3] *See* Privacy Act of 1974; U.S. Customs and Border Protection-007 – Border Crossing Information System of Records, 81 Fed. Reg. 404 (January 25, 2016).

admissibility of persons arriving in the United States, and aids officers in identifying security threats related to international travelers.

18.      CBP's FOIA Division searched TECS and its subsystems for all responsive records through June 16, 2015. On November 12, 2015, CBP's FOIA Division released 492 pages of records from TECS to Plaintiff, labeled CBP000001 through CBP000492, as part of an initial production.

## Exemptions Applicable to TECS Records.

19.      CBP redacted certain information in the TECS records pursuant to the FOIA exemptions found in 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E).

20.      Exemptions (b)(6) and (b)(7)(C) have been applied to government fax and phone numbers, names of government employees, terminal identification numbers of the TECS users who retrieved the TECS records, personally identifiable information and other identifying details of third party individuals, as well as identity and other personal documents of third party individuals that would identify those individuals if released. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Release of this information would constitute a clearly unwarranted invasion of privacy and would not shed light on the actions of CBP. As such, there is no public interest in the disclosure of this information.

21.     Exemption (b)(7)(E) has been applied to protect the computer screen transaction code, computer program transaction code, computer function codes (i.e., "PF codes" or "navigation keys") and information that would reveal the results of specific law enforcement database queries (the "RSLT" column).  Release of this information would enable an individual knowledgeable in computer mainframes and systems to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and interfere with enforcement proceedings.

22.     The computer codes at issue facilitate access to and navigation through TECS. Individuals who knew the meaning of the codes would have sufficient law enforcement information, including how CBP conducts its law enforcement operation, to enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and take other countermeasures, thereby corrupting the integrity of ongoing investigations. Public dissemination of these access codes would permit unauthorized users to manipulate records to avoid recognition, instant detection and apprehension.  It would also arm unauthorized users with the ability to corrupt the integrity of data contained therein through the alteration/manipulation of such data.  In addition, if the system were to be hacked, it would permit the intruder to potentially manipulate the way certain records are created and maintained, which could put at risk ongoing investigations and border security operations.

23.     Protecting and maintaining the integrity of TECS is imperative in assisting CBP in its primary mission to prevent terrorists, their weapons, and other dangerous items from entering the United States.  TECS is CBP's principal law enforcement and anti-terrorism database system, and it is one of the primary tools that CBP law enforcement officers, and other personnel with authorized access, regularly use, in order to effectively and efficiently enforce all

applicable laws, particularly as it relates to travelers and trade crossing the border into or out of

the United States.  As a fundamental law enforcement tool, there is a great need to defend TECS

against any threatened or real risk of threat or compromise, not only to ensure the continuance of

CBP's mission, but also to assist the other law enforcement agencies which TECS may support,

and to protect and facilitate legitimate trade and travel.

24.     In addition to computer and system codes, exemption (b)(7)(E) has also been

applied to information explaining law enforcement techniques and procedures.  Much of this

information may be found in narrative portions of the TECS records, which describe law

enforcement techniques and procedures utilized by CBP law enforcement officers, but not

disclosed to Plaintiff or to the general public.  Disclosure of law enforcement techniques and

procedures would be debilitating and detrimental to both CBP and the law enforcement

community, and it would enable individuals to alter their patterns of conduct, adopt new methods

of operation, relocate, change associations, and effectuate other countermeasures, thereby

corrupting the integrity of ongoing investigations.

**D. ATS Records.**

25.     ATS is a decision-support tool that compares traveler, cargo, and conveyance

information against law enforcement, intelligence, and other enforcement data using risk-based

targeting scenarios and assessments.  ATS supports all CBP mission areas, and the data and

rules specific to those areas.[4]  ATS-P, a module of ATS, maintains the official records for

Passenger Name Records (PNR) collected by CBP from airlines or their travel reservation

systems.  PNR records include data regarding persons traveling to and from the United States on

commercial air carriers, to the extent collected by the carrier.

---

[4] *See* Privacy Act of 1974; U.S. Customs and Border Protection-006 – Automated Targeting System, System of Records, 77 Fed. Reg. 30297 (May 22, 2012).

26.     CBP's FOIA Division searched ATS for responsive records by running a query

with Plaintiff's name and date of birth.  On November 12, 2015, as part of its initial production,

CBP's FOIA Division released 220 pages of partially redacted PNR records to Plaintiff, labeled

CBP000493 through CBP000712.

**Exemptions Applicable to ATS Records.**

27.     CBP redacted certain information in the ATS records pursuant to the FOIA

exemptions found in 5 U.S.C. §§ 552(b)(4), (b)(6), and (b)(7)(C).

28.     Exemption (b)(4) has been applied to confidential business information of air

carriers.  Disclosure of such information could cause substantial competitive harm to the airlines

that provide the information, and may impair the Government's relations with air carriers and the

ability to collect such information in the future.

29.     Exemptions (b)(6) and (b)(7)(C) have been applied to personally identifiable

information and other identifying details of third party individuals, as well as identity and other

personal documents of third party individuals that would identify those individuals if released.

This information includes third-party travelers and airline employees.

**E.  Records from CBP's New York Field Office.**

30.     During processing of the Request, CBP FOIA became aware that additional

responsive records, not captured by the previously described searches, were reasonably likely to

exist in files located within CBP's New York field office.  These records, which relate to an

encounter between Plaintiff and CBP on August 1, 2010, at JFK International Airport, were

reasonably likely to include paper and electronic correspondence between CBP and Plaintiff,

correspondence internal to CBP, in addition to other documents.

