## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAURA POITRAS,** | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-1091 (KBJ) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.,** | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

   I.   CPB CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE
      RECORDS. ................................................................................................................ 3

   II.  THE FBI PROPERLY WITHHELD RESPONSIVE DOCUMENTS. ........................... 6

      A.  Exemption 5 ....................................................................................................... 7

      B.  Exemption 7 ....................................................................................................... 9

         1. The Records Were "Compiled for Law Enforcement Purposes" ........................ 10

         2. Exemption 7(A) ............................................................................................. 11

         3. Exemption 7(D) (FBI) .................................................................................... 13

         4. Exemption 7(E) .............................................................................................. 15

   III. FBI and CBP Have Produced All Reasonably  Segregable Portions of Responsive
      Records. ................................................................................................................... 17

CONCLUSION.................................................................................................................... 19

## **TABLE OF AUTHORITIES**

### **Cases**

*Abdelfattah v. DHS*,
    488 F.3d 178 (3d Cir. 2007) ................................................................... 10

*Baldrige v. Shapiro*,
    455 U.S. 345 (1982) ............................................................................... 3

*Barnard v. DHS*,
    598 F. Supp. 2d 1 (D.D.C. 2009) ........................................................... 5

*Beard v. DOJ*,
    917 F. Supp. 61 (D.D.C. 1996) ............................................................. 15

*Bevis v. Dep't of State*,
    801 F.2d 1386 (D.C. Cir. 1986) ............................................................ 12

*Billington v. DOJ*,
    233 F.3d 581 (D.C. Cir. 2000) ........................................................ 13, 14

*Billington v. DOJ*,
    301 F. Supp. 2d 15 (D.D.C. 2004) ........................................................ 13

*Bullock v. FBI*,
    577 F. Supp. 2d 75 (D.D.C. 2008) ........................................................ 15

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
    600 F. Supp. 114 (D.D.C. 1984) ............................................................ 9

*Ctr. for Nat'l Sec. Studies v. DOJ*,
    331 F.3d 918 (D.C. Cir. 2003) ......................................................... 2, 11

*Dep't of Interior v. Klamath Water Users Prot. Ass'n*,
    532 U.S. 1 (2001) ................................................................................... 8

*DOJ v. Landano*,
    508 U.S. 165 (1993) ......................................................................... 13, 14

*DOJ v. Reporters Comm. For Freedom of Press*,
    489 U.S. 749 (1989) ............................................................................... 3

*Dow Jones & Co. v. DOJ*,
    917 F.2d 571 (D.C. Cir. 1990) .............................................................. 13

*Fisher v. DOJ*,
    772 F. Supp. 7 (D.D.C. 1991) ............................................................... 16

*Hale v. DOJ*,
    973 F.2d 894 (10th Cir. 1992) ................................................................ 3

*Hammouda v. U.S. Dep't of Justice Office of Info. Policy*,
    920 F. Supp. 2d 16 (D.D.C. 2013) ................................................... 12-13

*Hopkins v. HUD*,
    929 F.2d 81 (2d Cir. 1991) ..................................................................... 8

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003) ............................................................................ 4

*Jefferson v. DOJ*,
  284 F.3d 172 (D.C. Cir. 2002) ...................................................................... 10, 11

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ........................................................................................ 11

*Judicial Watch v. DHS*,
  59 F. Supp. 3d 184 (D.D.C. 2014) ................................................................... 12

*Kidd v. DOJ*,
  362 F. Supp. 2d 291 (D.D.C. 2005) ................................................................ 5-6

*Judicial Watch v. FDA*,
  449 F.3d 141, 146 (D.C. Cir. 2006) ................................................................... 7

*Labow v. DOJ*,
  66 F. Supp. 3d 104 (D.D.C. 2014) ............................................................... 16, 17

*Light v. DOJ*,
  968 F. Supp. 2d 11 (D.D.C. 2013) ................................................................... 17

*Loving v. U.S. Dep't of Def.*,
  496 F. Supp. 2d 101 (D.D.C. 2007) ................................................................. 18

*Loving v. Dep't of Def.*,
  550 F.3d 32 (D.C. Cir. 2008) ............................................................................ 8

*Manna v. DOJ*,
  51 F.3d 1158 (3d Cir. 1995) ............................................................................ 11

