UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAURA POITRAS,

                Plaintiff,

    v.

U.S. DEPARTMENT OF HOMELAND SECURITY
ET AL.,

             Defendants.

Case No. 1:15-cv-1091 (KBJ)

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

ARGUMENT ............................................................................................... 2

I.    FBI has Satisfied the Threshold Requirement for Exemption 7. ..................... 2

II.    FBI's Withholdings under Exemption 5 Are Proper......................................... 6

    a.    Deliberative Process Privilege ................................................. 6

    b.    Work Product Doctrine............................................................ 10

III.    FBI and CBP Have Satisfied their Segregability Obligations. ...................... 11

IV.    CBP Conducted an Adequate Search. ............................................................ 13

    a.    Plaintiff's Allegations of Overlooked Material Do Not Undermine the Adequacy of CBP's Search ................................................. 14

    b.    CBP Adequately Described Its Search Methodology. ........................... 15

CONCLUSION........................................................................................... 16

# TABLE OF AUTHORITES

## CASES

*Anderson v. CIA*,
　　63 F. Supp. 2d 28 (D.D.C. 1999) ........................................................................... 12

*Barnard v. Dep't of Homeland Security*,
　　598 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................ 15

*Boyd v. Criminal Div. of U.S. Dep't of Justice*,
　　475 F.3d 381 (D.C. Cir. 2007) ................................................................................ 14

*Budik v. Dep't of Army*,
　　742 F. Supp. 2d 20 (D.D.C. 2010) .......................................................................... 14

*Bureau of National Affairs, Inc. v. U.S. Dep't of Justice*,
　　742 F.2d 1484 (D.C. Cir. 1984) ................................................................................ 9

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
　　600 F. Supp. 114 (D.D.C. 1984) ............................................................................... 8

*Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*,
　　331 F.3d 918 (D.C. Cir. 2003) ...................................................................... 2, 4, 5, 6

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
　　532 U.S. 1 (2001) ..................................................................................................... 7

*Elec. Frontier Found. v. U.S. Dep't of Justice*,
　　No 07-00403, slip op. (D.D.C. Aug. 14, 2007) ....................................................... 13

*Gordon v. FBI*,
　　388 F. Supp. 2d 1028 (N.D. Cal. 2005) .................................................................... 5

*Greenberg v. U.S. Dep't of Treasury*,
　　10 F. Supp. 2d 3 (D.D.C. 1998) ............................................................................. 16

*Hamdan v. U.S. Dep't of Justice*,
　　797 F.3d 759 (9th Cir. 2015) .................................................................................. 12

*Heggestad v. U.S. Dep't of Justice*,
　　182 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................ 11

*Hickman v. Taylor*,
　　329 U.S. 495 (1947) ............................................................................................... 10

*Hopkins v. HUD*,
　　929 F.2d 81 (2d Cir. 1991) ...................................................................................... 8

*ICM Registry, LLC v. U.S. Dep't of Commerce*,
   538 F. Supp. 2d 130 (D.D.C. 2008) ........................................................ 9

*Iturralde v. Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003) ........................................................... 15

*Johnson v. Exec. Office for U.S. Attorneys*,
   310 F.3d 771 (D.C. Cir. 2002) ........................................................... 12

*Kidder v. FBI*,
   517 F. Supp. 2d 17 (D.D.C. 2007) ........................................................ 5

*Kishore v. U.S. Dep't of Justice*,
   575 F. Supp. 2d 243 (D.D.C. 2008) ...................................................... 11

*Lamont v. U.S. Dep't of Justice*,
   475 F. Supp. 761 (S.D.N.Y. 1979) ........................................................ 4

*Larson v. U.S. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ........................................................... 13

*Loving v. U.S. Dep't of Def.*,
   550 F.3d 32 (D.C. Cir. 2008) ............................................................. 7

*Loving v. U.S. Dep't of Def.*,
   496 F. Supp. 2d 101 (D.D.C. 2007) ...................................................... 12

*Manning v. U.S. Dep't of Justice*,
   234 F. Supp. 3d 26 (D.D.C. 2017) ...................................................... 5, 6