31.     Personnel within CBP's New York field office were tasked with searching paper files related to Plaintiff and performing an electronic search using search criteria reasonably tailored to identify all records that may be responsive to the Request. Individuals within the New York field office reviewed paper files known or reasonably believed to include records relating to Plaintiff or the August 1, 2010 encounter. The electronic search included several custodians deemed reasonably likely to have information related to Plaintiff or the August 1, 2010 encounter, used the timeframe of August 1, 2010 through October 31, 2010 so as to capture all known or reasonably likely to exist records concerning Plaintiff or the August 1, 2010 encounter, and utilized search terms that included "Poitras," "Laura Poitras," and the name and email address of Plaintiff's legal counsel related to the August 1, 2010 encounter, "David B. Smallman" and "dbs@smallmanlaw.com." On February 17, 2016, CBP's FOIA Division released 223 pages of partially redacted records to Plaintiff, labeled CBP000713 through CBP000935.

**Exemptions Applicable to the New York Field Office Records.**

32.     CBP redacted certain information in the New York field office records pursuant to the FOIA exemptions found in 5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

33.     **CBP000713 through 934.** Records labeled CBP000713 through CBP000934 consist mostly of communications between CBP personnel and Plaintiff's legal counsel, which were released in full. But these records also include some communications among CBP attorneys, and between CBP attorneys and other employees or personnel of CBP. Exemption (b)(5) has been applied to communications of CBP attorneys who were acting in their capacity as legal counsel for CBP, where the communications were for the purpose of rendering legal services, as such communications are privileged. The communications also reflect deliberative

processes and conclusions, including with respect to CBP inspections, processes, and legal authorities, and have been withheld under exemption (b)(5) for that reason as well.

34. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. Government employees, including CBP law enforcement officers and other personnel, have a protectable privacy interest in their identities that would be threatened by disclosure. Release of this information would constitute a clearly unwarranted invasion of privacy and would not shed light on the actions of CBP. As such, there is no public interest in the disclosure of this information.

35. **CBP000935.** CBP released CBP000935, a Certification of Data Destruction, with redactions made under exemptions (b)(6), (b)(7)(C), and (b)(7)(E). For purposes of these records, CBP has asserted these exemptions on behalf of both CBP and U.S. Immigration and Customs Enforcement (ICE), per ICE's request.

36. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees and other personally identifiable information that would identify those individuals if released. Government employees, including CBP and ICE law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. Release of this information would constitute a clearly unwarranted invasion of privacy and would not shed light on the actions of CBP or ICE. As such, there is no public interest in the disclosure of this information.

37. Exemption (b)(7)(E) has been applied to information explaining law enforcement techniques and procedures utilized by CBP and ICE that are not generally known or publicly

disclosed, including information explaining methods regarding data destruction. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thereby corrupting the integrity of ongoing investigations.

## Records Withheld in Full

38.     In addition to the records identified above, CBP withheld in full 3,182 pages of records collected from CBP's New York field office under exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). The withheld records are divided into 26 separate documents, and are identified in the enclosed *Vaughn* index.

39.     **Documents 1 through 20.** As explained below, the majority of these records, and specifically those identified on the *Vaughn* index as documents 1 through 20, consist of internal emails within CBP from several different custodians. Several of these documents include a compilation of multiple email strings collected from a particular custodian and combined into a single PDF. In other words, while these records have been consolidated into 20 "documents" for purposes of this Declaration and corresponding *Vaughn* index, several of the PDFs consist of multiple email chains collected from a particular custodian consolidated into a single electronic file. The number of pages within each document is noted on the *Vaughn* index.

40.     These documents, however, do not consist entirely of unique emails, but instead contain many duplicates. Duplicate email files were captured for three reasons. First, since multiple electronic searches, with different search terms, were performed for each custodian, email files were frequently captured from the same custodian multiple times (where the same file responded to multiple search terms). Second, the same email files were frequently captured from

multiple custodians, to the extent multiple custodians were each recipients of the same email. And third, emails were captured not only when first transmitted, but also each time the email was replied to or forwarded, as each reply or forward creates a new email chain that is separately captured.

41.     Because documents 1 through 20 consist of communications among CBP legal counsel, and between CBP legal counsel and agency employees and other personnel, the documents have been withheld in full under exemption (b)(5), as they consist of attorney-client privileged communications. In the context of these communications, CBP attorneys were acting within their capacity as legal counsel for CBP, and the communications were for the purpose of rendering legal services. As such, the communications are privileged. The communications also reflect deliberative processes and conclusions, including with respect to CBP inspections, processes, and legal authorities, and have been withheld under exemption (b)(5) for that reason as well.

42.     As a note, documents 1 through 20 do have imbedded within them email communications with Plaintiff's legal counsel that, standing alone, are not privileged, but which were subsequently forwarded to form the basis of privileged communications. However, copies of all such emails were released to Plaintiff and may be found within CBP000713-CBP000934. As such, CBP has produced to Plaintiff at least one copy of all non-privileged email communications, including emails between CBP personnel and Plaintiff's counsel, which CBP identified within its records.

43.     While documents 1 through 20 have been withheld in full under exemption (b)(5), certain portions of those records are also subject to exemptions (b)(6), (b)(7)(C), and (b)(7)(E). Exemptions (b)(6) and (b)(7)(C) have been applied to relevant portions of these documents to

names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. Government employees, including CBP law enforcement officers and other personnel, have a protectable privacy interest in their identities that would be threatened by disclosure. Release of this information would constitute a clearly unwarranted invasion of privacy and would not shed light on the actions of CBP. As such, there is no public interest in the disclosure of this information.