*Mayer Brown LLP v. IRS*,
  562 F.3d 1190 (D.C. Cir. 2009) ....................................................................... 15

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) ......................................................................... 3

*Nat'l Sec. Archive Fund, Inc. v. CIA*,
  402 F. Supp. 2d 211 (D.D.C. 2005) ................................................................. 17

*NLRB v. Robbins Tire & Rubber Corp.*,
  437 U.S. 214 (1978) ........................................................................................ 11

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ...................................................................................... 7, 9

*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) ......................................................................... 3, 4

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget*,
  598 F.3d 865 (D.C. Cir. 2010) .......................................................................... 9

*Quarles v. Dep't of Navy*,
  893 F.2d 390 (D.D.C. 1990) .............................................................................. 8

*Renegotiation Bd. v. Grunman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975) ............................................................................................. 8

*Rockwell Int'l Corp. v. DOJ*,
    235 F.3d 598 (D.C. Cir. 2001) .......................................................................... 7

*Schrecker v. DOJ*,
    349 F.3d 657 (D.C. Cir. 2003) .......................................................................... 4

*Shaw v. FBI*,
    749 F.2d 58 (D.C. Cir. 1984) .......................................................................... 14

*Smith v. ATF*,
    977 F. Supp. 496 (D.D.C. 1997) ..................................................................... 16

*Steinberg v. DOJ*,
    23 F.3d 548 (D.C. Cir. 1994) ....................................................................... 3, 4

*Strunk v. U.S. Dep't of State*,
    845 F. Supp. 2d 38 (D.D.C. 2012) .................................................................. 5

*Tax Analysts v. IRS*,
    152 F.Supp. 2d 1 (D.D.C. 2001) ...................................................................... 8

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ......................................................................... 3

*W. Ctr. for Journalism v. IRS*,
    116 F. Supp. 2d 1 (D.D.C. 2000) ..................................................................... 4

## **Statutes**

5 U.S.C. § 552 .................................................................................................... 2

5 U.S.C. § 552(b) ............................................................................................. 17

5 U.S.C. § 552(b)(5) .......................................................................................... 7

5 U.S.C. § 552(b)(7) ..................................................................................... 9, 10

5 U.S.C. § 552(b)(7)(A) ................................................................................... 11

5 U.S.C. § 552(b)(7)(D) ................................................................................... 13

5 U.S.C. § 552(b)(7)(E) ................................................................................... 15

# INDEX OF EXHIBITS

**I.   Exhibit 1:** FBI *Vaughn* Index of Specific Exemptions

**II.  Exhibit 2:** Third Declaration of David M. Hardy

**III. Exhibit 3:** Defendants' Second Statement of Material Facts Not in Dispute

## INTRODUCTION

This case arises out of a series of nearly identical Freedom of Information Act ("FOIA") requests for records concerning Plaintiff Laura Poitras.  Plaintiff submitted the requests to the Federal Bureau of Investigation ("FBI"), the Office of the Director of National Intelligence ("ODNI"), the Department of Homeland Security ("DHS"), and four DHS components: U.S. Customs and Border Protection ("CBP"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and Transportation Security Administration ("TSA").  In March 2017, this Court granted summary judgment, in full, for five of those defendants (ODNI, DHS, USCIS, TSA, and ICE); for the two defendants remaining (FBI and CBP), this Court granted summary judgment in part, and denied it in part without prejudice.  As the accompanying declarations and *Vaughn* index demonstrate, FBI and CBP have satisfied all of their statutory obligations under FOIA and are entitled to summary judgment on the narrow issues remaining before the Court.

## STATEMENT OF FACTS[1]

In January 2014, Plaintiff submitted nearly identical FOIA requests to FBI, ODNI, DHS, CBP, TSA, USCIS, and ICE.  The requests sought "all agency records concerning, naming, or relating to Ms. Poitras."  As set forth in the declarations submitted with the original summary judgment motion, with the exception of DHS (which transferred its FOIA request to CBP and TSA), each Defendant conducted its own search for documents, with varying results.  USCIS and ICE found no responsive records.  The FBI, CBP, and TSA located responsive records, released all non-exempt, segregable information, and determined that the rest is protected from disclosure

---

[1] For a more complete statement, the Court is respectfully referred to Defendants' Second Statement of Material Facts Not in Dispute, Ex. 3, as well as the original Statement of Material Facts Not in Dispute, ECF 14-8.

under FOIA's statutory exemptions.  The FBI withheld information under Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E); CBP under Exemptions 4, 5, 6, 7(C), and 7(E); and TSA under Exemption 3.  And while ODNI searched and found no responsive records in pertinent non-intelligence files, the agency could neither confirm nor deny the existence or nonexistence of responsive records in its classified holdings.