*Nat'l Wildlife Fed. v. U.S. Forest Serv.*,
   861 F.2d 1114 (9th Cir. 1988) ........................................................... 9

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ...................................................................... 8

*Owens v. DOJ*,
   2006 WL 3490790 (D.D.C. Dec. 1, 2006) .................................................. 5

*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir. 1992) ........................................................... 3

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget*,
   598 F.3d 865 (D.C. Cir. 2010) ........................................................... 8

*Quarles v. Dep't of Navy*,
   893 F.2d 390 (D.C. Cir. 1990) ........................................................... 7

*Renegotiation Bd. v. Grunman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975)................................................................................................ 8

*SafeCard Serv's, Inc. v. Securities and Exchange Comm'n,*
  926 F.2d 1197 (D.C. Cir. 1991)............................................................................. 11

*Shapiro v. U.S. Dep't of Justice,*
  37 F. Supp. 3d 7 (D.D.C. 2014) ......................................................................... 3, 4

*Strunk v. U.S. Dep't of State,*
  845 F. Supp. 2d 38 (D.D.C. 2012) ....................................................................... 15

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007)............................................................................ 12

*Tax Analysts v. IRS*,
  152 F. Supp. 2d 1 (D.D.C. 2001),
  *aff'd in part, rev'd in part on other grounds and remanded*, 294 F.3d 71 (D.C. Cir. 2002)........ 8

*Weisberg v. U.S. Dep't of Justice,*
  705 F.2d 1344 (D.C. Cir. 1983) ........................................................................... 13

## STATUTES

5 U.S.C. § 552(b)(7) ................................................................................................ 2, 6

## RULES

Fed.R.Civ.P. 26(b)(3) .............................................................................................. 10

**INTRODUCTION**

In their renewed motion for summary judgment, the Defendants have shown that they have discharged their obligations under FOIA with respect to the few issues still in dispute. The FBI has made a comprehensive and detailed submission defending its determination that certain records or categories of records relating to its investigation into Plaintiff's potential involvement with anti-coalition forces in Iraq were properly withheld from disclosure under FOIA. The vast majority of the FBI's specific withholdings are not contested, and Plaintiff has no answer for the FBI's testimony detailing the harms prevented to the agency's law enforcement interests by the relevant FOIA exemptions. Instead, her principal response is to question whether the FBI had a law enforcement purpose for initiating the investigation in the first place. This argument misconceives what constitutes a law enforcement purpose under Exemption 7, which extends beyond the realm of the traditional criminal investigation to protect investigations into potential threats to national security. The argument is also contradicted by the FBI's own testimony, which has repeatedly confirmed that the Bureau was investigating potential criminal activity. Further, FBI declaration testimony shows that the Bureau has properly withheld information under the deliberative process and work product privileges.

For its part, CBP has easily met its burden of showing that it made a good faith effort to conduct a search for the requested records, using methods that were reasonably calculated to uncover all relevant documents. The agency has provided a detailed description of its record systems and the manner in which they were searched. Plaintiff has no viable challenge to the adequacy of CBP's search methods, and she cannot rebut the adequacy of the search with speculative claims about documents she believes should have been produced.

Because the FBI and CBP have fulfilled their statutory obligations, and because Plaintiff's opposition provides no valid legal basis to deny the Defendants' motions for summary judgment, both agencies are entitled to summary judgment on all remaining claims.

## ARGUMENT

## I.     FBI has Satisfied the Threshold Requirement for Exemption 7.

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" where disclosure would result in one of six enumerated harms set forth in 5 U.S.C. § 552(b)(7)(A).  To establish a law enforcement purpose, the FBI's declarations must show (i) a "rational nexus between the investigation and one of the agency's law enforcement duties" and (ii) "a connection between an individual or incident and a possible security risk or violation of federal law."  *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 921 (D.C. Cir. 2003).

The testimony presented by the FBI easily meets the second prong of this test.  The records withheld under Exemption 7 were connected to "an individual or incident and a possible security risk or violation of federation law."  *Id*.  Plaintiff was the subject of an FBI investigation into her potential involvement in an ambush on U.S. Forces near Baghdad that resulted in the death of one U.S. soldier and serious injuries to several others.  First Public Declaration of David M. Hardy, ECF No. 14-1 (First Hardy Decl.) ¶ 31.  The FBI has identified a "particular individual" (Plaintiff) as its subject, and a "particular incident" (the ambush on U.S. Forces) as the object of its investigation.