44.    Exemption (b)(7)(E) has been applied to information explaining law enforcement techniques and procedures, including email communications with and between CBP personnel describing techniques and processes used during CBP inspections and other law enforcement functions. Such emails include those sent from and to CBP attorneys, and emails transmitted between non-attorney CBP personnel and subsequently forwarded to CBP attorneys. Such information is not generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thereby corrupting the integrity of ongoing investigations.

45.    **Document 21.** Document 21 consists of a screenshot of a CBP law enforcement system and has been withheld in full under exemption (b)(7)(E). The information in document 21 includes computer codes and other information that would reveal the techniques, procedures, and results of specific law enforcement database queries, and such information is not generally known or publicly disclosed. Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would

enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thereby corrupting the integrity of ongoing investigations.

46.     **Document 22.**  Document 22 is an internal CBP report, and has been withheld in full under exemptions (b)(5) and (b)(7)(E).   Exemption (b)(5) was applied because the report was attached and transmitted as part of an attorney-client communication between CBP attorneys and other CBP personnel.

47.     Exemption (b)(7)(E) was applied because document 22 consists entirely of law enforcement techniques and procedures not generally known or publicly disclosed.  Disclosure of law enforcement techniques and procedures would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thereby corrupting the integrity of ongoing investigations.

48.     Exemptions (b)(6) and (b)(7)(C) have also been applied to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.  Government employees, including CBP law enforcement officers and other personnel, have a protectable privacy interest in their identities that would be threatened by disclosure.  Release of this information would constitute a clearly unwarranted invasion of privacy and would not shed light on the actions of CBP.  As such, there is no public interest in the disclosure of this information.

49.     **Documents 23 through 26.**  Documents 23 through 26 are documents and memoranda prepared by and internal to CBP legal counsel related to the 2010 encounter between

Plaintiff and CBP, and which have been withheld in full under exemption (b)(5) and, for

Documents 23, 24, and 25, exemption (b)(7)(E). Exemption (b)(5) was applied because the

documents are protected by the attorney-client privilege and the attorney work-product doctrine,

and because they reflect deliberative processes and conclusions, including with respect to CBP

inspections, processes, and legal authorities.

50.     Exemption (b)(7) has been applied in full to Documents 23, 24, and 25, and in

part to Document 26, because the documents consist of law enforcement techniques and

procedures, including narrative discussions of such techniques and procedures, not generally

known or publicly disclosed.  Disclosure of law enforcement techniques and procedures would

be debilitating and detrimental to both CBP and the law enforcement community, and it would

enable individuals to alter their patterns of conduct, adopt new methods of operation, relocate,

change associations, and effectuate other countermeasures, thereby corrupting the integrity of

ongoing investigations.

51.     Exemptions (b)(6) and (b)(7)(C) have also been applied to names of government

employees, personally identifiable information and other identifying details of third party

individuals, and identity and other personal documents of third party individuals that would

identify those individuals if released.  Government employees, including CBP law enforcement

officers and other personnel, have a protectable privacy interest in their identities that would be

threatened by disclosure.  Release of this information would constitute a clearly unwarranted

invasion of privacy and would not shed light on the actions of CBP.  As such, there is no public

interest in the disclosure of this information.

**F.  Non-Segregability of Exempted Information.**

52.     After careful review, I have determined that all information withheld from the

records provided to Plaintiff is exempt from disclosure pursuant to the FOIA exemptions

identified, or is not reasonably segregable because it is so intertwined with protected material

that segregation is not possible or its release would reveal the underlying protected material.  I

have conducted a line-by-line review of the records determined to be responsive, to identify

information exempt from disclosure or for which a discretionary waiver of exemption could

apply, and I am satisfied that all reasonably segregable portions of the relevant record have been

released to the Plaintiff in this matter.  I have determined that any further release of the exempted

materials could reasonably lead to the disclosure of protected information, including techniques

or procedures for law enforcement investigations, personal information of individuals other than

Plaintiff, or other items that are properly protected by the exemptions asserted.


I declare under a penalty of perjury that the information provided is true and correct to the

best of my information, knowledge, and belief.

Signed this _3/_ day of May 2016.

Sabrina Burroughs
Director, FOIA Division
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security

# EXHIBIT A

**David L. Sobel**
Attorney-at-Law

RECEIVED

Suite 410
1818 N Street, N.W.   2014 JAN 30  PM 1: 34
Washington, DC 20036

OFFICE OF DIVERSITY
AND CIVIL RIGHTS

(202) 246-6180  (voice)
(202) 237-7727  (fax)
sobel@att.net (e-mail)

January 24, 2014

**BY CERTIFIED MAIL -- 70131710000104259922**

U. S. Customs & Border Protection (CBP)
FOIA Officer
90 K Street NE, 9th Floor
Washington, D.C. 20229-1181

**Re: Freedom of Information Act Request**

Dear Sir or Madam:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552, and is submitted on behalf of my client, Laura Poitras.  A "privacy waiver" form
executed by Ms. Poitras and authorizing disclosure of responsive records to me is
attached to this request.  This request includes, but is not limited to, redacted material
CBP provided to Ms. Poitras in response to request 2008F2660.

I request disclosure of all agency records concerning, naming, or relating to Ms. Poitras.
In the event that you determine that some responsive matewrial might be exempt from
disclosure under FOIA, please indicate the specific exemption or exemptions upon which
the agency relies.  Ms. Poitras agrees to incur legally assessable processing fees not to
exceed $100.

As the FOIA requires, I will anticipate your response to this request within twenty
working days.  Please feel free to contact me at the e-mail address or telephone number
indicated above if you wish to discuss this request.

Thank you for your prompt attention.

Sincerely,

David L. Sobel

encl.