Following cross-motions for summary judgment, this Court entered summary judgment, as conceded by Plaintiff, with respect to (i) the withholdings by TSA, ODNI, and CBP; (ii) the FBI's withholdings under exemptions 1, 3, 6, and 7(c); and the adequacy of the search for documents conducted by FBI, ODNI, DHS, USCIS, ICE, and TSA.  *See* ECF 22.  The Court denied the Government's motion for summary judgment, without prejudice, on all remaining issues: whether CBP conducted an adequate search for documents, whether FBI's withholdings under exemptions 5, 7(A), 7(D), and 7(E) are proper, and whether FBI and CBP have satisfied their segregability obligations.  *Id.*  As grounds for the denial, the Court found that the declarations submitted in support of the FBI's motion for summary judgment were insufficient to permit the Court to evaluate whether the agency has properly invoked certain FOIA exemptions.  *Id.* at 4-6.  The Court noted that its practice in these circumstances is "to deny the pending motion without prejudice and provide the agency with an opportunity to refile the motion with the requisite supporting documents."  *Id.* at 6.

## STANDARD OF REVIEW

The Freedom of Information Act, 5 U.S.C. § 552, "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."  *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003).  FOIA requires agencies to release documents responsive to a properly submitted request, except

for those documents or portions of documents subject to any of nine statutory exemptions to the general disclosure obligation.  5 U.S.C. §§ 552(a)(3), (b)(1)–(b)(9).

"In order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the request records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To meet this burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983), *on reh'g*, 711 F.2d 1076 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

While FOIA requires agency disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest."  *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982).  FOIA provides nine exemptions that "reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential."  *Hale v. DOJ*, 973 F.2d 894, 898 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993), and *overruled on other grounds in later appeal*, 2 F.3d 1055 (10th Cir. 1993).  To sustain its burden of justifying nondisclosure of information, an agency may submit a declaration or index describing the withheld material with reasonable specificity, indicating the reasons for non-disclosure, and explaining that reasonably segregable material has been released.  *See DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 753 (1989).

## ARGUMENT

## I.     CBP CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS.

To demonstrate an adequate records search, an agency must show that "[re]viewing the facts in the light most favorable to the requester, . . . it has conducted a search reasonably calculated to uncover all relevant documents."  *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (internal

citation omitted).  An agency's search need not be exhaustive, but merely reasonable.  *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 8 (D.D.C. 2000), *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001).  The question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Steinberg*, 23 F.3d at 551.

Conducting a "reasonable" search requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and "is hardly an area in which the courts should attempt to micro manage the executive branch."  *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003).  In the absence of "countervailing evidence" or "substantial doubt," agency affidavits or declarations describing such a reasonable and adequate search are sufficient to demonstrate an agency's compliance with FOIA.  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (citations omitted).

The declaration submitted by CBP demonstrates through detailed, non-conclusory averments that the agency engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see* Declaration of Sabrina Burroughs, Director of the FOIA Division, CBP ("Burroughs Decl."), ECF 14-3.  In particular, the Burroughs Declaration explains the scope of the agency's search, the types of files searched, and the specific parameters of those searches.

After receiving the request, CBP FOIA personnel determined that any responsive records within CBP's control would most likely be located within two CBP computer systems—TECS (and its subsystems) and the Automated Targeting System (ATS).  Burroughs Decl. ¶ 5.  TECS is a law enforcement database that contains enforcement, inspection, and intelligence records relevant to the mission of CBP and other federal agencies.  *Id.* ¶ 15.  ATS is a decision-support

tool used by CBP which contains the official records for Passenger Name Records (PNR) collected by CBP. *Id.* ¶ 25. Both systems can be searched for records pertaining to particular individuals. *Id.* ¶¶ 5, 26.