With respect to the first prong, the FBI's testimony shows a "rational nexus between the investigation and one of the agency's law enforcement duties."  *Ctr. for Nat. Sec. Studies*, 331 F.3d at 926.  The FBI initiated an investigation based on information "that Plaintiff may have been

involved in an activity constituting a federal crime and/or a threat to national security." Second Declaration of David M. Hardy, ECF No. 20-1 (Second Hardy Decl.) ¶ 8.  Launched at the request of the U.S. Army Criminal Investigation Command (USACIC), *see* Poitras 348-349, the investigation was carried out "for potential prosecution and intelligence purposes," consistent with the FBI's statutorily mandated functions of preventing risk to national security and investigating potential violations of U.S. criminal laws.  *See Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1992); *see also* The Attorney General's Guidelines for FBI National Security Investigations and Foreign Intelligence Collection, *available at* https://www.justice.gov/archive/olp/ag-guidelines-10312003.pdf.

Plaintiff challenges both elements of the Exemption 7 law enforcement threshold.  First, relying on *Shapiro v. U.S. Dep't of Justice*, 37 F. Supp. 3d 7 (D.D.C. 2014), she asserts that the FBI's descriptions of its investigation are too general to warrant protection under Exemption 7(A). Plaintiff's Consolidated Opp'n and Reply Brief (Op. Br.), at 16 [ECF Nos. 25, 26].  In *Shapiro*, the FBI sought to protect "documents compiled as a result of assistance FBI rendered to various state and local law enforcement agencies" that were investigating potential criminal activity by protestors involved in the "Occupy" movement in Houston.  *Shapiro*, 37 F. Supp. 3d at 29.  The records had been compiled while the FBI was working with state and local law enforcement authorities to assess the protests for potential terrorist threats or criminal activity.  *Id.*  In concluding that the FBI's averments as to the Exemption 7 threshold were too generalized, the court reasoned that the FBI had not "suppl[ied] specific facts as to the basis for FBI's belief that the Occupy protestors might have been engaged in terroristic or other criminal activity."  *Id.*

Here, by contrast, the FBI *has* provided specific facts about Plaintiff's potential involvement in the ambush against U.S. Forces, including the U.S. military's receipt of information

in 2004 that Plaintiff filmed the ambush from atop a nearby building, Plaintiff's subsequent confirmation (which followed her initial denial) that she was on the roof of the building working on a documentary at the time of the ambush, and the FBI's receipt of further information in 2006 that Plaintiff had prior knowledge of the ambush but chose not to report it. *See* First Hardy Decl. ¶ 31. Unlike the records at issue in *Shapiro*, which related to general assistance the FBI provided to state and local law enforcement authorities in connection with their investigations into potential criminal activity of unspecified protestors, the investigation at issue here arose from a specific incident and involved specific allegations of criminal activity on the part of a specific individual. Indeed, even the *Shapiro* court recognized that Exemption 7 applies where records are compiled "in connection with investigations that focus directly on specific alleged illegal acts." 37 F. Supp. 3d at 29. This is precisely such a case, and *Shapiro* is therefore no help to Plaintiff.[1]

Plaintiff also argues that Exemption 7 does not apply because the investigation was launched for intelligence purposes unrelated to law enforcement. Op. Br. at 11-17. This argument is both legally and factually flawed. From a legal standpoint, it wrongfully equates "law enforcement" as that term is used in Exemption 7 with criminal prosecution, erroneously suggesting that anything other than a traditional criminal investigation falls outside the scope of the exemption. The "law" to be enforced within the meaning of the term "law enforcement purpose" extends beyond criminal statutes and into the realm of national security activities, including intelligence gathering. *See, e.g., Ctr. for Nat. Sec. Studies*, 331 F.3d at 926 (names of