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## PRIVACY WAIVER AUTHORIZING DISCLOSURE TO A THIRD PARTY

Use this form to authorize the U.S. Department of Homeland Security ("DHS") to disclose information and/or records about you to a third party. Taking this action is entirely voluntary; you are under no obligation to consent to the release of your information to any third party. **Authority:** Privacy Act of 1974 (5 U.S.C. § 552a); DHS Privacy Act Regulations (6 C.F.R. § 5.21(d)).

| STEP 1 | Provide information about yourself and identify the third party that you intend to receive your information and/or records (the "Recipient"). |
| --- | --- |

| | |
| --- | --- |
| Your Full Name: Laura Poitras | Your Alien Registration Number (if applicable): |
| Your Current Address: 135 Hudson St.,3F, NYC 10013 | Date of Birth:  2/2/64 |
| | Country of Birth:  US |
| Recipient's Name: David L. Sobel, Esq. | Recipient's Phone Number: 202-246-6180 |
| Recipient's Mailing Address (required if requesting disclosure by mail): 1818 N Street, NW, Suite 410, Washington, DC 20036 | |
| Recipient's Organization, if the waiver will apply to it (e.g. news media, congressional office, law firm): | |

| STEP 2 | Specify what information and/or records DHS is authorized to share with the Recipient. |
| --- | --- |

☐ Identifying Data (Date of Birth, etc.)       ☐ Family Data                         ☐ Travel/Border Crossing
☐ Immigration Case                            ☐ Detention Information              ☐ Medical Information
☐ Alien File (A-File)                         ☐ Criminal History                  ☐ Criminal Case

**AND/OR**

☐ The following information/records (describe): _____

**OR**

☒ ALL information and/or Records Requested by the Recipient

**For Aliens Only:** If you have applied for or received any of the immigration benefits below, you are legally entitled to confidentiality. (See reverse for more information.)  If you want DHS to share information about these benefits with the Recipient, you must waive your confidentiality rights by checking the appropriate boxes below.  Waiver of these rights is not required; however, if you do not waive these rights DHS may be unable to disclose to the Recipient some or all of the information you identified above.

**I waive my right to confidentiality and authorize disclosure to the Recipient regarding these immigration benefits:**

☐ Temporary Protected Status (TPS)          ☐ T Visa (for trafficking victims)        ☐ U Visa (for victims of certain crimes)
☐ Seasonal Agricultural Worker              ☐ Battered Spouse/Child                  ☐ Violence Against Women Act
☐ Asylum                                        Seeking Hardship Waiver                    (VAWA)
   (confidentiality applies even if petition is denied)

| STEP 3 | Sign the statement below authorizing DHS to disclose your information and/or records to the Recipient. |
| --- | --- |

I certify under penalty of perjury that the information above is accurate. I authorize DHS, its components, offices, employees, contractors, agents, and assignees, to disclose the information or records specified above to the Recipient. I understand this may include and is not limited to reports, evaluations, and notes of any kind, contained in any record keeping system maintained by or on behalf of DHS; that DHS retains the discretion to decide if particular records or information are within the scope of this Waiver; and that DHS has no control over how the Recipient will use or disseminate my information. I agree to release and hold harmless DHS, its components, offices, employees, contractors, agents, and assignees, from any and all claims of action or damages of any kind arising from, or in any way connected to, the release or use of any information or records pursuant to this Waiver.

| | |
| --- | --- |
| Your Signature: *Laura Poitras* | Witness Signature: *[signature]* |
| Date: Jan 9 2014 | Witness Name: Mathilde Bonnefoy |
| *Privacy Waiver is valid for 90 days from date of signature | *Witness may not be the Recipient or employed by Recipient's employer |

ICE Form 60-001 (2/11)

**EXHIBIT B**



**SENT BY ELECTRONIC MAIL TO:** sobel@att.net

November 12, 2015

David L. Sobel
1818 N Street NW, #410
Washington, D.C. 20036

**Re:  Freedom of Information Act Request No. CBP-2014-019068**

Mr. Sobel:

A search of CBP databases produced records responsive to your Freedom of Information Act
(FOIA) request number **CBP-2014-019068**.

CBP has determined that the responsive records are partially releasable, pursuant to
Title 5 U.S.C. § 552, and has applied the appropriate exemptions.  An explanation of relevant
exemptions, and other information which may be pertinent to your request, is attached for your
reference.

You have a right to appeal our withholding determination. Should you wish to do so, you must
send your appeal and a copy of this letter, within 60 days of the date of this letter, to:  FOIA
Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE,
10th Floor, Washington, DC 20229-1177, following the procedures outlined in the DHS
regulations at Title 6 C.F.R. § 5.9.  Your envelope and letter should be marked "FOIA Appeal."
Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Please notate file number **CBP-2014-019068** on any future correspondence to CBP related to
this request.


Sincerely,

Christie Sharpe
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

**Definitions of the Exemptions**
**Under the Freedom of Information Act (5 U.S.C. § 552)**

Pursuant to Title 5 U.S.C. § 552 (b), the disclosure requirement of the Freedom of Information Act does not apply to matters that are –

- (1)(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national security defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order;

- (2) related solely to the internal personnel rules and practices of an agency;

- (3) specifically exempt from disclosure by statute, provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or,  establishes particular criteria for withholding or refers to particular kinds of matters to be withheld;

- (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

- (5) inter-agency or intra-agency documents that are normally privileged in the civil discovery context.  The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege;

- (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

- (7) records of information compiled for law enforcement purposes, but only to the extent that the production of such records or information

    (A) could reasonably be expected to interfere with enforcement proceedings,
    (B) would deprive a person of a right to a fair trial or an impartial adjudication,
    (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,
    (D) could reasonably be expected to disclose the identity of a confidential source, including a state, local or foreign agency or authority, or any private institution which furnished information on a confidential basis, and for a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,
    (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or

prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or

(F) could reasonably be expected to endanger the life or physical safety of any individual;

- (8) contained in or related to examination, operating or condition reports prepared by, on behalf of, or for the use of any agency responsible for the regulation or supervision of financial institutions; or

- (9) geological and geophysical information and data, including maps, concerning wells.