CBP searched TECS and ATS using search terms encompassing Plaintiff's name and date of birth. *Id.* Given the nature of the FOIA request, which sought CBP records relating to a particular individual, CBP's search was appropriately targeted at uncovering responsive records. *See, e.g.*, *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 44 (D.D.C. 2012) (finding that CBP's search of TECS for individual arrival and departure records was reasonably calculated to locate responsive records); *Barnard v. DHS*, 598 F. Supp. 2d 1, 3 (D.D.C. 2009) (finding that CBP search of TECS and ATS in response to a request for "all records about me" was reasonable).

In processing the results of CBP's initial searches, the FOIA staff determined that additional responsive records relating to an August 2010 encounter between Plaintiff and CBP at JFK International Airport were likely to be found in CBP's New York field office. Burroughs Decl. ¶ 30. These records would not have been captured by the TECS or ATS searches, and were likely to include (in addition to other documents) paper and electronic correspondence between CBP and Plaintiff, as well as correspondence internal to CBP. *Id.* Accordingly, personnel in CBP's New York field office conducted both paper and electronic searches using criteria reasonably tailored to identify all responsive records. *Id.* ¶ 31 (describing search methodology, date range, and search terms ("'Poitras,' 'Laura Poitras,' and the name and email address of Plaintiff's legal counsel related to the August 1, 2010 encounter")).

The foregoing discussion and the additional details set forth in the Burroughs declaration demonstrates that CBP searched those locations that it determined were reasonably likely to contain responsive documents. CBP "made a good faith effort to search for the records requested,"

and its "methods were reasonably expected to produce the information requested."  *Kidd v. DOJ*, 362 F. Supp. 2d 291, 294 (D.D.C. 2005).  The Court should therefore enter summary judgment in favor of CBP on the adequacy of its search.

## II.      THE FBI PROPERLY WITHHELD RESPONSIVE DOCUMENTS.

After processing responsive documents to achieve maximum disclosure, FBI determined that certain documents contained information subject to one or more of FOIA's nine statutory exemptions to disclosure.  In support of its motion for summary judgment, the FBI submitted two declarations from David Hardy describing the agency's searches and the justifications for its withholdings.  Hardy Decl., ECF 14-1 ("First Hardy Decl."); Hardy Decl., ECF 19-1 ("Second Hardy Decl.").  The First Hardy declaration describes the Bates-numbered document releases the FBI provided to Plaintiff and explains the coded format used to identify and justify the FBI's withholdings.  First Hardy Decl. ¶¶ 35-37.  Each redaction or withheld page is annotated with one or more codes, which refer back to detailed explanations set forth in the First Hardy Declaration. The coded categories of exemptions are provided to aid the Court's and Plaintiff's review of the FBI's explanations of the claimed withholdings and redactions.  *Id.* ¶ 36.

Following cross-motions for summary judgment, the Court denied the FBI's motion for summary judgment in part and required the FBI to provide a *Vaughn* Index supplying further information about the FBI's full or partial withholdings under FOIA Exemptions 5, 7(A), 7(D), and 7(E).  ECF 22 at 6.  In support of its renewed motion for summary judgment, the FBI has submitted a *Vaughn* Index describing each document redacted or withheld, identifying the statutory exemption claimed, and explaining how disclosure would harm the interests protected by the relevant exemption.  *See Vaughn* Index for Specific Exemptions, Ex. 1.  The FBI also has submitted a third declaration from David Hardy ("Third Hardy Decl."), Ex. 2, which, together with

the *Vaughn* Index and the first two Hardy declarations, satisfies the FBI's burden to provide "a reasonable basis to evaluate each claim of privilege." *Judicial Watch v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).

### A.     Exemption 5

FBI withheld information pursuant to Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  Records are exempt from disclosure if they would be "normally privileged in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Exemption 5 thus incorporates the privileges that are available to an agency in civil litigation, including the protection of attorney work product, attorney-client communications, and deliberative process materials.  *Id.* at 148–50; *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).

The FBI has withheld materials protected by the deliberative process privilege to protect intelligence analysis relating to the FBI's investigation of Plaintiff.  The FBI has shown that the withheld paragraphs—found in Poitras 158, 159, and 163—are predecisional and deliberative.  Specifically, the FBI asserted Exemption 5 to withhold portions of an inter-agency electronic communication from the New York Field Office ("NY FO"), in which "[t]he NY FO is analyzing, deliberating, sorting and modifying ideas and providing recommendations on how to further advance the investigation."   First Hardy Decl. ¶ 62; *Vaughn* at 46.   The author of the communication is an intelligence analyst, and the recipient a special agent assigned to the investigation.  The information redacted from the communication reflects (i) discussion of the results of a database check relating to the FBI's investigation of Plaintiff, (ii) deliberation over what further investigative steps the FBI could or should take in light of the results, and (iii)

recommendations to the special agent as to how to proceed in the investigation, including recommendations to consider seeking a court order and coordinating with other agencies. First Hardy Decl. ¶ 61. The First Hardy declaration further explains that the "objective of the document is to provide analytical support," and that the information withheld does not reflect a final decision but rather "information the [special agent] could consider when proceeding with the investigation."