---

[1] Plaintiff's reliance on *Lamont v. U.S. Dep't of Justice*, 475 F. Supp. 761 (S.D.N.Y. 1979), is similarly unpersuasive. There, the court found that the FBI had carried out a proper investigation for 13 years, but that, after the FBI indicated that its investigation had ended, the subsequent 17 years of generalized surveillance lacked a clear connection to law enforcement purposes. *Id.* at 774-76. Here, the documents at issue were generated in the course of a criminal investigation in furtherance of FBI's law enforcement mission.

post-9/11 detainees were properly withheld under Exemption 7 because they were compiled for the law enforcement purpose of pursuing a "violation of federal law as well as a breach of this nation's security"); *Kidder v. FBI*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007) (emphasizing that intelligence gathering is law enforcement activity because "[i]nvestigating terrorism is 'one of DOJ's chief law enforcement duties'") (citation omitted); *cf. Gordon v. FBI*, 388 F. Supp. 2d 1028, 1036 (N.D. Cal. 2005) (extending law enforcement threshold to include materials created by FBI in connection with various aviation watch lists created for national security purposes).   In extending the Exemption 7 threshold to national security activities, courts have recognized that law enforcement agencies often have mandates to take preventative measures to protect national security.   *See, e.g.*, *Ctr. for Nat. Sec. Studies*, 331 F.3d at 928 (explaining that terrorism investigation is one of DOJ's chief law enforcement duties); *Owens v. DOJ*, 2006 WL 3490790, at *5 (D.D.C. Dec. 1, 2006).   The FBI is no exception, and the Bureau's national security investigations "almost invariably involve possible violations of criminal statutes." [Guidelines at 2]; *see also Manning v. U.S. Dep't of Justice*, 234 F. Supp. 3d 26, 35 (D.D.C. 2017) (upholding DOJ's assertion of Exemption 7(A) with respect to "criminal/national security investigation").   Thus, even if there were a factual basis for Plaintiff's assertion that the investigation in question was conducted solely for intelligence purposes – as set forth below, there is none – that fact alone would not preclude the FBI from invoking Exemption 7.

Further, contrary to Plaintiff's suggestion, the national security investigation at issue in this case was not initiated solely for intelligence purposes.   The FBI repeatedly has explained that its investigation into Plaintiff's potential involvement with anti-coalition forces in Iraq was for intelligence purposes *and* potential prosecution, because Plaintiff's potential involvement was at once a threat to national security warranting further intelligence gathering *and* a potential federal

crime.  *Id*; Second Hardy Decl. ¶ 8.  That testimony is entitled to "substantial weight" in the Exemption 7 analysis, *Manning v. U.S. Dep't of Justice*, 234 F. Supp. 3d 26, 34 (D.D.C. 2017), but even if the Court had reason to question it, the criminal element of the investigation should be evident from descriptions of the evidentiary, investigative, and administrative materials it generated, including communications advising that grand jury subpoenas were served (Poitras 109-110; 115-116) and the FBI's decision to close the investigation after "no potential criminal violations" were identified (Poitras 349).

Plaintiff has offered no evidence to contradict the FBI's representations about the criminal aspect of the investigation.  Instead, her principal response is to attack the validity of the investigation itself.  Seizing upon language in the USACIC's initial report to the FBI, Plaintiff argues that the Bureau never had a credible basis for launching the investigation.  She fails to explain how a USACIC report sent in April 2006, *before* the FBI initiated its investigation, is somehow indicative of the scope or purpose of the multi-year investigation the FBI launched in response to that information.  Nor can the Court infer anything about the investigation's scope from FBI's decision not to interview Plaintiff.  The FBI can conduct a criminal investigation without interviewing its subject.  More importantly, the Court's inquiry under Exemption 7(A) is simply whether the records at issue were compiled for law enforcement purposes, *see* 5 U.S.C. § 552(b)(7), not whether the Government should have investigated a particular episode or used a particular investigative technique.  *See Ctr. for Nat. Sec. Studies*, 331 F.3d at 928, 932.