Regarding Government Terrorist Watch List Information

To the extent that your FOIA request can be interpreted as a request for records that may be maintained by CBP regarding whether a particular person is or has ever been listed in the government terrorist watch list, please be advised that the U.S. Government, through the FOIA mechanism, neither confirms nor denies whether a particular person is on the terrorist watch list. Maintaining the confidentiality of government watch lists is necessary to achieve the counterterrorism and national security objectives of the U.S. Government. If the U.S. Government routinely revealed who has or has not been listed on the terrorist watch list, terrorists would be able to take actions to avoid detection by government authorities. Thus, pursuant to the FOIA Exemption 7(E), 5 U.S.C. § 552 (b)(7)(E), CBP can neither confirm or deny the existence of certain records which would tend to indicate whether a particular person is or ever was listed on the terrorist watch list. If you have questions or seek resolution regarding difficulties that you experienced during travel screening at transportation hubs—like airports and train stations—or during processing at a U.S. border, including watch list issues, problems at ports of entry or situations where you believe that you have been unfairly or incorrectly delayed, denied boarding or identified for additional screening at our nation's transportation hubs please address these issues to the single point of contact for DHS, the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP). Additional information regarding DHS TRIP is available at www.dhs.gov/trip. Please note: this is a standard notice being issued in response to every individual who requests through FOIA "all records" on a particular person that may be maintained by the agency, as well as all FOIA requests related to travel difficulties. This notice should not be taken as an indication that records do or do not exist with respect to your particular request.

Administrative Appeal

You have a right to appeal our withholding determination. Should you wish to do so, you must send your appeal and a copy of CBP's FOIA response letter, within 60 days of the date of the letter, to: U.S. Customs and Border Protection, Office of Regulations and Rulings, FOIA Appeals, Policy and Litigation Branch, 90 K Street, NE, Washington, D.C. 20229, following the

procedures outlined in the Department of Homeland Security regulations at Title 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Judicial Review

In the event that the FOIA Appeals, Policy and Litigation Branch, should (1) fail to issue a determination of your appeal within 20 business days of its receipt (plus 10 additional business days, if you are notified in writing that an extension of time is required and applicable), or (2) deny your appeal, you may obtain judicial review pursuant to Title 5 U.S.C. § 552(a)(4)(B) in the United States District Court in the district in which you (your client) reside(s) or have (has) a principal place of business, or in which the agency records are situated, or in the United States District Court for the District of Columbia.

**EXHIBIT C**



**SENT BY ELECTRONIC MAIL TO:** sobel@att.net

November 12, 2015

David L. Sobel
1818 N Street NW, #410
Washington, D.C. 20036

**Re:  Freedom of Information Act Request No. CBP-2014-019068**

Mr. Sobel:

A search of CBP databases produced records responsive to your Freedom of Information Act (FOIA) request number **CBP-2014-019068**.  Enclosed with this letter are additional records responsive to your request.

CBP has determined that the responsive records are partially releasable, pursuant to Title 5 U.S.C. § 552, and has applied the appropriate exemptions.  CBP has also identified 3,180 pages of records (consisting of many duplicates) which have been withheld in full pursuant to 5 U.S.C. § 552, including but not limited to exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  An explanation of relevant exemptions, and other information which may be pertinent to your request, is attached for your reference.

You have a right to appeal our withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to:  FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177, following the procedures outlined in the DHS regulations at Title 6 C.F.R. § 5.9.  Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Please notate file number **CBP-2014-019068** on any future correspondence to CBP related to this request.

Sincerely,

Christie Sharpe
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

**Definitions of the Exemptions**
**Under the Freedom of Information Act (5 U.S.C. § 552)**

Pursuant to Title 5 U.S.C. § 552 (b), the disclosure requirement of the Freedom of Information Act does not apply to matters that are –

- (1)(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national security defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order;

- (2) related solely to the internal personnel rules and practices of an agency;

- (3) specifically exempt from disclosure by statute, provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or,  establishes particular criteria for withholding or refers to particular kinds of matters to be withheld;

- (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

- (5) inter-agency or intra-agency documents that are normally privileged in the civil discovery context.  The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege;

- (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

- (7) records of information compiled for law enforcement purposes, but only to the extent that the production of such records or information

    (A) could reasonably be expected to interfere with enforcement proceedings,
    (B) would deprive a person of a right to a fair trial or an impartial adjudication,
    (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,
    (D) could reasonably be expected to disclose the identity of a confidential source, including a state, local or foreign agency or authority, or any private institution which furnished information on a confidential basis, and for a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,
    (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or

> prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or
>
> (F)  could reasonably be expected to endanger the life or physical safety of any individual;

- (8) contained in or related to examination, operating or condition reports prepared by, on behalf of, or for the use of any agency responsible for the regulation or supervision of financial institutions; or

- (9) geological and geophysical information and data, including maps, concerning wells.