This information is sufficient to meet the agency's burden under FOIA because it shows that these documents reflect "recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001)). In particular, the information is predecisional because it "was 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.D.C. 1990). That it was prepared by someone who lacks decisionmaking authority with respect to the investigation (the intelligence analyst), for the benefit of someone who possesses such authority (the special agent), only reinforces the predecisional nature of the communication. *See Hopkins v. HUD*, 929 F.2d 81, 85 (2d Cir. 1991) (Documents prepared by agency officials who "themselves lack any authority to take final agency action . . . are necessarily predecisional"); *see also Tax Analysts v. IRS*, 152 F. Supp. 2d 1, 24-25 (D.D.C. 2001) (protecting memoranda "written by a component office without decisionmaking authority to a different component office" that had such authority), *aff'd in part, rev'd in part on other grounds and remanded*, 294 F.3d 71 (D.C. Cir. 2002); *Renegotiation Bd. v. Grunman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (holding that the deliberative process privilege protected "final recommendations" issued by regional boards "[b]ecause only the full Board has the power by law to make the decision").

Further, the information is deliberative because it reflects "internal deliberations on the advisability of a[] particular course of action." *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2010). While these kinds of analytical recommendations are deliberative by nature, *see* Second Hardy Decl. ¶ 7, there should also be "considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take — of the deliberative process — by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)). Because releasing such opinions and recommendations would "chill the full and frank discussion between agency personnel," *id.*, the FBI has properly withheld this information pursuant to Exemption 5.

## B.      Exemption 7

Information withheld by the FBI is also protected from disclosure under Exemption 7, 5 U.S.C. § 552(b)(7), which protects "records or information compiled for law enforcement purposes" when disclosure of such records would cause certain types of harm. Of relevance here, the exemption applies when disclosure

> (A)  could reasonably be expected to interfere with enforcement proceedings,
>     . . .
> (D)  could reasonably be expected to disclose the identity of a confidential source, including State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, [or]
> (E)  would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7).  As detailed below, the FBI has met its burden under FOIA and established that its withholdings under Exemption 7 are proper.

### 1.     The Records Were "Compiled for Law Enforcement Purposes."

Records withheld under each prong of Exemption 7 must first satisfy the threshold requirement that they be "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  "In assessing whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. DOJ*, 284 F.3d 172, 176–77 (D.C. Cir. 2002).  Documents are compiled for law enforcement purposes if they meet two criteria: (1) the documents were created or acquired in the course of an investigation related to the enforcement of federal laws, and (2) the nexus between the activity and one of the agency's law enforcement duties was based on information sufficient to support at least a "colorable claim" of the relationship's rationality.  *Abdelfattah v. DHS*, 488 F.3d 178, 186 (3d Cir. 2007).

Here, the FBI's declarations make clear that the information withheld under Exemption 7 was "compiled for law enforcement purposes."  The First Hardy Declaration explains that FBI's records were compiled as part of a criminal investigation into Plaintiff's "possible involvement with anti-coalition forces during her time in Iraq as an independent media representative."  First Hardy Decl. ¶ 64.  The investigation was undertaken at the request of the U.S. military, after the FBI received further information about Plaintiff's involvement in an ambush on U.S. forces near Baghdad that resulted in the death of one U.S. soldier and serious injuries to several others.  *Id*. ¶ 31.  The investigation of criminal conduct is plainly a law enforcement purpose, *see, e.g.*, *Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002), but if there

were any doubt that the investigation was consistent with the FBI's law enforcement functions, it should have been dispelled by the Second Hardy Declaration, which shows that the investigation fell squarely within the Attorney General's Guidelines for FBI National Security Investigations and Foreign Intelligence Collection, Second Hardy Decl. ¶ 8.