## II.  FBI's Withholdings under Exemption 5 Are Proper.

### a.  Deliberative Process Privilege

The FBI properly withheld information under Exemption 5's deliberative process privilege. The FBI has shown that the withheld paragraphs—found in Poitras 158, 159, and 163—reflect predecisional agency deliberations.  *See* First Hardy Decl. ¶ 62; *see* Second Hardy Decl. ¶ 7.  The

FBI's declarations provide sufficient detail to show that the redacted material was created as part of the deliberative process.

As these declarations explain, the FBI asserted Exemption 5 to withhold portions of an intra-agency electronic communication from the New York Field Office providing analysis and recommendations relating to the FBI's investigation of Plaintiff.  *See* First Hardy Decl. ¶ 62; Second Hardy Decl. ¶ 7.  The author of the communication is an intelligence analyst, and the recipient a special agent assigned to the investigation.  Second Hardy Decl. ¶ 7.  The information redacted from the communication reflects (i) discussion of the results of a database check relating to the FBI's investigation of Plaintiff, (ii) deliberation over what further investigative steps the FBI could or should take in light of the results, and (iii) recommendations to the special agent as to how to proceed in the investigation, including recommendations to consider seeking a court order and coordinating with other agencies.  First Hardy Decl. ¶ 62; Second Hardy Decl. ¶ 7.  The Second Hardy Declaration further explains that the "objective of the document is to provide analytical support," and that the information withheld does not reflect a final decision but rather "information the [special agent] could consider when proceeding with the investigation."  Second Hardy Decl. ¶ 7.

This information is sufficient to meet the agency's burden under FOIA because it shows that these documents reflect "recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Loving v. U.S. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  The information is predecisional because it "was 'prepared in order to assist an agency decisionmaker in arriving at his decision.'"  *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990).  That it was prepared by someone who lacks decisionmaking authority with

respect to the investigation (the intelligence analyst), for the benefit of someone who possesses such authority (the special agent), only reinforces the predecisional nature of the communication. *See Hopkins v. HUD*, 929 F.2d 81, 85 (2d Cir. 1991) (documents prepared by agency officials who "themselves lack any authority to take final agency action . . . are necessarily predecisional"); *see also Tax Analysts v. IRS*, 152 F. Supp. 2d 1, 24-25 (D.D.C. 2001) (protecting memoranda "written by a component office without decisionmaking authority to a different component office" that had such authority), *aff'd in part, rev'd in part on other grounds and remanded*, 294 F.3d 71 (D.C. Cir. 2002); *Renegotiation Bd. v. Grunman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975) (holding that the deliberative process privilege protected "final recommendations" issued by regional boards "[b]ecause only the full Board has the power by law to make the decision").

Further, the information is deliberative because it reflects "internal deliberations on the advisability of a[] particular course of action." *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2010). The declarations not only provide context into the specific agency decision or decision-making process, but they identify "the 'role that the withheld [paragraphs] played in that deliberative process'" as well as the "'positions . . . and job duties of the authors and recipients.'" Op. Br. at 19. While these kinds of analytical recommendations are deliberative by nature, *see* Second Hardy Decl. ¶ 7, there should also be "considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take — of the deliberative process — by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). In this regard, Plaintiff has given the Court no reason to second-guess the FBI's characterizations about its own deliberative processes.

Plaintiff is wrong to suggest that the FBI cannot withhold a predecisional document unless it has released or at least identified a corresponding final version. *See* Op. Br. at 20. Courts routinely uphold Exemption 5 withholdings of predecisional materials even though final versions of the documents either do not exist or have not been publicly released. *See, e.g., ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 137 (D.D.C. 2008) (approving draft's withholding, notwithstanding the fact that a final version of the document was never produced, because the draft "contains 'options' regarding final agency policy, and thus makes a plain contribution to agency deliberations on final policy"). By suggesting that a predecisional document may be withheld only if a subsequent version exists, Plaintiff "misconceives what constitutes a 'final decision' in the context of Exemption 5." *Bureau of National Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1497 (D.C. Cir. 1984). The predecisional nature of a recommendation does not depend upon the existence of a subsequently created document memorializing the decision, because "[r]ecommendations on how best to deal with a particular issue are themselves the *essence* of the deliberative process," *Nat'l Wildlife Fed. v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988). This is especially true where, as here, the recommendations were made for another decisionmaker who had "ultimate authority" over the decision. *Bureau of National Affairs*, 742 F.2d at 1497-98.