### Regarding Government Terrorist Watch List Information

To the extent that your FOIA request can be interpreted as a request for records that may be maintained by CBP regarding whether a particular person is or has ever been listed in the government terrorist watch list, please be advised that the U.S. Government, through the FOIA mechanism, neither confirms nor denies whether a particular person is on the terrorist watch list. Maintaining the confidentiality of government watch lists is necessary to achieve the counterterrorism and national security objectives of the U.S. Government.  If the U.S. Government routinely revealed who has or has not been listed on the terrorist watch list, terrorists would be able to take actions to avoid detection by government authorities.  Thus, pursuant to the FOIA Exemption 7(E), 5 U.S.C. § 552 (b)(7)(E), CBP can neither confirm or deny the existence of certain records which would tend to indicate whether a particular person is or ever was listed on the terrorist watch list. If you have questions or seek resolution regarding difficulties that you experienced during travel screening at transportation hubs—like airports and train stations—or during processing at a U.S. border, including watch list issues, problems at ports of entry or situations where you believe that you have been unfairly or incorrectly delayed, denied boarding or identified for additional screening at our nation's transportation hubs please address these issues to the single point of contact for DHS, the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP).  Additional information regarding DHS TRIP is available at www.dhs.gov/trip.  Please note: this is a standard notice being issued in response to every individual who requests through FOIA "all records" on a particular person that may be maintained by the agency, as well as all FOIA requests related to travel difficulties.  This notice should not be taken as an indication that records do or do not exist with respect to your particular request.

### Administrative Appeal

You have a right to appeal our withholding determination.  Should you wish to do so, you must send your appeal and a copy of CBP's FOIA response letter, within 60 days of the date of the letter, to:  U.S. Customs and Border Protection, Office of Regulations and Rulings, FOIA Appeals, Policy and Litigation Branch, 90 K Street, NE, Washington, D.C. 20229, following the

procedures outlined in the Department of Homeland Security regulations at Title 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Judicial Review

In the event that the FOIA Appeals, Policy and Litigation Branch, should (1) fail to issue a determination of your appeal within 20 business days of its receipt (plus 10 additional business days, if you are notified in writing that an extension of time is required and applicable), or (2) deny your appeal, you may obtain judicial review pursuant to Title 5 U.S.C. § 552(a)(4)(B) in the United States District Court in the district in which you (your client) reside(s) or have (has) a principal place of business, or in which the agency records are situated, or in the United States District Court for the District of Columbia.

# EXHIBIT D

U.S. Customs and Border Protection (CBP) Vaughn Index
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| Documents Partially Released With Redactions | | | | |
|---|---|---|---|---|
| **Bates Range** | **Document Description** | **Pages** | **Exemption(s)** | **Description of Material Withheld** |
| **CBP000001 – CBP000029** | Type: TECS Border Crossing Information records | 29 | (b)(6), (b)(7)(C), (b)(7)(E) | Exemptions 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C) have been applied to terminal identification numbers of the TECS users who retrieved the TECS records, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to protect the computer screen transaction code, computer program transaction code, computer function codes (i.e., "PF codes" or "navigation keys") and information that would reveal the results of specific law enforcement database queries (the "RSLT" column).<br><br>Exemption (b)(7)(E) has also been applied to information explaining law enforcement techniques and procedures. |
| **CBP000030 – CBP000200; CBP000456 – CBP000492** | Type: TECS Advanced Passenger Information System records | 171 | (b)(6), (b)(7)(C), (b)(7)(E) | Exemptions 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C) have been applied to terminal identification numbers of the TECS users who retrieved the TECS records, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to protect the computer screen transaction code, computer program transaction code, computer function codes (i.e., "PF codes" or "navigation |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| | | | | keys") and information that would reveal the results of specific law enforcement database queries (the "RSLT" column).<br><br>Exemption (b)(7)(E) has also been applied to information explaining law enforcement techniques and procedures. |
| **CBP000201 – CBP000455** | Type: TECS records | 255 | (b)(6),<br>(b)(7)(C),<br>(b)(7)(E) | Exemptions 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C) have been applied to government fax and phone numbers, names of government employees, terminal identification numbers of the TECS users who retrieved the TECS records, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to protect the computer screen transaction code, computer program transaction code, computer function codes (i.e., "PF codes" or "navigation keys") and information that would reveal the results of specific law enforcement database queries (the "RSLT" column).<br><br>Exemption (b)(7)(E) has also been applied to information explaining law enforcement techniques and procedures.  Much of this information may be found in narrative portions of the TECS records, which describe law enforcement techniques and procedures utilized by CBP law enforcement officers, but not disclosed to Plaintiff or to the general public. |
| **CBP000493 – CBP000712** | Automated Targeting System Passenger Name Records | 220 | (b)(4),<br>(b)(6),<br>(b)(7)(C) | Exemption (b)(4) has been applied to confidential business information of air carriers.<br><br>Exemptions (b)(6) and (b)(7)(C) have |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| | | | | been applied to personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000713 – CBP000738** | Records located within CBP's New York field office: correspondence with legal counsel "Re: Detention Notice No. 344225", and attachments. | 26 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000739 – CBP000750** | Records located within CBP's New York field office: electronic correspondence with legal counsel "Re: Detention Notice No. 344225" and attachments. | 12 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000751 – CBP000762** | Records located within CBP's New York field office: correspondence with legal counsel "Re: Detention Notice No. 344225" and attachments. | 12 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000763 – CBP000815** | Records located within CBP's New York field office: multiple electronic correspondence with legal counsel "Re: Laura Poitras/ Detention Notice No. 344225". | 53 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| **CBP000816 – CBP000832** | Records located within CBP's New York field office: electronic correspondence with legal counsel " FWD: Laura Poitras/ Detention Notice No. 344225". | 17 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000833 – CBP000882** | Records located within CBP's New York field office: multiple electronic correspondence with legal counsel "Re: Laura Poitras/ Detention Notice No. 344225". | 50 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000883 – CBP000900** | Records located within CBP's New York field office: electronic correspondence with legal counsel "RE: Laura Poitras/ Detention Notice No. 344225". | 18 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000901 – CBP000904** | Records located within CBP's New York field office: multiple electronic correspondence with legal counsel "Re: Detention Notice No. 344225/Laura Poitras/ Professional Journalist". | 4 | (b)(5), (b)(6), (b)(7)(C) | Exemption (b)(5) has been applied to attorney-client privileged communications. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000905 – CBP000919** | Records located within CBP's New York field office: multiple | 15 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | electronic correspondence with legal counsel "Re: Laura Poitras/ Detention Notice No. 344225". | | | personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
|---|---|---|---|---|
| **CBP000920 – CBP000934** | Records located within CBP's New York field office: multiple electronic correspondence with legal counsel "Re: Laura Poitras/ Detention Notice No. 344225". | 15 | (b)(6), (b)(7)(C) | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **CBP000935** | Certification of Data Destruction | 1 | (b)(6), (b)(7)(C), (b)(7)(E) | CBP asserted the following exemptions on behalf of both CBP and U.S. Immigration and Customs Enforcement (ICE).<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to information explaining law enforcement techniques and procedures utilized by CBP and ICE that are not generally known or publicly disclosed. |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| Documents Withheld in Full | | | | |
|---|---|---|---|---|
| **Document No.** | **Document Description** | **Pages** | **Exemption(s)** | **Description of Material Withheld** |
| **Document 1** | Office of Chief Counsel (OCC) Email Communication | 2 | (b)(5), (b)(6), (b)(7)(C) | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| **Document 2** | OCC Email Communication | 304 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| | | | | party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |
| | | | | Pages: 1-12; 25-26; 46; 49-50; 52-54; 57-58; 60-62; 127-130; 137-141; 148-150; 153-154; 189; 247; 249-250; 255; 257-259; 261-262; 264; 284; 286-301; 303-304. |
| **Document 3** | OCC Email Communication | 17 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). |
| | | | | Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |

U.S. Customs and Border Protection (CBP) Vaughn Index
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | Pages: 1-10; 17. |
| **Document 4** | OCC Email Communication | 468 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. Pages: 1-11; 15-18, 28-31; 57; 60-61; 63-65; 67-70; 72; 75; 79-84; 103-104; 117; 126-128; 131-134; 147; 152; 160; 165; 179-196; 206-210; 217-219; 222; 224-236; 238-239; 248-249; 251-256; 279; 282; 285; 373-376; 378; 381; 383; 385; 387-388; 390; 392-405; 417; 424-442; 444-468. |
| **Document 5** | OCC Email Communication | 13 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged communications. The documents |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| | | | | consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections.<br><br>Pages 1-11. |
| **Document 6** | OCC Email Communication | 54 | (b)(5), (b)(6), (b)(7)(C) | Document withheld in full under exemption (b)(5).<br><br>Exemption (b)(5) has been applied to attorney-client privileged communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| | | | | those individuals if released. |
| **Document 7** | OCC Email Communication | 67 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. Pages: 56-67. |
| **Document 8** | OCC Email Communication | 83 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. Exemptions (b)(6) and (b)(7)(C) have |

| | | | | |
|---|---|---|---|---|
| | | | | been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |
| | | | | Pages 1, 10, 12. |
| **Document 9** | OCC Email Communication | 4 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemptions (b)(5) and (b)(7)(E). |
| | | | | Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| **Document 10** | OCC Email Communication | 150 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). |
| | | | | Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |
| | | | | Pages 1-12; 23-24; 29; 33; 46; 48-49; 52; 54-59; 62-63; 75; 77-78; 147-150. |
| **Document 11** | OCC Email Communication | 33 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). |
| | | | | Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have |

U.S. Customs and Border Protection (CBP) Vaughn Index
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| --- | --- | --- | --- | --- |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |
| | | | | Pages 1-12; 23, 25. |
| **Document 12** | OCC Email Communication | 101 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). |
| | | | | Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| | | | | processes used during CBP inspections. |
| | | | | Pages 1-16; 27-28; 35-38; 53; 56; 60-61; 63-68; 79-80; 94. |
| **Document 13** | OCC Email Communication | 394 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5).<br><br>Exemption (b)(5) has been applied to attorney-client privileged communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections.<br><br>Pages 1-22; 35-36; 38-39; 54, 60; 62; 65-66; 68-70; 73-76; 78; 128-133; 151-154; 164-168; 172-174; 177-180; 217; 324-325; 328; 330; 333; 335; 337; 339; 342; 344; 346; 371-374; 376; 379; 381-387; 389; 391; 393-394. |
| **Document 14** | OCC Email Communication | 767 | (b)(5), (b)(6), (b)(7)(C), | Document withheld in full under exemption (b)(5).<br><br>Exemption (b)(5) has been applied to attorney-client privileged |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | (b)(7)(E) | communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
|---|---|---|---|---|
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |
| | | | | Pages 1-87; 90-101; 115-125; 129-131; 146; 148; 150; 160; 167; 171-172; 174-175; 178; 181-182; 184-186; 189-195; 197-201; 211-232; 256; 269-270; 297; 300; 313-321; 326-329; 359; 366-373; 378; 392-417; 427-431; 438-441; 444-448; 450-451; 454-466; 501; 504; 507; 617; 619-626; 629-653; 655-659; 661-676; 679-689; 703; 705-707; 716-767. |
| **Document 15** | OCC Email Communication | 39 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). |
| | | | | Exemption (b)(5) has been applied to attorney-client privileged communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, |