### 2. Exemption 7(A)

The FBI has determined that certain documents must be withheld in full under Exemption 7(A) because their disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Congress enacted Exemption 7(A) because it "recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases" in court. *NLRB v. Robbins Tire & Rubber Corp.*, 437 U.S. 214, 224 (1978). The exemption must therefore be construed pragmatically, so as to ensure that the statutory protection of law enforcement records is given "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

"To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *Manna v. DOJ*, 51 F.3d 1158, 1164 (3d Cir. 1995). The exemption broadly applies to pending or prospective proceedings, including ongoing criminal, civil, and administrative investigations. *Id.* at 1165. Moreover, "Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927.

In justifying its reliance on Exemption 7(A), the Government need not discuss the exemption on a document-by-document basis. Instead, an agency may "group[] documents into

relevant categories that are sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (internal citation omitted).   Indeed, providing a document-by-document listing of Exemption 7(A) withholdings could undermine the very investigative interests the exemption is meant to protect.  *Judicial Watch v. DHS*, 59 F. Supp. 3d 184, 193-94 (D.D.C. 2014).   The FBI respectfully maintains that, under these authorities, the First Hardy declaration adequately justified the FBI's Exemption 7(A) withholdings by explaining in sufficient detail the relevant investigative proceedings, the category of responsive records subject to Exemption 7(A), and the interference that could result from disclosure of the category of records.  Nevertheless, in the interest of fully complying with the Court's March 2017 order, the FBI has provided a *Vaughn* Index identifying and describing each document from which Exemption 7(A) information has been withheld.

　　　As shown by the Hardy declarations and the *Vaughn* Index, the FBI has asserted Exemption 7(A) to protect file numbers of pending FBI investigations.  First Hardy Decl. ¶ 77; *Vaughn Index* at 51, 53, 55, 103, 112. "The release of the file numbers pertaining to investigative activities of third parties of an on-going FBI investigation could result not only in the acknowledgment of the existence of an investigation, but also in the identification of suspects and thus jeopardize the investigation."  First Hardy Decl. ¶ 77.  As a result, disclosure of this information "would interfere with pending and prospective enforcement proceedings, including investigations and prosecutions."  *Id.*  The information was therefore properly withheld pursuant to Exemption (7)(A). *See, e.g.*, *Hammouda v. U.S. Dep't of Justice Office of Info. Policy*, 920 F. Supp. 2d 16, 24 (D.D.C. 2013) (FBI properly applied exemption 7(A) in withholding investigation file numbers).

12

### 3.     Exemption 7(D) (FBI)

The FBI has withheld information under Exemption 7(D), which permits the redaction of law enforcement records where their release "could reasonably be expected to disclose the identity of a confidential source."   5 U.S.C. § 552(b)(7)(D).   Unlike some other FOIA exemptions, Exemption 7(D) is an absolute protection, and requires no balancing of public and private interests. *See Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575–76 (D.C. Cir. 1990).  Indeed, "Exemption 7(D) has long been recognized as affording the most comprehensive protection of all of FOIA's law enforcement exemptions."  *Billington v. DOJ*, 301 F. Supp. 2d 15, 22 (D.D.C. 2004).

A source is confidential within the meaning of Exemption 7(D) if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  *DOJ v. Landano*, 508 U.S. 165, 172 (1993) (quoting S. REP. NO. 93-1200, at 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6291)).  "Under Exemption 7(D), the question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential."  *Id.*  Accordingly, agencies invoking Exemption 7(D)'s protection with respect to an implied assurance of confidentiality must demonstrate expectations of confidentiality based upon the "circumstances" of the case at issue.  *Id.* at 180; *see also Billington v. DOJ*, 233 F.3d 581, 585 (D.C. Cir. 2000) ("[T]he circumstances under which the FBI receives information might support a finding of an implied assurance of confidentiality").  As the FBI has explained, "sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public."  First Hardy Decl. ¶ 79.