Plaintiff also contends that FBI improperly relied on the deliberative process privilege to withhold factual material, speculating, without any factual or legal basis, that the FBI's redactions likely encompassed non-privileged factual material. Op. Br. at 21. But contrary to Plaintiff's suggestion, the FBI has conducted a segregability review of the documents, as shown by the fact that FBI released portions of all three pages containing information withheld under the deliberative process privilege. *See* Second Hardy Decl. ¶ 7.

Finally, even if certain information in these paragraphs were not protected by the deliberative process privilege, the bulk of the information would still be properly withheld under Exemption 7(E), because it involves sensitive details relating to the FBI's investigation of Plaintiff, as well as recommendations as to how the investigation should proceed. *See* Second Hardy Declaration ¶ 7, n. 4. Apart from a meritless argument that Exemption 7 is not applicable at all (discussed above), Plaintiff does not contest the FBI's specific withholdings under Exemption 7(E), which provide an independent basis for protecting the information in question. For these reasons, FBI properly withheld these communications under the deliberative process privilege.

### b.     Work Product Doctrine

In preparing this submission, the FBI discovered that three records relating to the closure of the investigation into Plaintiff's activities involving anti-coalition forces in Iraq had been inadvertently missed and not previously produced to Plaintiff. The FBI has processed those records and released all segregable, non-exempt information to Plaintiff. Fourth Public Declaration of David M. Hardy, ex. 1; *see* Poitras 346-350. Unredacted portions of the records provide background on the investigation, a brief summary of the allegations against Plaintiff, and the New York Field Office's decision to close the matter after finding "no potential criminal violations or threats to national security warranting further investigation." Poitras 348-349. After reviewing the records and conferring with counsel for the FBI, Plaintiff advised that she intends to challenge the FBI's withholding of attorney work product in Poitras 345.

Such a challenge is meritless. The attorney work-product doctrine protects material gathered and memoranda prepared by an attorney in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495 (1947). The primary purpose of this privilege is to protect against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation. *See* Fed.R.Civ.P. 26(b)(3). The privilege extends to documents

created by an attorney in the course of an investigation prior to a decision to litigate. *See SafeCard Serv's, Inc. v. Securities and Exchange Comm'n,* 926 F.2d 1197, 1202 (D.C. Cir. 1991) ("Where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product.").

Here, the FBI withheld the Assistant United States attorney's reasons for recommending that the federal government decline prosecuting Plaintiff. The attorney work product reflects the personal evaluations and opinions about a potential criminal case against Plaintiff. That information fits squarely within the scope of the privilege. *See Kishore v. U.S. Dep't of Justice*, 575 F. Supp. 2d 243, 259 (D.D.C. 2008) (reasons for declination protected by work product privilege); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (work-product privilege protected prosecution memorandum regarding whether or not to prosecute).

## III.   FBI and CBP Have Satisfied their Segregability Obligations.

Both FBI and CBP have demonstrated that they complied with their segregability obligations under FOIA. Both agencies conducted line-by-line reviews of the records determined to be responsive and concluded that all reasonably segregable portions of the relevant records have been released to Plaintiff. First Hardy Decl. ¶ 110; Declaration of Sabrina Burroughs, Ex. 4 ("Burroughs Decl.") ¶ 52.

Plaintiff argues that this analysis is conclusory and insufficient and even asserts that there is a "near certainty that the agencies have withheld more information than is otherwise justifiable." Op. Br. at 24. This argument lacks any factual basis, and the Court should grant the FBI and CBP summary judgment on this claim because both agencies have met their burden on this issue.

To satisfy the segregability burden, an agency must "show with 'reasonable specificity' why [responsive] document[s] cannot be further segregated," which can be done through "[t]he

combination of the *Vaughn* index and [its] affidavits." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  In this context, an agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  As a result, a court need not conduct "a page-by-page review of an agency's work," but instead "may rely on [the] agency's declaration in making its segregabiltiy determination." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015); *cf Anderson v. CIA*, 63 F. Supp. 2d 28, 30 (D.D.C. 1999) (declining, "especially in the highly classified context of this case," to "infer from the absence of the word 'segregable' [in the agency's affidavit] that segregability was possible").