| | | | | |
|---|---|---|---|---|
| | | | | and reflect deliberative processes and conclusions.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections.<br><br>Pages 1-4; 14-18; 25-27; 32-33. |
| **Document 16** | OCC Email Communication | 84 | (b)(5),<br>(b)(6),<br>(b)(7)(C),<br>(b)(7)(E) | Document withheld in full under exemption (b)(5).<br><br>Exemption (b)(5) has been applied to attorney-client privileged communications. The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes |

| | | | | |
|---|---|---|---|---|
| | | | | information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. Pages 4-5; 6-7; 8-10; 12-13; 15; 17; 19-28; 38-42; 46-49; 52; 55-59; 67-70; 72-73; 79-80. |
| **Document 17** | OCC Email Communication | 50 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. Pages 5-8; 18-22; 32-34; 37-38; 39; 41. |
| **Document 18** | OCC Email Communication | 91 | (b)(5), (b)(6), (b)(7)(C), | Document withheld in full under exemption (b)(5). Exemption (b)(5) has been applied to attorney-client privileged |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | (b)(7)(E) | communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
|---|---|---|---|---|
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections. |
| | | | | Pages 10-18; 20-25; 35-39; 50-54; 58-61; 67-70; 72-73; 76; 78. |
| **Document 19** | OCC Email Communication | 142 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5). |
| | | | | Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflect deliberative processes and conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and |

| | | | | |
|---|---|---|---|---|
| | | | | other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections.<br><br>Pages 1; 64; 67; 70. |
| **Document 20** | OCC Email Communication | 295 | (b)(5), (b)(6), (b)(7)(C), (b)(7)(E) | Document withheld in full under exemption (b)(5).<br><br>Exemption (b)(5) has been applied to attorney-client privileged communications.  The documents consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and  reflect deliberative processes and conclusions.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied to information on the following pages listed hereafter, which includes information explaining law enforcement techniques and procedures, including techniques and processes used during CBP inspections.<br><br>Pages 1-22; 26-29; 36-38; 75-86; 109; 112; 115; 200-203; 205; 208; 210; 212; 215-216; 218; 220; 222-241; 253; |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | 260-266; 268; 270-295. |
|---|---|---|---|---|
| **Document 21** | CBP Internal System Printout | 12 | (b)(7)(E) | Document withheld in full under exemption (b)(7)(E). Exemption (b)(7)(E) has been applied as the document consists entirely of law enforcement techniques, procedures, and results of specific law enforcement database queries not generally known or publicly disclosed. |
| **Document 22** | Internal CBP Report | 3 | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) | Document withheld in full under exemptions (b)(5) and (b)(7)(E). Exemption (b)(5) has been applied as the document was attached to and transmitted as part of an attorney-client privileged communication. Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. Exemption (b)(7)(E) has been applied as the document consists entirely of law enforcement techniques and procedures not generally known or publicly disclosed. |
| **Document 23** | OCC Internal Memorandum | 1 | (b)(5), (b)(6) (b)(7)(C) (b)(7)(E) | Document withheld in full under exemptions (b)(5) and (b)(7)(E). Exemption (b)(5) has been applied because the document is an internal legal memoranda protected by the attorney-client privilege and the attorney work-product doctrine.  The documents also consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflects |

U.S. Customs and Border Protection (CBP) Vaughn Index
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | deliberative processes and conclusions. |
|---|---|---|---|---|
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied as the document consists of law enforcement techniques and procedures not generally known or publicly disclosed. |
| **Document 24** | OCC Internal Memorandum | 2 | (b)(5), (b)(6) (b)(7)(C) (b)(7)(E) | Document withheld in full under exemptions (b)(5) and (b)(7)(E). |
| | | | | Exemption (b)(5) has been applied because the document is an internal legal memoranda protected by the attorney-client privilege and the attorney work-product doctrine.  The documents also consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflects deliberative processes and conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied as the document consists of law enforcement techniques and procedures not generally known or |

| | | | | publicly disclosed. |
|---|---|---|---|---|
| **Document 25** | OCC Internal Memorandum | 2 | (b)(5), (b)(6) (b)(7)(C) (b)(7)(E) | Document withheld in full under exemptions (b)(5) and (b)(7)(E).<br><br>Exemption (b)(5) has been applied because the document is an internal legal memoranda protected by the attorney-client privilege and the attorney work-product doctrine.  The documents also consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflects deliberative processes and conclusions.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released.<br><br>Exemption (b)(7)(E) has been applied as the document consists of law enforcement techniques and procedures not generally known or publicly disclosed. |
| **Document 26** | OCC Internal Memorandum | 4 | (b)(5), (b)(6) (b)(7)(C) (b)(7)(E) | Document withheld in full under exemption (b)(5).<br><br>Exemption (b)(5) has been applied because the document is an internal legal memoranda protected by the attorney-client privilege and the attorney work-product doctrine.  The documents also consist of attorney-client privileged communications among CBP attorneys, and between CBP attorneys other employees or agents of CBP, and reflects deliberative processes and |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Laura Poitras v. U.S. Department of Homeland Security, et al.**
**Case No. 1:15-cv-1091 (KBJ)**

| | | | | |
|---|---|---|---|---|
| | | | | conclusions. |
| | | | | Exemptions (b)(6) and (b)(7)(C) have been applied within these documents to names of government employees, personally identifiable information and other identifying details of third party individuals, and identity and other personal documents of third party individuals that would identify those individuals if released. |
| | | | | Exemption (b)(7)(E) has been applied as the document consists of law enforcement techniques and procedures not generally known or publicly disclosed. |