Here, the FBI asserted Exemption 7(D) to protect two categories of sources: confidential information from foreign governments, and information from third parties who provided information under an implied assurance of confidentiality.  First Hardy Decl. ¶¶ 81-86; *Vaughn* Index at 26-28, 30, 31-37, 42, 44-48, 63, 65, 66, 68, 72-74, 109, 114.  First, the FBI has invoked Exemption 7(D) to protect the "identity as well as the information provided by an intelligence agency of a foreign government with an implicit understanding of confidentiality."  First Hardy Decl. ¶ 81.  As explained by the FBI, "the foreign [intelligence] agency referenced in the [responsive] records at issue here [specifically] requested its relationship with the FBI be classified."  *Id.* ¶ 83.  This evidences the foreign government's expectation of "confidentiality in its interactions with the FBI and with regard to the information it provided to the FBI for law enforcement/national security purposes under applicable information sharing agreements."  *Id.*; *see also Shaw v. FBI*, 749 F.2d 58, 62 (D.C. Cir. 1984) ("Nor is it possible to deny that foreign [] law enforcement agencies can qualify as confidential sources for purposes of Exemption 7."); *Billington*, 233 F.3d at 585 n.5 (recognizing that foreign government agencies may qualify as confidential sources).  Under these circumstances, there can be no doubt that "the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes."  *Landano*, 508 U.S. at 174.

An implied assurance of confidentiality is further reflected by both the customary trust that exists between the FBI and foreign government and law enforcement agencies, as well as the significant implications that disclosure of material received from such sources would have on diplomatic relations.  As explained in the FBI's declaration,

> The release of official United States Government documents revealing the
> existence of such a confidential relationship with a current and long-term foreign

> government partner, in contravention of law enforcement/national security information sharing agreements, reasonably could be expected to strain relations between the United States and the foreign government and lead to negative diplomatic, political, or economic repercussions.

First Hardy Decl. ¶ 83.  "Without assurance that information given to the FBI would be protected from public disclosure, [foreign] law agencies may very well abstain from providing information to the FBI in their cooperative endeavors."  *Beard v. DOJ*, 917 F. Supp. 61, 63 (D.D.C. 1996).

The FBI has also invoked Exemption 7(D) to protect source-identifying information, including information concerning "an individual source who is a source symbol numbered informant under an express grant of confidentiality."  First Hardy Decl. ¶ 85.  "The withheld information includes the name, social security number, phone number, file number, source number, and the type of source expenditures."  *Id.*  The disclosure of this information likely would reveal the confidential source's identity, "forever neutraliz[ing] the source" and resulting in a "chilling effect on the activities and cooperation of other sources."  *Id.*  The information was therefore properly withheld.  *See, e.g.*, *Bullock v. FBI*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008) (withholding was proper where requested information could enable plaintiff to identify confidential source).

### 4.    Exemption 7(E)

The FBI also has withheld information under Exemption 7(E), which protects information whose release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *see also Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("[T]he importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").  The first clause of Exemption 7(E) affords

"categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions.  *Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997) (citing *Fisher v. DOJ*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992)).

Here, the FBI withheld eight types of information to protect investigative techniques and procedures: (1) sensitive file numbers or sub-file names; (2) internal, non-public email or IP addresses; (3) dates or types of investigations; (4) identity or location of FBI or Joint Units, Squads, or Divisions; (5) collection or analysis of information; (6) investigative focus; (7) law enforcement strategies or techniques for addressing the techniques, tactics or procedures (TTPs) used by an organization; (8) monetary payments for investigative techniques.  First Hardy Decl. ¶¶ 87–95.

The First Hardy declaration provides detailed and specific justifications for withholding each subcategory of information under Exemption 7(E).  *See id.*  The *Vaughn* Index supplements those categorical justifications by pairing them with descriptions of the Bates-numbered documents in which they appear.  In each instance, the FBI has determined that disclosure of the particular type of information implicates law enforcement procedures and techniques and could enable individuals to circumvent the law.  For example, the FBI has withheld sensitive case file numbers on the basis that revealing file numbering conventions could identify "the investigative interest or priority given to such matters" and allow suspects to use these numbers, together with other known information, to circumvent the FBI's law enforcement efforts.  First Hardy Decl. ¶ 87; *see also Labow v. DOJ*, 66 F. Supp. 3d 104, 127 (D.D.C. 2014) (upholding FBI's assertion of Exemption 7(E) to protect sensitive case file numbers).  Similarly, the FBI has protected information about the types and dates of investigations—i.e., whether an investigation was "preliminary" or "full" and the date it was initiated—because disclosure would allow "individuals to know the types of activities that would trigger a full investigation as opposed to a preliminary

investigation, and the particular dates the investigation covers, which would allow individuals to adjust their behavior accordingly." First Hardy Decl. ¶ 89. In the same way, disclosure of information about the focus of specific FBI investigations "would reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity," thereby allowing criminals to "gauge the FBI's strengths and weakness[es] within certain areas of the criminal arena and structure their activities in a manner that avoids detection." *Id.* ¶ 92.