CBP and FBI have satisfied this burden.  In addition to attestations from senior FOIA officials that all responsive records were reviewed—document-by-document, line-by-line—to ensure that there was no reasonably segregable information the agencies could produce, *see* First Hardy Decl. ¶ 110; Burroughs Decl. ¶ 52, both agencies have submitted declarations and *Vaughn* indexes identifying the documents provided to Plaintiff in response to her FOIA request, describing the contents of the documents, and explaining the agencies' justifications for each redaction or category of redactions.[2]  When viewed together, these materials more than satisfy the agencies' segregability obligations.  *See, e.g.*, *Loving v. U.S. Dep't of Def.*, 496 F. Supp. 2d 101, 110 (D.D.C. 2007), *aff'd sub nom. Loving v. Dep't of Def.*, 550 F.3d 32 (D.C. Cir. 2008) (holding that "government's declaration and supporting material are sufficient to satisfy its burden to show with

---

[2] The Second Hardy declaration elaborates on FBI's practice as it relates to segregation, explaining that (i) non-duplicate pages were withheld in full only if releasing non-exempt information would result in disjointed words and phrases that had negligible informational value, or if it was not technically feasible to segregate exempt information from non-exemption information; (ii) all segregable information on each document that was withheld in part was released to Plaintiff; and (iii) the only information withheld by the FBI would trigger reasonably foreseeable harm to one or more interests protected by the FOIA exemptions.  Second Hardy Decl. ¶ 7.

'reasonable specificity' why the document cannot be further segregated, where declaration averred that agency had "released to plaintiff all material that could be reasonably segregated"); *Elec. Frontier Found. v. U.S. Dep't of Justice*, No. 07-00403, slip op. at 17 (D.D.C. Aug. 14, 2007) (concluding that although agency declarations never explicitly used term "segregability," statements "[c]onsidered as a whole," desmonstrate agency's segregability analysis), reconsideration denied, 532 F. Supp. 2d 22 (D.D.C. 2008).

Plaintiff's contention that the FBI and CBP have offered only "empty invocations" of their segregability obligations would be more persuasive if Defendants had merely rested their case on representations that all reasonably segregable information had been produced. But again, those representations have been made in conjunction with descriptions of the process by which segregation determinations are made, as well as detailed descriptions of the documents or portions of documents withheld and the specific reasons for the withholdings. Plaintiff, on the other hand, rests her segregation challenge on the naked assertion that Defendants simply *must* have missed something in their segregation review (there is a "near certainty that the agencies have withheld more information than is otherwise justifiable," Op. Br. at 23-24), while failing to point to a single paragraph or sentence that supposedly contains segregable information. Under these circumstances, FBI and CBP are entitled to summary judgment on Plaintiff's segregability challenge.

## IV. CBP Conducted an Adequate Search.

CBP's declaration demonstrates that the component made a good faith effort to undertake a search for the requested records, using methods "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An adequate search is based on a reasonable interpretation of the scope of the request and the records sought. *See Larson v. U.S. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009).

In particular, the Burroughs Declaration explains that CBP FOIA personnel determined that any responsive records would most likely be located within two CBP computer systems—TECS (and its subsystems) and the Automated Targeting System ("ATS").  Burroughs Decl. ¶ 5.  CBP searched TECS and ATS using search terms encompassing Plaintiff's name and date of birth.  *Id.* ¶¶ 5, 26.  Based on the results of those searches, CBP FOIA personnel further determined that additional responsive records were likely to be found in CBP's New York field office, and CBP accordingly conducted both paper and electronic searches of the New York field office. *Id.* ¶ 31.

Plaintiff challenges the adequacy of CBP's search on two grounds.  First, she argues that there are "positive indications of overlooked materials" – in particular, records relating to materials that Plaintiff alleges were taken from her and photocopied by CBP in the course of her encounters with CBP agents at various custom borders.  Op. Br. at 25.  Second, she argues that CBP does not provide sufficient information for the Court to assess the adequacy of its search methodology.  *Id.* Neither argument has merit.