The First Hardy Declaration sets forth similar law enforcement rationales for protecting internal email and intranet information, information about the location and identity of FBI investigative units, the methods used to collect and analyze investigative information, information relating to "the techniques, tactics, and/or procedures ('TTPs')" used by certain organizations, and information about monetary payments for investigative techniques. First Hardy Decl. ¶¶ 88-95; *see also Labow*, 66 F. Supp. 3d at 127; *Light v. DOJ*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013).

## III.    FBI and CBP Have Produced All Reasonably Segregable Portions of Responsive Records.[2]

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). This provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.").

---

[2] In its March 2017 order, the Court entered summary judgment with respect to "CBP's withholdings." ECF 22. On its face, that ruling would appear to encompass a finding that CBP satisfied its obligation to release all reasonably segregable information. However, because the segregability issue was contested in the original summary judgment proceeding, CBP has briefed the issue again.

CBP and FBI have satisfied this burden.  In addition to attestations from senior FOIA officials that all responsive records were reviewed—document-by-document, line-by-line—to ensure that there was no reasonably segregable information the agencies could produce, *see* First Hardy Decl. ¶ 110; Burroughs Decl. ¶ 52, both agencies have submitted declarations and *Vaughn* indexes identifying the documents provided to Plaintiff in response to her FOIA request, describing the contents of the documents, and explaining the agencies' justifications for each redaction or category of redactions.[3]  When viewed together, these materials more than satisfy the agencies' segregability obligations.  *See, e.g.*, *Loving v. U.S. Dep't of Def.*, 496 F. Supp. 2d 101, 110 (D.D.C. 2007), *aff'd sub nom. Loving v. Dep't of Def.*, 550 F.3d 32 (D.C. Cir. 2008) (holding that "government's declaration and supporting material are sufficient to satisfy its burden to show with 'reasonable specificity' why the document cannot be further segregated, where declaration averred that agency had "released to plaintiff all material that could be reasonably segregated"); *Elec. Frontier Found. v. U.S. Dep't of Justice*, No. 07-00403, slip op. at 17 (D.D.C. Aug. 14, 2007) (concluding that although agency declarations never explicitly used term "segregability," statements "[c]onsidered as a whole," demonstrate agency's segregability analysis), reconsideration denied, 532 F. Supp. 2d 22 (D.D.C. 2008).

## CONCLUSION

For the foregoing reasons, Defendants FBI and CBP respectfully request that the Court grant their Second Motion for Summary Judgment and enter final judgment for them in this matter.

---

[3] The Second Hardy declaration elaborates on FBI's practice as it relates to segregation, explaining that (i) non-duplicate pages were withheld in full only if releasing non-exempt information would result in disjointed words and phrases that had negligible informational value, or if it was not technically feasible to segregate exempt information from non-exemption information; (ii) all segregable information on each document that was withheld in part was released to Plaintiff; and (iii) the only information withheld by the FBI would trigger reasonably foreseeable harm to one or more interests protected by the FOIA exemptions.  Second Hardy Decl. ¶¶ 10-11.

July 24, 2017                               Respectfully submitted,


                                           CHAD A. READLER
                                           Acting Assistant Attorney General

                                           MARCIA BERMAN
                                           Assistant Branch Director,
                                           Federal Programs Branch

                                           */s/ Samuel M. Singer*
                                           SAMUEL M. SINGER
                                           D.C. Bar. No. 1014022
                                           Trial Attorney, Federal Programs Branch
                                           Civil Division
                                           United States Department of Justice
                                           20 Massachusetts Ave., NW, Room 6138
                                           Washington, DC 20001
                                           Tel: (202) 616-8014 | Fax: (202) 616-8470
                                           samuel.m.singer@usdoj.gov

                                           *Counsel for Defendant*

19

**<u>Certificate of Service</u>**

I hereby certify that on July 24, 2017, I electronically filed the foregoing Memorandum with the Clerk of the Court using the CM/ECF system, which will send notice of this filing to all parties.

*/s/ Samuel M. Singer*
SAMUEL M. SINGER