### a.    Plaintiff's Allegations of Overlooked Material Do Not Undermine the Adequacy of CBP's Search

Plaintiff attempts to impugn the adequacy of CBP's search by noting that CBP's production did not include certain photocopies that Plaintiff expected to receive.  But Plaintiff cannot challenge the adequacy of a search by merely identifying documents which she believes should exist but were not produced.  It is well-established that the adequacy of a FOIA search "is generally determined not by the fruits of the search, but the appropriateness of the methods used to carry out the search."  *Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 30 (D.D.C. 2010) (citation omitted). "[T]he [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search."  *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007). Thus, absent a viable challenge to the adequacy of CBP's search methods, the fact that CBP did

14

not produce a particular document or set of documents is not sufficient to render the search inadequate.

Moreover, accepting Plaintiff's statements as true, there are numerous reasons why such photocopies, to the extent they were even retained by CBP, may not have been included in CBP's production. As the D.C. Circuit stated while rejecting a similar, and indeed more specific, search-adequacy challenge, "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

> **b.      CBP Adequately Described Its Search Methodology.**

Plaintiff's contention that CBP provided insufficient detail about its electronic searches is also meritless. According to Plaintiff, the Burroughs declaration states only "that CBP personnel 'performed searches on relevant databases within [TECS and ATS] using Plaintiff's name and date of birth'," but fails to provide the specific search terms used. Op. Br. at 27. This is a puzzling argument, because Plaintiff's name and date of birth *were* the search terms utilized by CBP. *See* Burroughs Decl. ¶¶ 5, 26. Given the nature of Plaintiff's FOIA request, which sought CBP records about herself, this search was appropriately targeted. *See, e.g.*, *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 44 (D.D.C. 2012) (CBP's search of TECS for individual travel records using name and date of birth was reasonably calculated to locate responsive records); *Barnard v. Dep't of Homeland Security*, 598 F. Supp. 2d 1, 3 (D.D.C. 2009) (CBP search of TECS and ATS in response to request for "all records about me" was reasonable). Plaintiff offers no authority or credible argument to the contrary. By explaining the scope of the search, the types of files searched, and the parameters of those searches, CBP's declaration is "relatively detailed, nonconclusory, and

submitted in good faith."  *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 12-13 (D.D.C. 1998).

Nor is there any merit to Plaintiff's contention that CBP provided insufficient details about the search of its New York field office.  Plaintiff claims that the Burroughs Declaration states only that CBP "searched paper files and performed an electronic search on email records using Plaintiff's name and other relevant search terms."  Op. Br. at 27.  In fact, the Burroughs Declaration goes on to provide the very details Plaintiff suggests it has omitted, including methodology (searches conducted by "several custodians reasonably likely to have information related to Plaintiff or the August 1, 2010 encounter"), search terms ("'Poitras,' 'Laura Poitras,' and the name and email address of Plaintiff's legal counsel related to the August 1, 2010 encounter"), and the date range ("August 1, 2010 through October 31, 2010").  Plaintiff contends that date range is too narrow because she was detained at New York airports over a six-year period, but this misunderstands the purpose of the search.  CBP searched the New York Field Office because records relating to an August 2010 encounter between Plaintiff and CBP could not be found in the agency's national databases.  The other records Plaintiff refers to would not have been captured by a search of the New York Field Office, and were properly targeted by searching TECS an ATS.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Defendants' opening brief, the Court should grant the Defendants' Motion for Summary Judgment, deny Plaintiff's Cross-Motion for Summary Judgment, and enter judgment in favor of the Defendants.

October 13, 2017                                   Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director,
Federal Programs Branch

*/s/ Samuel M. Singer*
SAMUEL M. SINGER
D.C. Bar. No. 1014022
Trial Attorney, Federal Programs Branch
Civil Division
United States Department of Justice
20 Massachusetts Ave., NW, Room 6138
Washington, DC 20001
Tel: (202) 616-8014 | Fax: (202) 616-8470
samuel.m.singer@usdoj.gov

*Counsel for Defendant*